# Exhibit I

**From:** Ethan Preston <ep@eplaw.us>
**To:** Rubin, Lee H. <LRubin@mayerbrownrowe.com>, rkriss@mayerbrownrowe.com
**Cc:** Scott A. Kamber, Esq. <skamber@kolaw.com>
**Subject:** Re: AmeriTrade
**Date:** Fri, 22 Jun 2007 11:02:03 -0500

Dear Messrs. Kriss and Rubin,

I received the attached letter by fax yesterday afternoon. The letter's tone and content are inconsistent with the recently filed stipulation that extended the time for your client to respond to the complaint, and with the professional rapport I believed Mr. Rubin and I had established in our previous conversations. Had I received Mr. Kriss's letter before speaking with Mr. Rubin, I would not have agreed to any extension. I hope that, before negotiations continue, you two will work out who speaks for AmeriTrade.

The claims in Mr. Kriss's letter lack merit. AmeriTrade's accountholders have been damaged both by investment losses on the purchase of stocks touted in the relevant spam, and by the loss of the benefit of bargain on brokerage fees, which were premised, in part, on AmeriTrade's compliance with the privacy statement and **full disclosure of facts relevant to the security of accountholders' information**. TD AmeriTrade is a fiduciary to its accountholders, and its conduct breaches a number of its fiduciary duties. Moreover, TD AmeriTrade must have known the statement that "TD AMERITRADE does not . . . otherwise disclose [accountholders'] personal information to any third party for any reason . . ." was false as soon as it knew that it was leaking its accountholders' email addresses. TD AmeriTrade's failure to disclose these leaks to existing customers is an actionable CLRA violation. *See Outboard Marine Corp. v. Superior Court*, 52 Cal. App. 3d 30, 36-38, 124 Cal. Rptr. 852, 856-57 (Cal. Ct. App. 1975). Finally, contrary to Mr. Kriss's assertion, the CAN SPAM Act's statutory language encompasses the complaint's claims on all relevant points.

Mr. Kriss should anticipate that Cal. Civ. Code 1782(e) will not provide AmeriTrade's internal investigation with an evidentiary privilege. AmeriTrade's investigation cannot be an attempt to comply with Cal. Civ. Code 1782, as AmeriTrade has apparently made no effort remedy the damages discussed above, or even to prevent further damages or inform its accountholders of the security breach. Nor was its investigation a response to our letter, as AmeriTrade apparently initiated the investigation well before it received our May 21 letter. In any event, as the complaint states federal law claims, Mr. Kriss may anticipate that Fed. R. Evid. 408 will control -- not Cal Civ. Code 1782(e) or Cal. Evid. Code 1152. *See Wm. T. Thompson Co. v. General Nutrition Corp.*, 671 F.2d 100, 104 (3d Cir. 1982). Finally, while the disclosure of emails alone does not trigger Cal. Civ. 1798.82, AmeriTrade has not presented any basis to believe that, while accountholders' email was acquired in the security breach, their personal information under Cal Civ. Code 1782(d) was protected.

I have already expressed to Mr. Rubin that the class has just as much interest in the successful conclusion of the investigation as AmeriTrade itself, and that we appreciate that AmeriTrade's internal investigation may require some degree of confidentiality from us. We have offered to negotiate appropriate terms of confidentiality order, and remain willing to do so. Although we may question the adequacy of AmeriTrade's investigation and its disclosures to its accountholders, we do not intend to interfere with any effort to end the ongoing disclosure of the class's personal information. Rather, our complaint seeks mitigate the harm caused thereby. As Mr. Rubin and I discussed, prompt resolution of this case would benefit your client and its accountholders by restoring confidence in its privacy practices.

However, do not mistake our willingness to cooperate as a license to bully, stonewall, or delay. We will not sit by idly if AmeriTrade allows further harm to the class members by stonewalling us. Mr. Kriss's letter confirms that there is a security breach at AmeriTrade, and we have reason to believe this security breach has been ongoing for months or even a year or more. While we remain committed to cooperating with AmeriTrade's investigation and protecting the investigation's confidentiality, our cooperation is premised on reciprocity with AmeriTrade and its counsel -- and ill-advised bullying like Mr. Kriss's letter (which asserts, among other things, "there is no basis for any compensable injury related to the e-mail spam" received by accountholders) are not consistent with that reciprocity nor would it fare well in the court of public opinion.

We ask that you to convey these sentiments to your client, and that your client indicates whether it intends to 1) stop encouraging accountholders to spoliate spam, 2) fully disclose the nature and extent of the security breach to its accountholders, and 3) detect and block accountholder trades of stocks touted by spam (or ask for a regulatory investigation if it cannot do so on its own). We look forward to your response shortly.

Sincerely,

Ethan Preston

--
Ethan Preston
Kamber & Associates, LLC
11 Broadway, 22d Flr

New York, NY 10004
(646) 964-9604

Not admitted in New York. Admitted in Illinois. This communication may be confidential and proprietary. The only persons authorized to use this communication are the addressee(s), their agents and attorneys. Any other disclosure or use of this communication's existence, contents, substance, purport, effect, or meaning is prohibited. This communication may be exempted and protected from disclosure as attorney work product, attorney-client privilege, or under other applicable rules and/or laws.
If you have received this communication in error, please notify me immediately by return e-mail and destroy this communication and any copies or attachments.

PDF document attachment (KrissLetter062107.pdf)

Case 3:07-cv-02852-VRW    Document 11-12    Filed 07/10/2007    Page 4 of 4