Alan Himmelfarb
LAW OFFICES OF ALAN HIMMELFARB
2757 Leonis Blvd
Los Angeles, CA 90058
Telephone: (323) 585-8696
Fax: (323) 585-8198
consumerlaw1@earthlink.net

Scott A. Kamber
Ethan Preston
KAMBER & ASSOCIATES, LLC
11 Broadway, 22d Floor
New York, NY 10004
Telephone: (212) 920-3072
Fax: (212) 202-6364
skamber@kolaw.com
epreston@kolaw.com

*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| MATTHEW ELVEY, an individual, and GADGETWIZ, INC., an Arizona corporation, on their own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs<br><br>v.<br><br>TD AMERITRADE, INC., a New York corporation, and DOES 1 to 100,<br><br>Defendants. | No. C 07 2852 MJJ<br><br>Judge Martin J. Jenkins<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANT TD AMERITRADE, INC.'S MOTION FOR EXTENSION OF TIME** |

**PLAINTIFFS' OPPOSITION TO THE MOTION TO DISMISS**

Plaintiffs Matthew Elvey ("Elvey") and Gadgetwiz, Inc. ("Gadgetwiz"), respectfully file this Opposition to TD AMERTRADE, Inc. ("Ameritrade") Motion for Extension of Time to File Opposition to Plaintiffs' Motion for Preliminary Injunction and Class Certification.

As Plaintiffs' counsel expressed to Ameritrade's counsel during their negotiations over the extension, Plaintiffs' counsel are "loathe to refuse any reasonable extension of time." (Preston Decl. Ex. 1.) Indeed, Plaintiffs already agreed to extend Ameritrade's time to oppose the Motion for Preliminary Injunction from July 24, 2007 to August 23, 2007 to accommodate counsel's scheduling conflicts.[1] (Court Order, dated July 26, 2007.) In principle, Plaintiffs do not object to additional extensions of time. However, Plaintiffs must oppose *this* extension of time, because

1. While the Motion for Preliminary Injunction is urgent, Ameritrade has provide only the vaguest possible justification for its extension from which it is impossible for Plaintiffs to determine whether the extension is, in fact, necessary;

2. Plaintiffs' Motion for Preliminary Injunction sought to address exactly this refusal by Ameritrade to provide any meaningful information concerning its ongoing security breach; and

3. Ameritrade omits from its Motion significant details concerning its efforts to obtain this extension, and its arguments for an extension distort Elvey's actions.

## I.  Basis for Plaintiffs' Opposition

Ameritrade seeks to discredit the Motion for Preliminary Injunction's urgency, asserting that "Plaintiffs will not be unfairly prejudiced as a result of a two-week continuance in the hearing" because Elvey delayed in filing his lawsuit. The Motion for Preliminary Injunction seeks to protect not only Elvey but also other members of the class. Ameritrade's argument downplays the threats of irreparable harm to the class which Plaintiffs' Motion for Preliminary Injunction addresses. These threats are amply discussed in Plaintiffs' Motion for Preliminary Injunction and are not recounted here except to say that 1) Ameritrade's ongoing security breach continues to disclose accountholder email addresses and potentially other personal information, like Social Security numbers, and 2) that Ameritrade continues to

---

[1] As a technical matter, Ameritrade's Motion for Extension of Time is deficient because it omits to mention this prior stipulation, required under Civil L.R. 6-3(a)(5). This deficiency is not the basis for this Opposition.

induce accountholders to provide it with personal information without disclosing the security breach in the Privacy Statement, and 3) class members do not have an adequate legal remedy for the spam or identity theft they suffer as a result of Ameritrade's ongoing security breach. (Pl.s' Mot. Prelim. Injunc. 7-11.) The potential harms of Ameritrade's sought-after delay to both class members and to our justice system are real. (Pl.s' Mot. Prelim. Injunc. 11-13, describing economic costs of spam and burden of prosecuting identity theft on legal system.) Agreeing to the extension of time sought by Ameritrade, in light of the limited information it has provided, would not be consistent with Plaintiffs' fiduciary obligations as class representatives.

