1  Alan Himmelfarb
   LAW OFFICES OF ALAN HIMMELFARB
2  2757 Leonis Blvd
   Los Angeles, CA 90058
3  Telephone: (323) 585-8696
   Fax: (323) 585-8198
4  consumerlaw1@earthlink.net

5  Scott A. Kamber
   Ethan Preston
6  KAMBER & ASSOCIATES, LLC
   11 Broadway, 22d Floor
7  New York, NY 10004
   Telephone: (212) 920-3072
8  Fax: (212) 202-6364
   skamber@kolaw.com
9  epreston@kolaw.com

10

11 *Counsel for Plaintiffs*

12         **IN THE UNITED STATES DISTRICT COURT**
         **FOR THE NORTHERN DISTRICT OF CALIFORNIA**
                **SAN FRANCISCO DIVISION**
13

14 | MATTHEW ELVEY, an individual, and | No. C 07 2852 MJJ |
   | GADGETWIZ, INC., an Arizona corporation, | |

15 on their own behalf and on behalf of all     Judge Martin J. Jenkins
   others similarly situated,
                                              **DECLARATION OF ETHAN**
16                Plaintiffs                   **PRESTON IN SUPPORT OF**
                                              **PLAINTIFFS' OPPOSITION TO**
17          v.                                 **DEFENDANT TD AMERITRADE,**
                                              **INC.'S MOTION FOR EXTENSION**
18 TD AMERITRADE, INC., a New York            **OF TIME**
   corporation, and DOES 1 to 100,
19
                Defendants.
20

21

22

23

24

25

26

27

28

Declaration of Ethan Preston in Support of                                    No. C 07 2852 MJJ
Plaintiffs' Opposition to Defendant TD Ameritrade, Inc.'s Motion For Extension of Time

Pursuant to 28 U.S.C.§ 1746, I, Ethan Preston, hereby declare and state as follows:

1.      I am an attorney admitted to practice in the state of Illinois, and represent Plaintiffs in the above-titled action. I am entering this declaration pursuant to Civil L.R. 6-3(c) in support of Plaintiffs' Opposition to Defendant's Motion For Extension of Time to File Opposition to Plaintiffs' Motion for Preliminary Injunction and Class Certification. This declaration is based upon my personal knowledge, except where expressly noted otherwise.

2.      No earlier than 12 pm CST (or 10 pm PST), I received an email from Mr. Rubin, TD Ameritrade's counsel in this proceeding, that indicated he wished to speak with me.

3.      I was first able to speak with Mr. Rubin around 1:30 pm CST (i.e., 11:30 PST), August 22, 2007. In that phone call, Mr. Rubin indicated that TD Ameritrade had made a significant discovery and/or breakthrough in its internal investigation relevant to this case, and indicated that Ameritrade sought Plaintiffs' consent to a two week extension with respect to Plaintiffs' pending motion for preliminary injunction.

4.      In the 1:30 pm phone call, I offered to Mr. Rubin, in the alternative, that the parties would at least attempt to keep to the current briefing schedule, but that Plaintiffs would stipulate to Ameritrade having leave to file whatever amended pleadings that would be appropriate. Mr. Rubin ultimately declined this offer.

5.      In the 1:30 pm phone call, I inquired why Ameritrade's discovery would require an extension, but Mr. Rubin indicated that Ameritrade had instructed him not to provide any information about the discovery. Mr. Rubin further indicated that this was to prevent representation that might later turn out to be inaccurate.

6.      Plaintiffs have been negotiating a protective order with Ameritrade for over a week. I am not directly involved in those negotiations, but my understanding is that the parties had achieved a final draft order that was ready to be filed. I

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

asked Mr. Rubin whether Ameritrade could provide more detailed information if the protective order was filed.

