1  MAYER BROWN LLP
   LEE H. RUBIN (SBN 141331)
2  SHIRISH GUPTA (SBN 205584)
   Two Palo Alto Square, Suite 300
3  Palo Alto, CA  94306
   Telephone: (650) 331-2000
4  Facsimile:  (650) 331-2060
   lrubin@mayerbrown.com
5  sgupta@mayerbrown.com

6  Counsel for Defendant TD AMERITRADE, Inc.

7

8

9

10                    UNITED STATES DISTRICT COURT

11      NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

12

13  MATTHEW ELVEY, an individual, and        Case No. C-07-2852 MJJ
    GADGETWIZ, INC., an Arizona
14  corporation, on their own behalf and on   **REPLY IN SUPPORT OF MOTION TO**
    behalf of all others similarly situated,  **DISMISS FIRST AMENDED**
15                                            **COMPLAINT**
                    Plaintiffs
16                                            Judge Martin J. Jenkins
           v.
17                                            Date: September 18, 2007
     TD AMERITRADE, INC., a New York         Time: 9:30 a.m.
18  corporation, and DOES 1 to 100,          Location:  Courtroom 11, 19th Floor
                                                        450 Golden Gate Ave.
19                  Defendants.                          San Francisco, CA 94102

20

21

22

23

24

25

26

27

28

# TABLE OF CONTENTS

**Page**

INTRODUCTION ................................................................................................................. 1

ARGUMENT ...................................................................................................................... 1

I.    A Choice-Of-Law Provision Forecloses Plaintiffs' CLRA And UCL Claims. ................. 1

II.   Federal Law Preempts Plaintiffs' State Law Claims. ....................................................... 2

    A.    SLUSA Preemption. ............................................................................................. 2

    B,    Implied Preemption. ............................................................................................. 4

III.  Plaintiffs Do Not And Cannot Allege A Violation Of The CLRA Or The UCL. ............. 5

    A.    There Has Been No Misrepresentation Or Actionable Omission. ........................ 5

    B.    Plaintiffs Lack Standing. ...................................................................................... 7

    C.    Plaintiffs Cannot Pursue A UCL Claim Based On Securities Transactions. ........ 8

IV.   Plaintiffs Fail To State A Breach Of Fiduciary Duty Claim. ........................................... 9

V.    Plaintiffs Fail To State A CFAA Claim. ......................................................................... 11

VI.   Plaintiffs Fail To State A CAN SPAM Act Claim. ......................................................... 13

    A.    Plaintiffs Lack Standing. .................................................................................... 13

    B.    TD AMERITRADE Did Not Initiate Spam. ...................................................... 14

CONCLUSION ................................................................................................................. 16

# TABLE OF AUTHORITIES

**Cases**                                                                                                  **Page(s)**

*Am. Online v. Superior Court*, 90 Cal. App. 4th 1 (1st Dist. 2001).............................................. 1

*Aral v. EarthLink, Inc.*, 134 Cal. App. 4th 544 (2d Dist. 2005) .................................................... 2

*Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955 (2007) ..................................................... 1, 5, 11, 13

*Bowen v. Ziasun Technologies, Inc.*, 116 Cal. App. 4th 777 (4th Dist. 2004)......................... 8, 9

*Butera & Andrews v. IBM*, 456 F. Supp. 2d 104 (D.D.C. 2006) ................................................. 12

*Cont'l Airlines, Inc. v. Mundo Travel Corp.*, 412 F. Supp. 2d 1059 (E.D. Cal. 2006)................. 2

*Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119 (9th Cir. 2005) .......................... 4

*Daugherty v. Am. Honda Motor Co.*, Inc., 144 Cal. App. 4th 824 (2d Dist. 2006)..................... 6

*DeSciose v. Chiles, Heider & Co.*, 239 Neb. 195 (1991) ............................................................ 9

*Discover Bank v. Superior Court*, 36 Cal. 4th 148 (2005) ........................................................ 1

*Doe v. Dartmouth-Hitchcock Med. Ctr.*, No. Civ. 00-100, 2001 WL 873063
    (D.N.H. July 19, 2001)........................................................................................... 12, 13

*Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951 (1997)......................................... 8

*Feitelberg v. Merrill Lynch & Co., Inc.*, 234 F. Supp. 2d 1043 (N.D. Cal. 2002),
    *aff'd* 353 F.3d 765 (9th Cir. 2003) ....................................................................................... 3

*Forbes v. Wells Fargo Bank, N.A.*, 420 F. Supp. 2d 1018 (D. Min.. 2006)................................. 7

*Garland-Sash v. Lewis*, No. 05 Civ. 6827, 2007 WL 935013 (S.D.N.Y. Mar. 26, 2007).......... 12

*Gordon v. Virtumundo, Inc.*, No. 06-0204, 2007 WL 1459395
    (W.D. Wash. May 15, 2007)................................................................................................. 14

*In re Am. Online, Inc. Version 5.0 Software Litig.*, 168 F. Supp. 2d 1359 (S.D. Fla. 2001) ...... 12

*In re Dreyfus Mut. Funds Fee Litig.*, 428 F. Supp. 2d 342 (W.D. Pa. 2005) .............................. 3

*Key v. DSW, Inc.*, 454 F. Supp. 2d 684 (S.D. Ohio 2006)........................................................... 7

*Martinez Tapia v. Chase Manhattan Bank, N.A.*, 149 F.3d 404 (5th Cir. 1998) ...................... 10

*Medimatch, Inc. v. Lucent Techs., Inc.*, 120 F. Supp. 2d 842 (N.D. Cal. 2000)......................... 2

*Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71 (2006) ............................... 4

*Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688 (1st Dist. 2007)........... 9

*Petersen v. Sec. Settlement Corp.*, 226 Cal. App. 3d 14456 (4th Dist. 1991) ...................... 9, 10

- ii -

# TABLE OF AUTHORITIES
### (Continued)

**Cases**                                                                    **Page(s)**

*Randolph v. ING Life Ins. & Annuity Co.*, 486 F. Supp. 2d 1 (D.D.C. 2007) .............................7

