Alan Himmelfarb
LAW OFFICES OF ALAN HIMMELFARB
2757 Leonis Blvd
Los Angeles, CA 90058
Telephone: (323) 585-8696
Fax: (323) 585-8198
consumerlaw1@earthlink.net

Scott A. Kamber
Ethan Preston
KAMBER & ASSOCIATES, LLC
11 Broadway, 22d Floor
New York, NY 10004
Telephone: (212) 920-3072
Fax: (212) 202-6364
skamber@kolaw.com
epreston@kolaw.com

*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| MATTHEW ELVEY, an individual, and GADGETWIZ, INC., an Arizona corporation, on their own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs<br><br>v.<br><br>TD AMERITRADE, INC., a New York corporation, and DOES 1 to 100,<br><br>Defendants. | No. C 07 2852 MJJ<br><br>Judge Martin J. Jenkins<br><br>**DECLARATION OF ETHAN PRESTON IN SUPPORT OF PLAINTIFFS' REPLY TO DEFENDANT'S OPPOSITION TO THE MOTION FOR PRELIMINARY INJUNCTION** |

Pursuant to 28 U.S.C. § 1746, I, Ethan Preston, hereby declare and state as follows:

1. I am over the age of eighteen and am fully competent to make this declaration. I make this declaration based upon personal knowledge. I am an attorney admitted to practice in the state of Illinois, and represent Plaintiffs in the above-titled action. I am entering this declaration in support of Plaintiffs' Reply to Defendant's Opposition to the Motion for Preliminary Injunction and Class Certification.

2. I sent three separate emails to Lee Rubin, dated August 29, August 31, and September 4, in which I asked for the factual basis for TD Ameritrade's statement on page 23 of its Opposition to the Motion for Preliminary Injunction that Plaintiffs deliberately subjected themselves to spam, with the intent to bring this lawsuit. These emails are attached as Exhibits 1, 2, and 3 to this Declaration.

3. I received Ameritrade's reply email on September 4, 2007 at 3:33 PM CST. Ameritrade's reply states, in part:

   > Elvey had been an account holder at one of TD AMERITRADE's predecessors for at least a couple of years before October 2006. Then, without any apparent business justification, he decided to establish a unique e-mail address and begins to collect spam. . . . [R]ather than immediately changing his address or closing his account, he just collects spam messages at the address . . . His email addresses remained open to receive spam after April 2007, when he claims he decided to take legal action. From October 24, 2007 to the time of filing suit, he does not execute any trades through his TD AMERITRADE accounts. Based on these facts, it is reasonable to infer the identified statement.

   This email is attached as Exhibit 4 to this Declaration.

4. I inquired by email on September 4, 2007 at 4:01 pm CST (2:01 PST) as the factual basis for Ameritrade's statement that "it is unlikely that they were deceived by any alleged misrepresentation in [Ameritrade's] Privacy Statement." This email is attached as Exhibit 5 to this Declaration.

5. As of 8:30 pm CST (6:30 pm PST), I have not received any response to the email described in Paragraph 4 above.

Pursuant to Section X of the Northern District of California's General Order No. 45 on electronic case filing and 28 U.S.C.§ 1746, in lieu of Ethan Preston's signature on this declaration, Alan Himmelfarb attests that Ethan Preston is the signatory of this declaration, and that Ethan Preston concurred to this declaration on September 4, 2007.

DATE: September 4, 2007

                                      /s/Alan Himmelfarb
                                      ALAN HIMMELFARB

# EXHIBIT 1

**From:** Ethan Preston <ep@eplaw.us>
**To:** Rubin, Lee H. <LRubin@mayerbrownrowe.com>
**Subject:** Factual representation in the Opposition to the Motion for Preliminary Injunction
**Date:** Wed, 29 Aug 2007 18:49:19 -0500

On page 23 of the Opposition, Ameritrade makes the following factual representation:

"Plaintiffs [sic] efforts to subject themselves to spam in order to bring this suit raise the same sort of manufactured-suit defenses that made the Hanon plaintiff atypical."

Does Ameritrade have any factual basis for claiming that Plaintiffs deliberately subjected themselves to spam, with the intent to bring this lawsuit?

Ethan
--
Ethan Preston
Kamber & Associates, LLC
11 Broadway, 22d Flr
New York, NY 10004
(646) 964-9604

Not admitted in New York. Admitted in Illinois. This communication may be confidential and proprietary. The only persons authorized to use this communication are the addressee(s), their agents and attorneys. Any other disclosure or use of this communication's existence, contents, substance, purport, effect, or meaning is prohibited. This communication may be exempted and protected from disclosure as attorney work product, attorney-client privilege, or under other applicable rules and/or laws. If you have received this communication in error, please notify me immediately by return e-mail and destroy this communication and any copies or attachments.