## II.   Defects In Ameritrade's Motion

The paucity of detail in Ameritrade's explanation results in several substantive defects to the Ameritrade's Motion under Civil L.R. 6-3(a). Civil L.R. 6-3(a)(1) requires that Ameritrade's Motion "[i]dentifies the substantial harm or prejudice that would occur if the Court did not change the time." Ameritrade's Motion fails to identify *any* harm or prejudice to Ameritrade if the extension is not granted. Further, Civil L.R. 6-3(a)(1) requires that Ameritrade's motion "[s]et[] forth with particularity[] the reasons for the requested enlargement or shortening of time." Ameritrade's Motion says only that there was "a significant development in [Ameritrade's internal security breach] investigation" on which it will "confer with its regulators," and that "these efforts may significantly affect the company's arguments in response to Plaintiffs' pending motion." (Lee Decl. ¶¶ 4, 5.) Ameritrade's deliberately vague explanation does not rise to the level particularity required. To borrow from Rule 9(b) jurisprudence, particularity "means the who, what, when, where, and how: the first paragraph of any newspaper story." *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir. 1990). Ameritrade's Motion falls far short of that standard.

Plaintiffs have no information identifying the matters on which Ameritrade intends to confer with its regulators, and no information as to why those conferences could alter its arguments. ***Most importantly, Plaintiffs do not know whether the possible changes to Ameritrade's arguments justify extending the potential harms of a two week delay.*** Without

this information, Plaintiffs are obliged to take Ameritrade's word for that the extension is not simply a way of delaying the Motion for Preliminary Injunction. Indeed, the Motion for Preliminary Injunction seeks an equitable accounting, in part, to correct the dearth of information from Ameritrade. (Pl.s' Mot. Prelim. Injunc. 15-16.)

### III.   Motion for Extension of Time

Ameritrade's Motion for Extension of Time conveys two misleading and damaging impressions of Plaintiffs and their case: 1) that Plaintiffs' decision not to consent to the extension of time was unreasonable, and 2) that the delay in bringing Elvey's suit reflect a lack of diligence or urgency. Addressing these misimpressions is at least as important to Plaintiffs as the substantive relief sought in this Opposition.

First, Plaintiffs' decision not to consent to the extension of time was reasonable under the circumstances. Ameritrade's "significant development" occurred on August 19, 2007, but Ameritrade did not contact Plaintiffs' counsel until August 22, 2007 – the day before its deadline – *and gave Plaintiffs' counsel a deadline of three and a half hours to decide whether to consent to Ameritrade's extension request*. (Lee Decl. ¶ 4; Preston Decl. ¶¶ 4, 7.) In that three and one half hour window, Plaintiffs' counsel twice requested (verbally and by email) more detailed information about why the extension was necessary. (*Id*. ¶¶ 5, 8 & Ex. 1.) Ameritrade rebuffed Plaintiffs' counsel both times.[2] Ameritrade's counsel told Plaintiffs' counsel that would not disclose any more information than what it intended "to tell the court in our motion." (*Id*. ¶¶ 5, 9 & Ex. 2.) Ameritrade also stated that, if Plaintiffs' counsel did not provide a "definitive response" by its deadline, "*we will represent to the court that we notified you and conferred but never received a response one way or the other.*" (*Id*. ¶ 9 & Ex. 2) (emphasis added). Plaintiffs' counsel replied that "it would be most appropriate for [Ameritrade's counsel] to attach our correspondence to any motion on the extension" -- which request Ameritrade did not honor. (*Id*. ¶ 10 & Ex. 3.)