7.    Mr. Rubin indicated that the filing of the protective order "just wasn't happening" today and pressed for Plaintiffs' consent to the extension. Further, Mr. Rubin informed me that Ameritrade had set a 5 pm CST (3 pm PST) deadline for Plaintiffs to consent to the extension. I concluded the 1:30 phone call by indicating that I would consider the extension and would respond to the request for an extension by the 5pm CST deadline set by Ameritrade.

8.    I sent an email to Mr. Rubin at 3:56 pm CST which requested that Mr. Rubin state in writing, in as much detail his client and time would allow, "a) what steps Ameritrade will be taking in the proposed extension, and b) what changes or alterations Ameritrade expects to made as a result of the proposed extension" so that Plaintiffs' counsel could adequately evaluate the request for an extension. This email is attached as Exhibit 1 to this Declaration.

9.    Mr. Rubin responded by email at 4:30 pm CST. Mr. Rubin's response indicated only that "there was a significant development in TD AMERITRADE's ongoing internal investigation of possible unauthorized acquisition of customer e-mail addresses from TD Ameritrade's computer systems" that might "significantly affect the company's arguments in response to Plaintiffs' pending motion." Mr. Rubin's reply also stated that if he did not "receive a definitive response from [me] by 3 pm PDT, we will represent to the court that we notified you and conferred but never received a response one way or the other." This email is attached as Exhibit 2 to this Declaration.

10.    I replied by email at 4:58 pm CST. I indicated my belief to Mr. Rubin that "it would be most appropriate for [him] to attach our correspondence to any motion on the extension." I also stated that we "reluctantly decline[d] to consent to any extension" as "we do not believe that acceding to another extension while there is ongoing harm to the class given [the level of detail

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

provided by Ameritrade] would . . . be consistent with our fiduciary obligations to the class." This email is attached as Exhibit 3 to this Declaration.

11.    I was first contacted by Mr. Elvey regarding the matters alleged in the First Amended Complaint on April 25, 2007. Between that time and May 30, I investigated Mr. Elvey's representations on those matters, reviewed the evidence he had collected, conducted other investigations into the matter by reading various accounts of those matters and contacting potential witnesses, prepared a retainer letter for Mr. Elvey, drafted CLRA correspondence to TD Ameritrade, and drafted a complaint when I realized that Ameritrade was directing class members to destroy evidence after reading a story on a prominent online forum for technology and technology policy news on May 30, 2007. I directed the filing of Elvey's complaint the next day, May 31.

Pursuant to Section X of the Northern District of California's General Order No. 45 on electronic case filing and 28 U.S.C.§ 1746, in lieu of Ethan Preston's signature on this declaration, Alan Himmelfarb attests that Ethan Preston is the signatory of this declaration, and that Ethan Preston concurred to this declaration on August 22, 2007.

DATE:  August 23, 2007

                                            /s/Alan Himmelfarb
                                            ALAN HIMMELFARB

Exhibit 1

**From:** ep@eplaw.us
**To:** LRubin@mayerbrownrowe.com
**Cc:** skamber@kolaw.com
**Subject:** Extension for time to oppose Plaintiff's Motion for Preliminary     Injunction
**Date:** Wed, 22 Aug 2007 16:03:47 -0500 (CDT)

Lee,

You called me around 10am PST to initiate the discussion on the extension
for the opposition to Plaintiff's motion for preliminary injunction. In
our conference at 1pm CST, you indicated that Ameritrade had made a
momentous discovery and/or breakthrough in its internal investigation into
the source of the spam at issue in the FAC, and indicated that Ameritrade
sought a two week extension.

I initially offered (and I continue to offer) in the alternative that we
would at least attempt to keep to the current briefing schedule, but that
we would be happy to stipulate to Ameritrade having leave to file whatever
amended pleadings as would be appropriate. You did not reject that offer,
but pressed with the extension. I asked some questions about why
Ameritrade's discovery would require an extension, but you indicated that
Ameritrade had instructed you not to say anything about the discovery
(lest whatever representations you made turned out out be inaccurate).