*Role Models Am., Inc. v. Jones*, 305 F. Supp. 2d 564 (D. Md. 2004)........................................ 12

*Roskind v. Morgan Stanley Dean Witter & Co.*, 80 Cal. App. 4th 345 (1st Dist. 2000) .............9

*SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593 (E.D. Va. 2005) ................................... 12

*Sovereign Bank v. BJ's Wholesale Club, Inc.*, 427 F. Supp. 2d 526 (M.D. Pa. 2006) .............. 10

*Stevens v. Marco*, 147 Cal. App.2 d 357 (2d Dist. 1956) ......................................................... 10

*Theofel v. Farey-Jones*, 341 F.3d 978 (9th Cir. 2003)............................................................... 11

*Wash Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906 (2001)................................................ 2

*Williams v. Gerber Prods. Co.*, 439 F. Supp. 2d 1112 (S.D. Cal. 2006) .................................... 5

*Woods v. Young*, 53 Cal. 3d 315 (1991) .................................................................................... 6


**Statutes and Rules**                                                       **Page(s)**

17 C.F.R. § 230.146(b) ................................................................................................................ 3

17 C.F.R. § 240.15g-2.................................................................................................................. 4

15 U.S.C. § 77p(f)(3) ................................................................................................................... 3

15 U.S.C. § 77r(b)........................................................................................................................ 3

15 U.S.C. § 78bb(f)(5)(E) ........................................................................................................... 3

15 U.S.C. § 78i............................................................................................................................. 4

15 U.S.C. § 78l(k)........................................................................................................................ 4

15 U.S.C. § 78u............................................................................................................................ 4

15 U.S.C. § 78u-3 ........................................................................................................................ 4

15 U.S.C. § 78w........................................................................................................................... 4

15 U.S.C. § 7701(a)(10).............................................................................................................. 15

15 U.S.C. § 7702(9) .................................................................................................................... 15

15 U.S.C. § 7703(b)(2) ............................................................................................................... 15

REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. C-07-2852 MJJ

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# TABLE OF AUTHORITIES
### (Continued)

**Statutes and Rules**                                                                 **Page(s)**

15 U.S.C. § 7704(a)(1) ........................................................................................ 15

15 U.S.C. § 7704(b)(1)(A) ................................................................................... 15

15 U.S.C. § 7706(g)(1) .................................................................................. 13, 14

15 U.S.C. § 7706(g)(3) ........................................................................................ 14

18 U.S.C. § 1030(a) ............................................................................................. 13

18 U.S.C. § 1030(a)(1) ........................................................................................ 12

18 U.S.C. § 1030(a)(2) ........................................................................................ 12

18 U.S.C. § 1030(a)(4) ........................................................................................ 12

18 U.S.C. § 1030(a)(5) ........................................................................................ 11

18 U.S.C. § 1030(a)(5)(A)(ii) ........................................................................ 11, 12

18 U.S.C. § 1030(a)(5)(A)(iii) ....................................................................... 11, 12

18 U.S.C. § 1030(g) ........................................................................................ 12, 13

18 U.S.C. § 1962 ................................................................................................. 13

18 U.S.C. § 1964(c) ............................................................................................. 13

Cal. Bus. & Prof. Code § 17204 ........................................................................... 7

Cal. Civ. Code § 1780(a) ...................................................................................... 7

Cal. Civ. Code § 1798.82(a) ................................................................................. 6

Fed. R. Civ. P. 8(a)(2) .......................................................................................... 5

Neb. Rev. Stat. § 25-319 ...................................................................................... 1

Neb. Rev. Stat. § 59-1602 .................................................................................... 1


**Other Authorities**                                                                  **Page(s)**

FINRA Rule 3110(f) .............................................................................................. 1

S. Rep. No. 108-102 (2003) ................................................................................ 14

SEC Suspends Trading Of 35 Companies Touted In Spam Email Campaign (Mar. 8, 207),
        http://sec.gov/news/press/2007/2007-34.htm ..................................................... 4

**INTRODUCTION**

Plaintiffs' effort to avoid dismissal of their suit against TD AMERITRADE fails because their claims are without legal support and because they do not plead facts that "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 127 S. Ct. 1955, 1964-65 (2007).

**ARGUMENT**

**I.    A CHOICE-OF-LAW PROVISION FORECLOSES PLAINTIFFS' CLRA AND UCL CLAIMS.**

The motion to dismiss showed (at 4-6) that plaintiffs' claims under California's Consumer Legal Remedies Act ("CLRA") and California's Unfair Competition Law ("UCL") should be dismissed because Elvey (who alone asserts CLRA and UCL claims) expressly agreed that Nebraska law would govern any disputes arising out of his relationship with TD AMERITRADE. Plaintiffs principally respond (at 1-2) that the relevant contract's choice-of-law provision is unenforceable because the contract also includes a supposedly unconscionable class action waiver. In truth, the choice-of-law provision has nothing to do with the supposed class action waiver. It is in an entirely different section of the contract, and it says nothing about the availability of a class action. *Compare* Attach. A at 9, § 13(k) (choice of law), *with id.* at 8, § 12 (arbitration).[1] Indeed, the contract contains a severability provision that would leave the choice-of-law provision intact even if the supposed class action waiver were determined to be unconscionable. *Id.* at 8, § 13(a). And the supposed class action waiver is not remotely unconscionable. It uses language dictated by FINRA with SEC approval (*see* FINRA Rule 3110(f)) and requires only that a class action proceed in court instead of arbitration (Attach. A at 8, § 12). *Contrast Discover Bank v. Superior Court*, 36 Cal. 4th 148, 159-61 (2005) (class action waiver unenforceable where defendants foreclosed possibility of class action).