# EXHIBIT 2

**From:** Ethan Preston <ep@eplaw.us>
**To:** Rubin, Lee H. <LRubin@mayerbrownrowe.com>
**Subject:** Re: Factual representation in the Opposition to the Motion for Preliminary Injunction
**Date:** Fri, 31 Aug 2007 14:54:32 -0500

Lee,

Can you give me a written answer on the question below, please?

Regards,

Ethan


On Wed, 2007-08-29 at 18:49 -0500, Ethan Preston wrote:
> On page 23 of the Opposition, Ameritrade makes the following factual
> representation:
>
> "Plaintiffs [sic] efforts to subject themselves to spam in order to
> bring this suit raise the same sort of manufactured-suit defenses that
> made the Hanon plaintiff atypical."
>
> Does Ameritrade have any factual basis for claiming that Plaintiffs
> deliberately subjected themselves to spam, with the intent to bring this
> lawsuit?
>
> Ethan

# EXHIBIT 3

**From:** Ethan Preston <ep@eplaw.us>
**To:** Rubin, Lee H. <LRubin@mayerbrownrowe.com>
**Cc:** Scott A. Kamber, Esq. <skamber@kolaw.com>
**Subject:** [Fwd: Extensions and AMTD's Supplement]
**Date:** Tue, 04 Sep 2007 12:10:51 -0500

Lee,

I wanted to know whether you would be filing a motion for extension today pursuant to the outline below, or if I should expect the reply on the Motion to Dismiss. (Again, I'd like to you to produce any factual basis for Ameritrade's claim that Plaintiffs deliberately subjected themselves to spam, with the intent to bring this lawsuit.)

Scott is back in town if you want to direct inquiries his way.

Thanks,

Ethan

-------- Forwarded Message --------
**From**: Ethan Preston <epreston@kolaw.com>
**Reply-To**: epreston@kolaw.com
**To**: Rubin, Lee H. <LRubin@mayerbrownrowe.com>
**Cc**: Scott A. Kamber, Esq. <skamber@kolaw.com>
**Subject**: Extensions and AMTD's Supplement
**Date**: Wed, 29 Aug 2007 15:11:36 -0500

Lee,

I have been in touch with Scott and explained your proposal. Scott has indicated that we will file our Reply on the Motion for Preliminary Injunction on 9/4, and we will oppose any proposal or motion that would result in a delay on the hearing for the motion for preliminary injunction. As it is solely the Court's perogative as to whether it will accept submissions in such limited time before the hearing, we cannot consent or stipulate to an extension on the briefings for the PI Motion, but we will not oppose an extension within the parameters below.

We will have no objection to a supplement filed on or before 9/7, provided that 1) its scope is strictly limited to the developments in AMTD's internal investigation discussed in AMTD's motion to extend time, and 2) and we have a reasonable chance to take depositions limited to the matters discussed in the supplement early in the week of 9/10. If we submit a response to ATMD's planned supplement, we will do so before 9/14. We feel strongly that our response should be a separate document from the Reply.

You wrote that you wanted additional time for more discovery to oppose the Motion for PI. I am assuming this discovery would be in the form of cross-examination on the deposition testimony we obtain concerning AMTD's supplement. Again, we don't think it would be fair for AMTD to use the supplement to raise new arguments unrelated to the developments in AMTD's internal investigation, and we'd oppose it. Its not clear to me why cross-examination would require more time than ordinarily allotted under FRCP 30(d)(2), especially as AMTD can simply prepare declarations for the deponents who are employees. Let me know if the schedule above does not accommodate your needs.

Finally, I previously indicated that I would stipulate to an extension on the reply for the motion to dismiss. I will stipulate to an extension to 9/7 for your reply (or 9/10, if AMTD indicates that the additional time is essential), provided such extension does not result in any delay on the hearing for the motion for preliminary injunction. The hearing on the motion to dismiss can be postponed, and does not *necessarily* have to be on the same day.

Ethan
--
Ethan Preston
Kamber & Associates, LLC
11 Broadway, 22d Flr
New York, NY 10004
(646) 964-9604

Not admitted in New York. Admitted in Illinois. This communication may
be confidential and proprietary. The only persons authorized to use this
communication are the addressee(s), their agents and attorneys. Any

other disclosure or use of this communication's existence, contents, substance, purport, effect, or meaning is prohibited. This communication may be exempted and protected from disclosure as attorney work product, attorney-client privilege, or under other applicable rules and/or laws.

If you have received this communication in error, please notify me immediately by return e-mail and destroy this communication and any copies or attachments.