---

[2] The parties have negotiated or virtually negotiated a protective order: when Plaintiffs' counsel asked in its initial phone conference with Ameritrade's counsel whether Ameritrade could provide more information if a protective order was filed, Ameritrade indicated it would not file the protective order before its 5 pm CST deadline passed. (Preston Decl. ¶¶ 6, 7.)

Plaintiffs' Opposition to the Motion to Dismiss    3                           No. C 07 2852 MJJ

Finally, Ameritrade argues "according to the First Amended Complaint, Plaintiffs became aware of spamming events in October 2006, but did not file the original Complaint until May 2007." (Def.'s Mot. 1.)[3] This argument discounts Elvey's diligence in investigating his cause of action and Ameritrade's own role in delaying Elvey's resort to the legal system. Elvey first reported spam at his unique Ameritrade email address to Ameritrade on or about November 11, 2006. (Elvey Decl. ¶ 3.) Ameritrade responded on November 15, 2006 by indicating that Ameritrade was "conducting a thorough investigation into this matter" and that "we sincerely appreciate your cooperation and patience as we work to get to the source of this." (Elvey Decl. Ex. 1.) *In light of Ameritrade's email, Elvey waited for Ameritrade to resolve the situation until February 2007.* (Elvey Decl. ¶ 5.) Elvey received another email from Ameritrade indicating that its investigation was continuing, but that it did not at that that "have any further details into the investigation." (Elvey Decl. Ex. 2.) As the First Amended Complaint expressly alleges, at that time Elvey prepared a separate hard drive with a separate operating system for the exclusive purpose of logging into Ameritrade's website and checking email from Ameritrade "[t]o ensure that he was not responsible for leaking" his email addresses. (FAC ¶ 24. *See* Elvey Decl. ¶¶ 6-7.) ***Elvey and the class should not be penalized because of Elvey's due diligence in investigating his cause of action before seeking legal representation.*** Moreover, Elvey did not immediately seek legal representation because he did not recognize that he had legal claims. (*Id.* ¶ 13.) *Cf. Demitropoulos v. Bank One Milwaukee, N.A.*, 915 F. Supp. 1399, 1418-19 (N.D. Ill. 1996) (in class action, "it is not at all uncommon" for attorneys to educate their clients about the full range of their potential legal claims). Finally, Elvey required some time to arrange legal assistance. Elvey twice sought assistance from non-profit organizations in November 2006 and February 2007, but did not receive any response until February 15, 2007. (*Id.* ¶¶ 4, 10.) Elvey also spent at least some time looking for legal counsel who would take his case. (*Id.* ¶¶ 14-15.) Moreover, the delay in the filing of Elvey's complaint between April 25 and May 31 was attributable to counsel's due

---

[3] This is not an accurate representation of the First Amended Complaint, which alleges that Elvey did not receive spam at his unique Ameritrade accounts until "on or about November 15, 2006." (FAC ¶ 23. *But see* Elvey Decl. ¶ 2, first spam received on November 11, 2006.)

investigation of Elvey's claims. (Preston Decl. ¶ 11.) In comparison, Ameritrade is a massive corporation with virtually instantaneous access to counsel and legal advise on an hourly fee arrangement. Its criticism on the delay of filing Mr. Elvey's lawsuit does not reflect the realities of consumer class action litigation, which depends on private citizens with limited resources to investigate malfeasance or misfeasance in the marketplace.

Dated: August 23, 2007

By: /s/Alan Himmelfarb

Alan Himmelfarb
LAW OFFICES OF ALAN HIMMELFARB
2757 Leonis Blvd
Los Angeles, CA 90058
Telephone: (323) 585-8696
Fax: (323) 585-8198
consumerlaw1@earthlink.net

Scott A. Kamber
Ethan Preston
KAMBER & ASSOCIATES, LLC
11 Broadway, 22d Floor
New York, NY 10004
Telephone: (212) 920-3072
Fax: (212) 202-6364
skamber@kolaw.com
epreston@kolaw.com