You indicated, in our 1pm CST conference, that I had a 3 pm PST deadline
to stipulate to the extension, or not.

These are the facts as I understand them. I am writing 1) to confirm that
we agree on these facts, and 2) so that we can adequately evaluate
Ameritrade's request, to ask you please state in writing, in as much
detail as your client and time allow, a) what steps Ameritrade will be
taking in the proposed extension, and b) what changes or alterations
Ameritrade expects to made as a result of the proposed extension?

Please understand that once we have this information, we would be
favorably inclined to grant it -- we are loathe to refuse any reasonable
extension of time -- but that we would be hard pressed to grant it given
the limited information Ameritrade has provided at the current time.

Thanks,

Ethan

Exhibit 2

**From:** Rubin, Lee H. <LRubin@mayerbrownrowe.com>
**To:** ep@eplaw.us
**Subject:** RE: Extension for time to oppose Plaintiff's Motion for Preliminary          Injunction
**Date:** Wed, 22 Aug 2007 14:30:37 -0700 *(16:30 CDT)*

Ethan -- What I can tell you now is what we intend to tell the court in
our motion: That this past Sunday, August 19, 2007, there was a
significant development in TD AMERITRADE's ongoing internal
investigation of possible unauthorized acquisition of customer e-mail
addresses from TD Ameritrade's computer systems; that TD AMERITRADE is
currently in the midst of evaluating the newly discovered information
and intends to confer with its regulators regarding the matter and that
the results of these efforts may significantly affect the company's
arguments in response to Plaintiffs' pending motion.

As I explained, in light of the current circumstances, we believe we
need additional time to formulate our response and therefore intend to
ask the court for the two week extension and for a two week continuance
in the other briefing dates. I assume from your email below that you do
not consent to this extension, but please provide me with a formal yes
or no. As I mentioned, we believe it is necessary to file this motion
by 3 pm and you said that you would be in a position to respond to our
request by that time. If I do not receive a definitive response from
you by 3 pm PDT, we will represent to the court that we notified you and
conferred but never received a response one way or the other. Thanks,
Lee
-----Original Message-----
From: ep@eplaw.us [mailto:ep@eplaw.us]
Sent: Wednesday, August 22, 2007 2:04 PM
To: Rubin, Lee H.
Cc: skamber@kolaw.com
Subject: Extension for time to oppose Plaintiff's Motion for Preliminary
Injunction

Lee,

You called me around 10am PST to initiate the discussion on the
extension
for the opposition to Plaintiff's motion for preliminary injunction. In
our conference at 1pm CST, you indicated that Ameritrade had made a
momentous discovery and/or breakthrough in its internal investigation
into
the source of the spam at issue in the FAC, and indicated that
Ameritrade
sought a two week extension.

I initially offered (and I continue to offer) in the alternative that we
would at least attempt to keep to the current briefing schedule, but
that
we would be happy to stipulate to Ameritrade having leave to file
whatever
amended pleadings as would be appropriate. You did not reject that
offer,
but pressed with the extension. I asked some questions about why
Ameritrade's discovery would require an extension, but you indicated
that
Ameritrade had instructed you not to say anything about the discovery
(lest whatever representations you made turned out out be inaccurate).

You indicated, in our 1pm CST conference, that I had a 3 pm PST deadline
to stipulate to the extension, or not.

These are the facts as I understand them. I am writing 1) to confirm

we agree on these facts, and 2) so that we can adequately evaluate
Ameritrade's request, to ask you please state in writing, in as much
detail as your client and time allow, a) what steps Ameritrade will be
taking in the proposed extension, and b) what changes or alterations
Ameritrade expects to made as a result of the proposed extension?

Please understand that once we have this information, we would be
favorably inclined to grant it -- we are loathe to refuse any reasonable
extension of time -- but that we would be hard pressed to grant it given
the limited information Ameritrade has provided at the current time.