Plaintiffs' further suggestion (at 2-3) that California law must apply because Nebraska law impairs the rights of California residents to pursue a class action is equally ill-founded. Nothing in Nebraska law would preclude a properly asserted class action in this case. *See* Neb. Rev. Stat. § 25-319 (allowing class actions); Neb. Rev. Stat. § 59-1602 (UCL analogue).[2] The

---

[1] "Attach. A" refers to Attachment A submitted with the motion to dismiss.

[2] That fact distinguishes the cases plaintiffs cite on the subject. *Am. Online v. Superior Court*, 90

choice-of-law provision, therefore, should be enforced and plaintiffs' UCL claim should be dismissed in accord with the authority TD AMERITRADE cited in its motion to dismiss. *Cont'l Airlines, Inc. v. Mundo Travel Corp.*, 412 F. Supp. 2d 1059, 1070 (E.D. Cal. 2006) ("A valid choice-of-law provision selecting another state's law is grounds to dismiss a claim under California's UCL"); *Medimatch, Inc. v. Lucent Techs., Inc.*, 120 F. Supp. 2d 842, 861-62 (N.D. Cal. 2000) (enforcing choice-of-law provision to dismiss UCL claim).[3]  Plaintiffs offer no reason why the same is not true for their CLRA claim—as to which the rationale underlying the UCL authorities applies with equal force—notwithstanding the CLRA's anti-waiver provision.

## II.    FEDERAL LAW PREEMPTS PLAINTIFFS' STATE LAW CLAIMS.

### A.    SLUSA Preemption.

The motion to dismiss showed (at 6-8) that plaintiffs' state-law CLRA, UCL, and fiduciary duty claims fall squarely within the preemptive scope of the Securities Litigation Uniform Standards Act of 1998 ("SLUSA").  Plaintiffs' efforts to rebut that showing (at 3-5) mischaracterize their own complaint and ignore the relevant SLUSA precedents.

Plaintiffs first claim that SLUSA does not apply because their state law claims "are unrelated to the purchase of securities."  Their complaint belies that assertion.  The FAC alleges in support of each of its state-law claims that TD AMERITRADE "fail[ed] to disclose to California Resident Class members who trade in stock touted in the Traced Spam that the stock is being touted by the Traced Spam and its value is very likely being manipulated."  FAC ¶¶ 61, 65, 74.  The FAC also prominently alleges that "stock spam is a technique for manipulating stock prices—essentially a contemporary version of a classic pump-and-dump" (FAC ¶ 18), that TD AMERITRADE "initiated" stock spam (FAC ¶ 4), that TD AMERITRADE "benefits from the [spam] because its accountholders trade stocks based on tips in the [spam] and Ameritrade earns

Cal. App. 4th 1, 5 (1st Dist. 2001) (refusing to enforce choice-of-law and forum selection provisions because Virginia law forbade class actions); *Aral v. EarthLink, Inc.*, 134 Cal. App. 4th 544, 555-64 (2d Dist. 2005) (refusing to enforce choice-of-law, forum selection, mandatory arbitration, and class arbitration waiver provisions to require individual arbitration in Georgia).
[3] Contrary to plaintiffs, the fact that those authorities involve commercial disputes hardly means the same rule does not apply to consumer suits that (like this one) are subject to valid choice-of-law provisions. *Wash. Mut. Bank, FA v. Superior Court*, 24 Cal. 4th 906, 917 (2001) (in suit by consumers: "California, we observe, has no public policy against the enforcement of choice-of-law provisions contained in contracts of adhesion where they are otherwise appropriate.").

commissions on those trades" (FAC ¶ 31), and that TD AMERITRADE therefore "would have a pernicious incentive to allow the security breach to continue" (FAC ¶ 43). Plus, plaintiffs specifically seek the return of commissions paid on securities transactions executed through TD AMERITRADE. FAC ¶¶ 63, 76, Prayer (b). Indeed, plaintiffs' brief itself acknowledges "allegations in the FAC in which the omission of material facts *are* connected with the purchase of stocks" (at 4) and relies on allegations regarding commissions earned from spam-inspired trading (at 9). Plaintiffs' state-law claims allege a fraudulent scheme to manipulate stock prices and generate trading commissions that, according to plaintiffs, TD AMERITRADE participated in by making misrepresentations and omissions. Such allegations plainly trigger SLUSA. *See, e.g.*, *Feitelberg v. Merrill Lynch & Co., Inc.*, 234 F. Supp. 2d 1043, 1047-49 (N.D. Cal. 2002) (stock touting), *aff'd* 353 F.3d 765 (9th Cir. 2003); *In re Dreyfus Mut. Funds Fee Litig.*, 428 F. Supp. 2d 342, 354-56 (W.D. Pa. 2005) (commission generation).

Plaintiffs next claim that their suit is not a "covered class action" subject to SLUSA preemption, because they seek an injunction and other equitable relief, not damages. Plaintiffs actually do expressly seek damages on their CLRA and fiduciary duty claims. FAC ¶¶ 63, 76. But even if they did not, their suit seeks "damages" for SLUSA purposes. The equitable relief Plaintiffs seek on all three state-law claims includes restitution (of commissions paid and other amounts). FAC ¶¶ 63, 68, 76. In the *Feitelberg* case, this Court specifically held that a California UCL claim seeking restitution was a "covered class action" and rejected as irrelevant state-law distinctions between damages and equitable relief, reasoning that SLUSA's use of the term "damages" warranted a broad interpretation in keeping with the statute's purpose and precedent from across the nation. 234 F. Supp. 2d at 1047-49. Plaintiffs do not challenge, or even cite, *Feitelberg*; indeed they cite no SLUSA precedent at all on the issue.