# EXHIBIT 4

**From:** Rubin, Lee H. <LRubin@mayerbrown.com>
**To:** Ethan Preston <ep@eplaw.us>, Scott A. Kamber, Esq. <skamber@kolaw.com>
**Subject:** FW:
**Date:** Tue, 4 Sep 2007 13:33:19 -0700 *(15:33 CDT)*

In response to your question, the factual basis for the identified statement includes, but is not limited to, the following:

Elvey had been an account holder at one of TD AMERITRADE's predecessors for at least a couple of years before October 2006. Then, without any apparent business justification, he decided to establish a unique e-mail address and begins to collect spam. He claims that he believed as early as October 2006 that TD AMERITRADE may have been the source of the e-mail addresses for the spammers. According to him, spam causes injury and indicates a risk of identity theft. But rather than immediately changing his address or closing his account, he just collects spam messages at the address and contacts a privacy rights organization. In February 2007, he changes his e-mail address and again collects spam messages over an extended period of time at the same time he is reaching out to a privacy rights organization. Again, he does not change this address or close his account but exposes his e-mail account to more spam. After November 2006, he claims that he "gradually understood" that TD AMERITRADE was not making adequate progress on the SPAM problem and that he learned that others were also complaining about this issue with respect to TD AMERITRADE. His email addresses remained open to receive spam after April 2007, when he claims he decided to take legal action. From October 24, 2007 to the time of filing suit, he does not execute any trades through his TD AMERITRADE accounts. Based on these facts, it is reasonable to infer the identified statement.

---
Effective September 1, 2007, we have changed our name to Mayer Brown LLP.

IRS CIRCULAR 230 NOTICE. Any advice expressed above as to tax matters was neither written nor intended by the sender or Mayer Brown LLP to be used and cannot be used by any taxpayer for the purpose of avoiding tax penalties that may be imposed under U.S. tax law. If any person uses or refers to any such tax advice in promoting, marketing or recommending a partnership or other entity, investment plan or arrangement to any taxpayer, then (i) the advice was written to support the promotion or marketing (by a person other than Mayer Brown LLP) of that transaction or matter, and (ii) such taxpayers should seek advice based on the taxpayers particular circumstances from an independent tax advisor.

This email and any files transmitted with it are intended solely for the use of the individual or entity to whom they are addressed. If you have received this email in error please notify the system manager. If you are not the named addressee you should not disseminate, distribute or copy this e-mail.

# EXHIBIT 5

**From:** Ethan Preston <ep@eplaw.us>
**To:** Rubin, Lee H. <LRubin@mayerbrown.com>
**Subject:** Re: FW:
**Date:** Tue, 04 Sep 2007 16:01:29 -0500

Lee,

Thank you. Plaintiffs naturally contest Ameritrade's conclusion.

Can Ameritrade please identify the factual basis for its statement that "it is unlikely that they were deceived by any alleged misrepresentation in the Company's Privacy Statement" (also on page 23 of the Opposition to the Motion for Preliminary Injunction)?

Thanks,

Ethan


On Tue, 2007-09-04 at 13:33 -0700, Rubin, Lee H. wrote:
>
>
>
>
> In response to your question, the factual basis for the identified
> statement includes, but is not limited to, the following:
>
>
>
> Elvey had been an account holder at one of TD AMERITRADE's
> predecessors for at least a couple of years before October 2006.
> Then, without any apparent business justification,  he decided to
> establish a unique e-mail address and begins to collect spam.  He
> claims that he believed as early as October 2006 that TD AMERITRADE
> may have been the source of the e-mail addresses for the spammers.
> According to him, spam causes injury and indicates a risk of identity
> theft.  But rather than immediately changing his address or closing
> his account, he just collects spam messages at the address and
> contacts a privacy rights organization.  In February 2007, he changes
> his e-mail address and again collects spam messages over an extended
> period of time at the same time he is reaching out to a privacy rights
> organization.  Again, he does not change this address or close his
> account but exposes his e-mail account to more spam.  After November
> 2006, he claims that he "gradually understood" that TD AMERITRADE was
> not making adequate progress on the SPAM problem and that he learned
> that others were also complaining about this issue with respect to TD
> AMERITRADE.  His email addresses remained open to receive spam after
> April 2007, when he claims he decided to take legal action.  From
> October 24, 2007 to the time of filing suit, he does not execute any
> trades through his TD AMERITRADE accounts.  Based on these facts, it
> is reasonable to infer the identified statement.
>
>
>
>
> _____
> Effective September 1, 2007, we have changed our name to Mayer Brown
> LLP.
>
>
>
> IRS CIRCULAR 230 NOTICE. Any advice expressed above as to tax matters
> was neither written nor intended by the sender or Mayer Brown LLP to

```
> be used and cannot be used by any taxpayer for the purpose of avoiding
> tax penalties that may be imposed under U.S. tax law. If any person
> uses or refers to any such tax advice in promoting, marketing or
> recommending a partnership or other entity, investment plan or
> arrangement to any taxpayer, then (i) the advice was written to
> support the promotion or marketing (by a person other than Mayer Brown
> LLP) of that transaction or matter, and (ii) such taxpayers should
> seek advice based on the taxpayers particular circumstances from an
> independent tax advisor.
>
> This email and any files transmitted with it are intended solely for
> the use of the individual or entity to whom they are addressed. If you
> have received this email in error please notify the system manager. If
> you are not the named addressee you should not disseminate, distribute
> or copy this e-mail.
>
>
```