Thanks,

Ethan

IRS CIRCULAR 230 NOTICE. Any advice expressed above as to tax matters was neither written nor
intended by the sender or Mayer, Brown, Rowe & Maw LLP to be used and cannot be used by any taxpayer
for the purpose of avoiding tax penalties that may be imposed under U.S. tax law. If any person uses
or refers to any such tax advice in promoting, marketing or recommending a partnership or other
entity, investment plan or arrangement to any taxpayer, then (i) the advice was written to support
the promotion or marketing (by a person other than Mayer, Brown, Rowe & Maw LLP) of that transaction
or matter, and (ii) such taxpayers should seek advice based on the taxpayers particular circumstances
from an independent tax advisor.

This email and any files transmitted with it are intended solely for the use of the individual or
entity to whom they are addressed. If you have received this email in error please notify the system
manager. If you are not the named addressee you should not disseminate, distribute or copy this
e-mail.

Exhibit 3

**From:** ep@eplaw.us

**To:** Rubin, Lee H. <LRubin@mayerbrownrowe.com>

**Subject:** RE: Extension for time to oppose Plaintiff's Motion for Preliminary          Injunction

**Date:** Wed, 22 Aug 2007 16:58:41 -0500 (CDT)

Lee,

I believe it would be most appropriate for you to attach our
correspondence to any motion on the extension. Given the paucity of
definitive information advanced by Ameritrade at this time, we must
reluctantly decline to consent to any extension. We had sought a detailed
explanation of the reasons for the extension; Ameritrade has responded by
claiming there is some undefined "significant development" that "may
significantly affect the company's arguments in response to Plaintiffs'
pending motion." Unfortunately, we do not believe that acceding to another
extension while there is ongoing harm to the class given this level of
detail would not be consistent with our fiduciary obligations to the
class.

Regards,

Ethan


> Ethan -- What I can tell you now is what we intend to tell the court in
> our motion:  That this past Sunday, August 19, 2007, there was a
> significant development in TD AMERITRADE's ongoing internal
> investigation of possible unauthorized acquisition of customer e-mail
> addresses from TD Ameritrade's computer systems; that TD AMERITRADE is
> currently in the midst of evaluating the newly discovered information
> and intends to confer with its regulators regarding the matter and that
> the results of these efforts may significantly affect the company's
> arguments in response to Plaintiffs' pending motion.
>
> As I explained, in light of the current circumstances, we believe we
> need additional time to formulate our response and therefore intend to
> ask the court for the two week extension and for a two week continuance
> in the other briefing dates.  I assume from your email below that you do
> not consent to this extension, but please provide me with a formal yes
> or no.  As I mentioned, we believe it is necessary to file this motion
> by 3 pm and you said that you would be in a position to respond to our
> request by that time.  If I do not receive a definitive response from
> you by 3 pm PDT, we will represent to the court that we notified you and
> conferred but never received a response one way or the other.  Thanks,
> Lee
> -----Original Message-----
> From: ep@eplaw.us [mailto:ep@eplaw.us]
> Sent: Wednesday, August 22, 2007 2:04 PM
> To: Rubin, Lee H.
> Cc: skamber@kolaw.com
> Subject: Extension for time to oppose Plaintiff's Motion for Preliminary
> Injunction
>
> Lee,
>
> You called me around 10am PST to initiate the discussion on the
> extension
> for the opposition to Plaintiff's motion for preliminary injunction. In
> our conference at 1pm CST, you indicated that Ameritrade had made a
> momentous discovery and/or breakthrough in its internal investigation
> into
> the source of the spam at issue in the FAC, and indicated that
> Ameritrade