Plaintiffs finally contend that SLUSA does not apply because their claims do not involve any "covered securities."[4] But the FAC does not so limit their claims, which are based on stock spam touting any security whether covered or uncovered. Indeed, one of the e-mails among

---

[4] "Covered securities" include securities traded on the New York Stock Exchange, American Stock Exchange, NASDAQ National Market System, or other national exchanges with similar standards. 15 U.S.C. §§ 77p(f)(3), 77r(b), 78bb(f)(5)(E); 17 C.F.R. § 230.146(b).

those that plaintiffs cite in support of their position actually touts the company TiVo, whose stock trades on the successor to the NASDAQ National Market System and thus is a "covered security."  Elvey Decl., Ex. A at 146-47; Stock Prices for Nasdaq, NYSE, AMEX and OTC Companies, http://quotes.nasdaq.com/reference/comlookup.stm (last visited Sept. 4, 2007). Moreover, plaintiffs' claims for restitution of commissions paid on *all trades* placed with TD AMERITRADE while the allegedly actionable "failure to disclose" was ongoing certainly involve purchases and sales of "covered securities."  FAC ¶¶ 63, 76, Prayer (b).

### B.    Implied Preemption.

Plaintiffs also fail to rebut TD AMERITRADE's showing (at 8) that federal securities laws independently preempt plaintiffs' state-law claims because those claims would interfere with the orderly and uniform regulation of securities transactions.  A California-only requirement that TD AMERITRADE inform its customers that certain stocks are "being touted by Traced Spam" and that their values are "very likely manipulated" would effectively overturn the SEC's decision to address spam-based manipulation through Commission orders halting transactions in securities that the SEC has determined to be subject to such manipulation.  *See* SEC Suspends Trading Of 35 Companies Touted In Spam Email Campaign (Mar. 8, 2007), http://sec.gov/news/ press/2007/2007-34.htm (last visited Sept. 4, 2007).  Although it has abundant authority to do so, the SEC has not required brokers to make a disclosure like the one plaintiffs propose.  *Contrast* 17 C.F.R. §§ 240.15g-2 (requiring a penny stock disclosure in certain circumstances).  This suit is an effort by plaintiffs to usurp the SEC's authority over broker communications and force TD AMERITRADE to make judgments reserved for the SEC and the judiciary about whether e-mails to its customers are manipulating securities prices.  *See, e.g.*, 15 U.S.C. §§ 78i, 78l(k), 78u, 78u-3, 78w (granting SEC power to act against manipulation and courts power to adjudicate whether manipulation occurred).[5]

---

[5] Contrary to plaintiffs' claims, no presumption against preemption justifies such serious disruption of federal objectives.  *See Credit Suisse First Boston Corp. v. Grunwald*, 400 F.3d 1119, 1134-36 (9th Cir. 2005) (finding preemption by SEC-approved NASD rules).  Indeed, the Supreme Court has recognized that the traditional presumption against preemption "carries less force" in suits alleging fraud in the securities markets in part because "federal law, not state law, has long been the principal vehicle for asserting class-action securities fraud claims."  *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Dabit*, 547 U.S. 71, 87 (2006).

III.   **PLAINTIFFS DO NOT AND CANNOT ALLEGE A VIOLATION OF THE CLRA OR THE UCL.**

    A.   **There Has Been No Misrepresentation Or Actionable Omission.**

The motion to dismiss showed (at 11-13, 15) that plaintiffs did not and could not allege, as they must under both the UCL and the CLRA, that TD AMERITRADE made statements "likely to deceive a reasonable customer." *Williams v. Gerber Prods. Co.*, 439 F. Supp. 2d 1112, 1115 (S.D. Cal. 2006). Plaintiffs claim (at 8-11) that TD AMERITRADE falsely represents that it does not disclose the personal information of its customers and that TD AMERITRADE has a duty to disclose the existence of a "specific, ongoing security breach." Both theories are incorrect as a matter of law.

Plaintiffs claim an affirmative misrepresentation based on their allegation that TD AMERITRADE intentionally disclosed customer personal information to third parties in a manner inconsistent with the company's Privacy Statement. That conclusory allegation, however, does not save plaintiffs' UCL and CLRA claims from dismissal. As the Supreme Court has recently made clear, a plaintiff's Fed. R. Civ. P. 8(a)(2) "obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions." *Twombly*, 127 S. Ct. at 1964-65. Indeed, "[f]actual allegations must be enough to raise a right to relief above the speculative level." *Id.* at 1965. Plaintiffs offer no factual "grounds" to support their claim that TD AMERITRADE intentionally disclosed their personal information. Instead, they allege a mere conclusion based entirely on speculation. FAC ¶ 44. And their equally speculative motive allegation (FAC ¶ 31) offers them no help; virtually any entity could stand to gain from intentional disclosures of customer information, so that is not a plausible basis to infer that TD AMERITRADE made such disclosures here. Under *Twombly*, plaintiffs should not be allowed to proceed on any intentional disclosure theory.[6]

Plaintiffs claim an actionable omission based on their argument that TD

---

[6]   If the Court decides that plaintiffs' conclusory "alternative" allegation that TD AMERITRADE intentionally disclosed customer information states a claim for any of their causes of action, but that their unintentional disclosure allegations do not, the Court should dismiss the relevant counts with leave to replead alleging only intentional disclosure. Such a dismissal will greatly narrow the discovery issues and facilitate the resolution of the case.

REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. C-07-2852 MJJ

AMERITRADE's Privacy Statement is false or misleading because it does not disclose the existence of a "specific, ongoing security breach."  However, a duty to disclose arises only when an affirmative statement would be misleading without a disclosure or there is an independent obligation to disclose based upon another body of law.  *See Daugherty v. Am. Honda Motor Co., Inc.*, 144 Cal. App. 4th 824, 835, 838 (2d Dist. 2006) (dismissing CLRA and UCL claim where no duty to disclose).  Here, plaintiffs cannot meet either test.

Plaintiffs have not identified any assertion in the Privacy Statement that is misleading without the added disclosure.  The statement that TD AMERITRADE "does not sell, license, lease or otherwise disclose" personal information to unauthorized third parties is not misleading because it only means that TD AMERITRADE does not intentionally do so.  Attach. A at 13.  It has nothing to do with an unintentional security breach.  The only other statement plaintiffs refer to is the warning that "no security system is absolutely impenetrable."  *Id.* at 14.  Plaintiffs concede that this statement warns customers that security breaches are possible.  Accordingly, this statement is in no way inconsistent with the ongoing security breach that plaintiffs allege.  In short, no assertion in the Privacy Statement is rendered false or misleading by omission of the disclosure that plaintiffs claim should be made.