> sought a two week extension.
>
> I initially offered (and I continue to offer) in the alternative that we
> would at least attempt to keep to the current briefing schedule, but
> that
> we would be happy to stipulate to Ameritrade having leave to file
> whatever
> amended pleadings as would be appropriate. You did not reject that
> offer,
> but pressed with the extension. I asked some questions about why
> Ameritrade's discovery would require an extension, but you indicated
> that
> Ameritrade had instructed you not to say anything about the discovery
> (lest whatever representations you made turned out out be inaccurate).
>
> You indicated, in our 1pm CST conference, that I had a 3 pm PST deadline
> to stipulate to the extension, or not.
>
> These are the facts as I understand them. I am writing 1) to confirm
> that
> we agree on these facts, and 2) so that we can adequately evaluate
> Ameritrade's request, to ask you please state in writing, in as much
> detail as your client and time allow, a) what steps Ameritrade will be
> taking in the proposed extension, and b) what changes or alterations
> Ameritrade expects to made as a result of the proposed extension?
>
> Please understand that once we have this information, we would be
> favorably inclined to grant it -- we are loathe to refuse any reasonable
> extension of time -- but that we would be hard pressed to grant it given
> the limited information Ameritrade has provided at the current time.
>
> Thanks,
>
> Ethan
>
> IRS CIRCULAR 230 NOTICE. Any advice expressed above as to tax matters was
> neither written nor intended by the sender or Mayer, Brown, Rowe & Maw LLP
> to be used and cannot be used by any taxpayer for the purpose of avoiding
> tax penalties that may be imposed under U.S. tax law. If any person uses
> or refers to any such tax advice in promoting, marketing or recommending a
> partnership or other entity, investment plan or arrangement to any
> taxpayer, then (i) the advice was written to support the promotion or
> marketing (by a person other than Mayer, Brown, Rowe & Maw LLP) of that
> transaction or matter, and (ii) such taxpayers should seek advice based on
> the taxpayers particular circumstances from an independent tax advisor.
>
> This email and any files transmitted with it are intended solely for the
> use of the individual or entity to whom they are addressed. If you have
> received this email in error please notify the system manager. If you are
> not the named addressee you should not disseminate, distribute or copy
> this e-mail.
>

Alan Himmelfarb
LAW OFFICES OF ALAN HIMMELFARB
2757 Leonis Blvd
Los Angeles, CA 90058
Telephone: (323) 585-8696
Fax: (323) 585-8198
consumerlaw1@earthlink.net

Scott A. Kamber
Ethan Preston
KAMBER & ASSOCIATES, LLC
11 Broadway, 22d Floor
New York, NY 10004
Telephone: (212) 920-3072
Fax: (212) 202-6364
skamber@kolaw.com
epreston@kolaw.com

*Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| MATTHEW ELVEY, an individual, and GADGETWIZ, INC., an Arizona corporation, on their own behalf and on behalf of all others similarly situated, | No. C 07 2852 MJJ |
| | Judge Martin J. Jenkins |
| Plaintiffs | **DECLARATION OF MATTHEW ELVEY IN SUPPORT OF PLAINTIFFS' OPPOSITION TO DEFENDANT TD AMERITRADE, INC.'S MOTION FOR EXTENSION OF TIME** |
| v. | |
| TD AMERITRADE, INC., a New York corporation, and DOES 1 to 100, | |
| Defendants. | |

Pursuant to 28 U.S.C. § 1746, I, Matthew Elvey, hereby declare and state as follows:

1. I am over the age of eighteen and am fully competent to make this declaration. I make this declaration based upon personal knowledge.

2. I provided Ameritrade with an unique email address in October 24, 2006, and received spam at that email address at November 11, 2006. From this, I determined that Ameritrade might be disclosing my email address to spammers.

3. I reported the incident to Ameritrade on or about November 11, 2006, and Ameritrade sent me email on November 15, 2006 which reassured me that it was investigating the matter and would deal with it appropriately. A copy of this email is attached as Exhibit 1.

4. I sought assistance from the Privacy Rights Clearinghouse in November 19, 2006 and February 15, 2007. The Privacy Rights Clearinghouse did not respond until February 15, 2007, when it indicated it would not be able to assist me.