What plaintiffs really seek is the imposition of a new duty to report security breaches when they occur.  But plaintiffs have not pointed to any independent legal basis for such an obligation.  Plaintiffs' effort to impose such a duty, in fact, is a transparent attempt to circumvent the California legislature's determination, expressed in section 1798.82 of the Civil Code, that disclosure of a security breach affecting customer information is required only when certain types of sensitive personal information are reasonably believed to have been acquired by an unauthorized person.  Cal. Civ. Code § 1798.82(a).  Plaintiffs do not bring a claim under that statute, which, as the later and more specific statute, displaces the CLRA and UCL on the subject of security breach disclosures.  *Woods v. Young*, 53 Cal. 3d 315, 324 (1991) ("a later, more specific statute controls over an earlier, general statute").  Nor do plaintiffs even allege circumstances that would require disclosure under section 1798.82.[7]  And the fact that section

---

[7] Plaintiffs' contrary suggestion (at 11) is wrong.  One of the referenced paragraphs discusses an

(cont'd)

1  1798.82 rights are cumulative to rights under other laws is not an invitation to render the statute

2  mere surplusage by ignoring its carefully drawn lines. *Id.* at 323-25 (rejecting an interpretation

3  of general tolling provision that deprived more specific tolling provision "of any meaning").

4  Plaintiffs should not be permitted to use the CLRA and UCL to create a duty that would

5  circumvent section 1798.82.

6          **B.    Plaintiffs Lack Standing.**

7          The motion to dismiss showed (at 9-11, 14) that none of plaintiffs' alleged injuries

8  satisfied the injury requirements of the CLRA—which demands proof of "damage" (Cal. Civ.

9  Code § 1780(a))—or the UCL—which demands "injury in fact" and the loss of "money or

10 property" (Cal. Bus. & Prof. Code § 17204). Essentially conceding the inadequacy of their

11 injury allegations, plaintiffs improperly try to salvage their CLRA and UCL claims by

12 hypothesizing additional allegations and claiming the benefit of others' potential injuries.

13         Plaintiffs' complaint lists four injuries: (1) loss of the benefit of the bargain on brokerage

14 fees; (2) lost time required to sort, read, discard and attempt to prevent future spam; (3) lost

15 storage space, Internet connectivity, and computing resources; and (4) a risk of identity theft.

16 FAC ¶¶ 62, 68. Taking the last first, courts across the United States have uniformly held that a

17 risk of identity theft is not a sufficient injury to sustain a cause of action. These courts reason

18 that such a risk does not present an actual or imminent injury because it is "based on nothing

19 more than speculation that [the plaintiff] will be the victim of wrongdoing at some unidentified

20 point in the indefinite future." *Key v. DSW, Inc.*, 454 F. Supp. 2d 684, 689-90 (S.D. Ohio 2006);

21 *see also Randolph v. ING Life Ins. & Annuity Co.*, 486 F. Supp. 2d 1, 7 (D.D.C. 2007) ("mere

22 speculation that at some unspecified point in the indefinite future [the plaintiffs] will be the

23 victims of identity theft" is insufficient injury to support a claim); *Forbes v. Wells Fargo Bank,*

24 *N.A.*, 420 F. Supp. 2d 1018, 1021 (D. Minn. 2006) ("[T]he plaintiffs' injuries are solely the result

25 of a perceived risk of future harm. Plaintiffs have shown no present injury or reasonably certain

26 ─────────────

27 identity theft that predates the alleged onset of the stock spam, while the other merely speculates
   that it is improbable that information triggering section 1798.82 was not acquired. FAC ¶¶ 41-
   42. The only information that plaintiffs actually allege unauthorized persons acquired—

28 customer e-mail addresses—does not trigger a disclosure obligation under the statute.

1    future injury to support damages for any alleged increased risk of harm."). The same is

2    obviously true here, where plaintiffs have alleged no facts suggesting that identity theft occurred.

3        The problem with plaintiffs' claims of lost time and computing resources is that the

4    complaint does not allege facts plausibly suggesting that Elvey (the only plaintiff asserting a

5    CLRA or UCL claim) actually lost money or suffered any actual damage as a result of receiving

6    the Traced Spam. To the contrary, every indication is that Elvey experienced at most a minor

7    inconvenience. According to the complaint, Elvey received 80 spam messages at two e-mail

8    addresses over a nine-month period. FAC ¶¶ 23-24. He also got his e-mail through a server

9    maintained, stored, and given Internet connectivity by a third party. FAC ¶ 26. The time and

10   computing resources Elvey devoted to spam thus could not have been any more than *de minimis*.

11   Certainly, there is no allegation that Elvey's efforts cost him any money or actually damaged

12   him.[8] And plaintiffs' recitation (at 13 & nn.16-17) of spam-related harms recognized in other

13   cases and under other statutes is no substitute for an allegation making clear that Elvey actually

14   suffered a cognizable injury in this case. Plaintiffs do not allege many of the described harms,

15   while the others do not qualify as CLRA or UCL injuries when suffered in the *de minimis*

16   fashion Elvey has alleged.

17       As for the claimed benefit-of-the-bargain injury, plaintiffs allege no facts showing that

18   they failed to receive a benefit of their bargain, much less a material one. As discussed above,

19   the Privacy Statement does not represent or promise that there will be no security breaches.

20   Furthermore, plaintiffs have not alleged or even plausibly suggested that any amount of their

21   brokerage fees was attributable to privacy issues. Indeed, plaintiffs have not alleged that they

22   made any transactions or paid any fees during the period in which they allegedly received spam.[9]

23   **C.    Plaintiffs Cannot Pursue A UCL Claim Based On Securities Transactions.**

24       The motion to dismiss showed (at 15) that under *Bowen v. Ziasun Technologies, Inc.*, 116

---

[8] Moreover, any such harm bears no causal relationship to the wrongs plaintiffs allege, given that
Elvey collected spam for seven months before filing this suit. FAC ¶¶ 22-24. Neither the
inapposite discrimination-tester cases plaintiffs cite (at 14-15) nor plaintiffs' ad hominem
accusations change that fact.