5. I waited for a resolution from Ameritrade from the date of its November 15, 2006 email until February 2007.

6. In February 2007, I set up a separate hard drive with a separate operating system on my computer for the exclusive purpose of logging into Ameritrade's website and checking email from Ameritrade.

7. Afterwards, I provided Ameritrade with another unique email address on February 14, 2007. I followed this procedure for the express purpose of eliminating the possibility that I was somehow responsible for disclosing that second email address to spammers.

8. Nonetheless, I began to receive spam at that second email address, and conclusively determined that Ameritrade must have been responsible for disclosing that second email address to spammers.

9. I received a second email from Ameritrade on February 16, 2007 that indicated that its investigation into the disclosure of my email address was continuing, but that Ameritrade did not have anything further to report at that time. A copy

of this email is attached as Exhibit 2.

10.  I sought assistance in February 15, 2007 from the ID Theft Resource Center. The ID Theft Resource Center never responded to my request for assistance.

11.  I understood that Ameritrade's disclosure of my email address was a serious matter in November 2006, but I did not consider legal action at that time.

12.  After November 2006, I gradually understood that Ameritrade, despite its reassuring emails, was not making adequate progress in addressing the problem and I became aware that there were other people who had determined that Ameritrade had disclosed their unique email addresses to spammers, and that my situation was not unique.

13.  I did not consider legal action until April 2007, when I concluded that the problem was so serious that it would be appropriately dealt with in the legal system.

14.  I emailed one class action firm on April 13, 2007 but did not receive any response.

15.  I emailed Ethan Preston, my current counsel in this case, on April 25, 2007.

Pursuant to Section X of the Northern District of California's General Order No. 45 on electronic case filing and 28 U.S.C. § 1746, in lieu of Matthew Elvey's signature on this declaration, Alan Himmelfarb attests that Matthew Elvey is the signatory of this declaration, and that Matthew Elvey concurred to this declaration on August 23, 2007.

DATE:  August 23, 2007

/s/Alan Himmelfarb
ALAN HIMMELFARB

Exhibit 1

**Subject:** Re: Internet security (KMM33822988I17490L0KM)
**From:** TD AMERITRADE Client Services <clientservices@tdameritrade.com>
**Date:** Wed, 15 Nov 2006 16:23:12 -0600 (CST)
**To:** MATTHEW ELVEY <AMERITRADE5@matthew.elvey.com>

Mr. Elvey,

Thank you for reporting that you received spam e-mail at an e-mail address you use with TD
AMERITRADE.

We take your privacy very seriously, and are conducting a thorough investigation into this matter.


To help us get to the source of the spam, we would appreciate it if you would reply to this
message and provide the following:

-        The date the e-mail was received
-        The address the spam was sent to (your e-mail address)
-        The e-mail source (the "from" address)
-        Whether this was the first occurrence

We sincerely appreciate your cooperation and patience as we work to get to the source of this.

If you'd like to learn about general tips about privacy and security, you can visit the Security
Center online. You?ll find it after you log on, under the Client Services menu.


Thank you,

Donald S.
Technology Support, TD AMERITRADE
Division of TD AMERITRADE, Inc.

Exhibit 2

**Subject:** Re: [Fwd: 04.1 Our invetigation [_____]] (KMM35641335I17490L0KM)
**From:** TD AMERITRADE Client Services <clientservices@tdameritrade.com>
**Date:** Fri, 16 Feb 2007 08:47:27 -0600 (CST)
**To:** Matthew Elvey <matthew@elvey.com>

```
Mr. Elvey:

Thank you for contacting us in regards to the spam e-mails you have received.  We continue to
investigate the spam reports. We are doing a thorough check of everything so we can find the root
cause and work with the appropriate authorities to get it stopped. At this time we do not have any
further details into the investigation. We appreciate your patience while we continue to
investigate. Please contact us if you have any further questions or concerns.




Sincerely,

Chris B.
Manager, Technology Support, TD AMERITRADE
Division of TD AMERITRADE, Inc.


Original Message Excluded:
------------------------
```