[9] *Engalla v. Permanente Medical Group, Inc.*, 15 Cal. 4th 951, 977 (1997), does not save
plaintiffs from having to plead materiality, and their partial quotation from the case obscures that
materiality (when pleaded) is not always a question of fact, but can be decided as a matter of law.

Cal. App. 4th 777, 787-90 (4th Dist. 2004), plaintiffs cannot state a UCL claim because they base their claims on securities transactions.  Plaintiffs respond (at 7-8) that *Overstock.com, Inc. v. Gradient Analytics, Inc.*, 151 Cal. App. 4th 688, 715-16 (1st Dist. 2007), limits *Bowen* to stock transactions between the parties and that *Bowen* is unlikely to find favor with the California Supreme Court.  *Overstock.com*'s supposed limitation on *Bowen*, however, has no impact on this case, where plaintiffs' UCL claim rests on allegations that TD AMERITRADE improperly received commissions in securities transactions with plaintiffs and putative class members.  FAC ¶¶ 31, 43, Prayer (b).  Nor is there any reason to believe that the California Supreme Court will find *Bowen* unpersuasive, given that the great majority of states interpret their virtually identical analogues to the UCL as excluding claims involving securities transactions.  *Bowen*, 116 Cal. App. 4th at 786-90.[10]

## IV.    PLAINTIFFS FAIL TO STATE A BREACH OF FIDUCIARY DUTY CLAIM.

The motion to dismiss showed (at 16-18) that under Nebraska and California law TD AMERITRADE does not have a general fiduciary duty in connection with its relationship with its customers.  Plaintiffs do not dispute that Nebraska law so provides.  Nor could they.  *See DeSciose v. Chiles, Heider & Co.*, 239 Neb. 195, 206 (1991) ("[t]he mere existence of a broker/client relationship, without more, does not imply a confidential relationship" giving rise to a fiduciary duty).  The plainly enforceable choice-of-law provision in the contract between TD AMERITRADE and Elvey requires the application of Nebraska law in this case.  *See* p. __, *supra*.  The Court need go no further to dismiss plaintiffs' fiduciary duty claim.

Plaintiffs, of course, insist that the Court throw out the choice-of-law provision and find that, under California law, TD AMERITRADE has a fiduciary duty as a stock brokerage firm to keep customer personal information confidential and disclose to plaintiffs all information regarding security breaches and its security systems.  But as plaintiffs concede, in California, "the scope of a broker's duty to disclose is delimited by the nature of the broker's relationship with the customer."  *Petersen v. Sec. Settlement Corp.*, 226 Cal. App. 3d 1445, 1456 (4th Dist.

---

[10] Contrary to plaintiffs' suggestion, *Roskind v. Morgan Stanley Dean Witter & Co.*, 80 Cal. App. 4th 345 (1st Dist. 2000), does not even consider whether the UCL allows actions based on securities transactions.

1991).  Thus, in accord with *Petersen*'s limitation of a clearing broker's duty to trade processing (226 Cal. App. 3d at 1454-56), it is widely held that "where the investor controls a nondiscretionary account and retains the ability to make investment decisions, the scope of any duties owed by the broker will generally be confined to executing the investor's order." *Martinez Tapia v. Chase Manhattan Bank, N.A.*, 149 F.3d 404, 412 (5th Cir. 1998) (citing cases). Plaintiffs have not cited any case in California or any other jurisdiction where a court has determined that the scope of a broker's fiduciary duties, if any, in a relationship where, as here, the customer controls a nondiscretionary account extends beyond processing trade orders to include the protection of customer information.[11]

Nor should this Court so determine.  Imposing fiduciary duties on brokerage firms with respect to personal information in their possession would treat customers whose personal information was misappropriated from a brokerage firm different from customers whose personal information was misappropriated from other types of businesses.  That hardly makes sense when the alleged wrong and the harm (if any) are the same.

With respect to the protection of customer information, TD AMERITRADE and Elvey stand in the same relation as any other business and consumer.  Plaintiffs have not cited a single case imposing a fiduciary duty on any business or brokerage firm to protect customer information.  Fiduciary duties arise only if "one party surrenders substantial control over some portion of his affairs to the other." *Sovereign Bank v. BJ's Wholesale Club, Inc.*, 427 F. Supp. 2d 526, 534 (M.D. Pa. 2006) (providing consumer personal information to vendor in a commercial transaction does not create fiduciary duty to protect that information).[12]  Because such a surrender of control is not present here, plaintiffs have failed to state a viable breach of fiduciary duty claim.

---

[11] Plaintiffs' suggestion that *Stevens v. Marco*, 147 Cal. App. 2d 357 (2d Dist. 1956), recognized fiduciary duties over any shared confidential information is belied by the circumstances of the case, which involved fraud in connection with an attorney/corporate executive's agreement with an inventor to prosecute patent applications on the plaintiff's behalf.

[12] Plaintiffs claim that *Sovereign Bank* did not involve sensitive personal information, but it actually involved stolen credit card numbers.  427 F. Supp. 2d at 528.

## V.    PLAINTIFFS FAIL TO STATE A CFAA CLAIM.

The motion to dismiss showed (at 18-20) that TD AMERITRADE cannot be held liable for the alleged efforts of unidentified Doe defendants to access information on the company's computers in violation of the Computer Fraud and Abuse Act (CFAA), 18 U.S.C. § 1030(a)(5). As the motion explained, the Does either acted with authorization from TD AMERITRADE, in which case there is no statutory violation, or the Does acted without authorization from TD AMERITRADE, in which case the company is not vicariously liable for their conduct. In response, plaintiffs contend (at 17-19) that a CFAA violation occurred because TD AMERITRADE's customers never authorized the Does' access and that TD AMERITRADE is vicariously liable for that violation under respondeat superior principles even if the company did not authorize the Doe conduct.[13] Their arguments are contrary to the CFAA's plain language and find no support in CFAA case law.[14]

Plaintiffs are simply wrong in claiming that they can maintain a CFAA claim if TD AMERITRADE "directed and encouraged" the Does to access the company's computers. The CFAA provisions at issue impose liability only on one who "intentionally accesses a protected computer without authorization." 18 U.S.C. § 1030(a)(5)(A)(ii), (iii). Plainly, TD AMERITRADE can authorize access to customer information on its own computers; indeed, the Privacy Statement expressly recognizes that fact (Attach. A at 12-13). Assuming for sake of argument only that the company directed or encouraged a Doe to access its computers (which it did not), that access would have been authorized and would not violate the CFAA.

That such access may have resulted in the acquisition or use of customer information in a manner not allowed by the Privacy Statement is irrelevant. The CFAA provisions at issue impose no liability for "exceeding authorized access," unlike other provisions in the statute.

---

[13] Plaintiffs also argue that parties besides the owner of the accessed computer can bring suit, but the motion to dismiss did not argue to the contrary; it argued only that plaintiffs here state no claim. So plaintiffs' citation of *Theofel v. Farey-Jones*, 341 F.3d 978 (9th Cir. 2003), is of no moment.

[14] Also, their allegations (at FAC ¶¶ 78-86) of uncertain misconduct by unidentified "agents, ostensible agents, partners and/or joint venturers and employees" of TD AMERITRADE fail to give "fair notice of what the claim is and the grounds upon which it rests" and fail to supply facts that "raise a right to relief above the speculative level." *Twombly*, 127 S. Ct. at 1965.

*Compare* 18 U.S.C. § 1030(a)(5)(A)(ii), (iii), *with* 18 U.S.C. § 1030(a)(1), (2), (4).  Moreover, the legislative history of the relevant provisions confirms that Congress was targeting outside hackers, not insiders given access to a computer by its owner.  *See In re Am. Online, Inc. Version 5.0 Software Litig.*, 168 F. Supp. 2d 1359, 1370 (S.D. Fla. 2001) (finding that legislative history "reinforces the conclusion that [the provisions at issue here] are intended to apply to outsiders who access a computer").  For these reasons, the only analogous CFAA case of which we are aware rejects plaintiffs' theory that because plaintiffs did not authorize the alleged Doe access to TD AMERITRADE's computers, that access was "without authorization" even if TD AMERITRADE had "directed and encouraged" the access.  *See SecureInfo Corp. v. Telos Corp.*, 387 F. Supp. 2d 593, 608-10 (E.D. Va. 2005).  In that case, the plaintiff licensed software to a firm called BAI under an agreement that prohibited disclosure of the software to third parties, but BAI nonetheless authorized the defendants to view the software on its server.  *Id.* at 601.  The court held that the defendants did not violate the CFAA provisions at issue here because the defendants had authorization from BAI to access BAI's server, notwithstanding the alleged breach of the license agreement.  *Id.* at 608-10.  That well-founded and uncontradicted reasoning precludes plaintiffs from proceeding on any theory that TD AMERITRADE "directed and encouraged" the Does to access customer information from TD AMERITRADE's computers.

Plaintiffs also cannot proceed against TD AMERITRADE on a theory that a Doe party accessed customer information *without authorization* from TD AMERITRADE.  The CFAA only allows a damaged party to "maintain a civil action *against the violator*." 18 U.S.C. § 1030(g) (emphasis added).  Numerous courts have refused to extend CFAA civil liability (which tracks the statute's criminal liability) beyond those who perform or direct the prohibited accessing of a computer, rejecting efforts to use respondeat superior law to hold liable employers, principals, and others who lack the requisite criminal intent and often are victims themselves.  *See Garland-Sash v. Lewis*, No. 05 Civ. 6827, 2007 WL 935013, at *4 (S.D.N.Y. Mar. 26, 2007); *Butera & Andrews v. IBM*, 456 F. Supp. 2d 104, 109-13 (D.D.C. 2006); *Role Models Am., Inc. v. Jones*, 305 F. Supp. 2d 564, 567-68 (D. Md. 2004); *Doe v. Dartmouth-Hitchcock Med. Ctr.*, No. Civ. 00-100, 2001 WL 873063, at *5-*6 (D.N.H. July 19, 2001).

Unlike the broad enterprise liability of civil RICO that plaintiffs inexplicably invoke, the CFAA expressly limits liability to "violators" of the statute's narrowly drawn prohibitions. *Compare* 18 U.S.C. §§ 1962, 1964(c), *with* 18 U.S.C. § 1030(a), (g). Those statutory limitations refute any notion that Congress wanted the type of broad respondeat superior liability plaintiffs advocate. *See Doe*, 2001 WL 873063, at *5 ("whether a federal statute embraces such principles of vicarious liability is a matter of statutory interpretation based upon congressional intent" (omitting internal quotation marks)). Tellingly, plaintiffs fail to cite a single CFAA case allowing a respondeat superior claim against a defendant that did not direct or encourage the allegedly illegal accessing.

## VI.     PLAINTIFFS FAIL TO STATE A CAN SPAM ACT CLAIM.

### A.     Plaintiffs Lack Standing.

The motion to dismiss showed (at 20-23) that plaintiffs lack standing to pursue a CAN SPAM claim because they fail to adequately plead that they are "provider[s] of Internet access service adversely affected by" the CAN SPAM violation they assert. 15 U.S.C. § 7706(g)(1). Plaintiffs' efforts to salvage their claim by injecting new allegations and disputing the uncontradicted authority supporting TD AMERITRADE's position are ineffective.[15]

Plaintiffs' standing allegations do not demonstrate that they were adversely affected as Internet access service ("IAS") providers by the CAN SPAM violation they allege. The only effects that plaintiffs allege they experienced were the type of effects that they experienced as consumers, *i.e.*, the minimal annoyance of reading and deleting spam e-mails on their computers. FAC ¶¶ 62, 67, 75, 83. Plaintiffs' allegations regarding the effects on third parties, such as the companies with whom plaintiffs allegedly contracted to use their servers, cannot confer standing on plaintiffs and, in any event, do not rise to the level of "adverse effects" that confer standing under the Act. The third parties are not alleged to have suffered any monetary costs or financial impact whatsoever. Plaintiffs only allege that the spam used (not adversely affected) the third parties' computing capacity. FAC ¶¶ 26, 28.

---

[15] That includes plaintiffs' efforts to hypothesize users of Elvey's e-mail services and a CAN SPAM claim by Gadgetwiz. *See Twombly*, 127 S. Ct. at 1968-69 (barring such hypothesizing).

1   Congress chose to limit the CAN SPAM private right of action to IAS providers

2   adversely affected by certain statutory violations.  15 U.S.C. § 7706(g)(1).  If Congress had

3   determined that the adverse effects of spam on consumers warranted a private action, it would

4   not have limited the private right of action to IAS *providers*, and then only to IAS providers

5   *adversely affected* by statutory violations.  That it did so shows that Congress concluded that

6   only *adverse effects* on IAS *providers*, as such, warranted a private action.  The emphasis on

7   such injuries in the legislative history of the CAN SPAM Act confirms that Congress had such

8   an intent.  *See* S. Rep. No. 108-102, at 6-7 (2003).  So does the fact that Congress allowed for

9   steep statutory damages (as much as $100 per separately addressed e-mail), which would make

10  no sense if minor end-user inconveniences conferred standing.  15 U.S.C. § 7706(g)(3).

11  Precisely these factors caused the court in the leading decision on the subject to rule that

12  "the 'adverse effect' to [the IAS provider] must be both real and of the type uniquely

13  experienced by [such providers] for standing to exist."  *Gordon v. Virtumundo, Inc.*, No. 06-

14  0204, 2007 WL 1459395, at *7 (W.D. Wash. May 15, 2007).  In particular, the "'adverse effect'

15  as a *type* of harm must rise beyond the level typically experienced by consumers—*i.e.* beyond

16  the annoyance of spam."  *Id.* at *8.  The court reasoned that "[a]ny other reading would expand

17  the private right of action beyond what Congress intended."  *Id.* at *7.

18  Although Plaintiffs certainly complain about *Gordon*, they do not challenge any of these

19  conclusions.  Nor do they offer any contrary authority.[16]  *Gordon*'s holding is consistent with the

20  statutory language and the legislative history.  An IAS provider suffers no adverse effect from a

21  CAN SPAM violation—and has no standing to sue under the Act—unless it suffers harm of the

22  type uniquely experienced by IAS providers and of the magnitude contemplated by the Act.

23  That unchallenged and entirely correct conclusion, by itself, renders plaintiffs' standing

24  allegations inadequate to support a CAN SPAM claim.

25  **B.      TD AMERITRADE Did Not Initiate Spam.**

26  The motion to dismiss further showed (at 23-24) that plaintiffs' allegations demonstrate

27  _____

[16]  The cases plaintiffs cite (at 23) on the importance of statutory damages are not CAN SPAM

28  cases and do not suggest that a court may ignore limits on the availability of such damages.

that TD AMERITRADE did not "initiate the transmission . . . of a commercial electronic message" in violation of the CAN SPAM provision plaintiffs invoke here.  15 U.S.C. § 7704(a)(1).   Plaintiffs respond (at 23-25) by merely repeating their allegation that TD AMERITRADE initiated the Traced Spam because it was the source of the e-mail addresses.

"Initiate" in the CAN SPAM context can mean "originate" a commercial electronic mail message.  15 U.S.C. § 7702(9).  However, an allegation that TD AMERITRADE was the *source* of e-mail *addresses* to which another party transmitted spam fails to satisfy the statutory requirement that the defendant *originate* spam e-mail *messages*.  If someone takes a camera from you without permission and uses it to take illegal pictures, you may be the source of the camera, but you did not originate the pictures.  The absurdity of plaintiffs' but-for-cause definition of "originate" is obvious because it would include plaintiffs, themselves, who are the ultimate source of their e-mail addresses (like every spam recipient).  Plainly, spam recipients do not originate the spam they receive under the CAN SPAM Act.  Nor did TD AMERITRADE here.

Indeed, equating "source of e-mail addresses" with "originate e-mail messages" would turn every business or person that is the victim of an unlawful acquisition of e-mail addresses into a violator of the federal anti-spamming laws.  That obviously is not what the CAN SPAM Act intended, nor what the statutory text provides.  To the contrary, the Act's text and legislative history make clear that it targets spammers, not those from whom they take e-mail addresses without permission.  *See* 15 U.S.C. §§ 7701(a)(10), 7703(b)(2), 7704(b)(1)(A) (targeting those who take e-mail addresses from online services); S. Rep. No. 108-102, at 2-4 (describing spammers targeted by statute).

"Originating" spam e-mail messages, then, does not encompass merely being the source of e-mail addresses.  It means creating the e-mail message itself.  Accordingly, because they allege no facts plausibly suggesting that TD AMERITRADE created spam messages, plaintiffs do not state a CAN SPAM claim against TD AMERITRADE.

## CONCLUSION

For the foregoing reasons, TD AMERITRADE respectfully asks that the Court grant its motion to dismiss the First Amended Complaint.

1

2      Dated: September 4, 2007                    MAYER BROWN LLP

3                                                   By:  ____*/s/*  Lee H. Rubin_____
                                                           Lee H. Rubin
4                                                   Counsel for Defendant TD AMERITRADE,
                                                   Inc.

5      Of Counsel
       MAYER BROWN LLP
6      Robert J. Kriss
       71 South Wacker Drive
7      Chicago, Illinois 60606-4637

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

REPLY IN SUPPORT OF MOTION TO DISMISS FIRST AMENDED COMPLAINT
CASE NO. C-07-2852 MJJ