Alan Himmelfarb (Cal. Bar. No. 90480)
KAMBEREDELSON, LLC
2757 Leonis Blvd.
Los Angeles, CA 90058
(323) 585-8696
ahimmelfarb@kamberedelson.com

Ethan Preston (*pro hac vice*)
KAMBEREDELSON, LLC
The Monadnock Building
53 West Jackson, Suite 550
Chicago, IL 60604
(312) 589-6370
epreston@kamberedelson.com

Scott A. Kamber
KAMBEREDELSON, LLC
11 Broadway, 22d Floor
New York, NY 10004
(212) 920-3072
skamber@kamberedelson.com

David Christopher Parisi (Cal. Bar. No. 162248)
Suzanne L. Havens Beckman (Cal. Bar. No. 188814)
Parisi & Havens LLP
15233 Valleyheart Drive
Sherman Oaks, CA 91403
(818) 990-1299
dparisi@parisihavens.com
shavensbeckman@parisihavens.com

*Counsel for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF CALIFORNIA
## SAN FRANCISCO DIVISION

| | |
|---|---|
| MATTHEW ELVEY, an individual, BRAD ZIGLER, an individual, and JOEL GRIFFITHS, an individual, on their own behalf and on behalf of all others similarly situated,<br><br>         Plaintiffs<br><br>         v.<br><br>TD AMERITRADE, INC., a New York corporation, and DOES 1 to 100,<br><br>         Defendants. | No. C 07 2852 VRW<br>No. C 07 4903 VRW<br><br>Judge Vaughn R. Walker<br><br>**NOTICE AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**<br><br>Date: June 12, 2008<br>Time: 2:30 p.m.<br>Location: Courtroom 6, 17th Floor<br>450 Golden Gate Ave.<br>San Francisco, CA 94102 |

**NOTICE OF UNOPPOSED MOTION**

NOTICE IS HEREBY GIVEN that the Plaintiffs will move the Court, pursuant to Federal Rule of Civil Procedure 23, to certify a Settlement Class of current and former TD AMERITRADE, Inc. ("Ameritrade") accountholders who provided physical or e-mail addresses to Ameritrade on or before September 14, 2007.  Plaintiff will apply to this Court for preliminary approval of a proposed class action settlement on May 29, 2008, at 9:00 a.m., or as soon thereafter as counsel may be heard by the above-entitled Court, located at 450 Golden Gate Avenue, 19th Floor, San Francisco, California 94102, in Courtroom 6, 17th Floor, before the Honorable Vaughn Walker.

This Motion is based on this Notice of Motion, the Brief in Support of the Motion and the authorities cited therein, oral argument of counsel, and any other matter that may be submitted at the hearing.

**BRIEF IN SUPPORT OF UNOPPOSED MOTION
FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT**

Under Rule 23(e) of the Federal Rules of Civil Procedure, Plaintiffs Matthew Elvey, Joel Griffiths, and Brad Zigler ("Plaintiffs") apply to this Court for preliminary approval of a proposed class action settlement, as set forth below.

## I.   INTRODUCTION

Plaintiffs submit this motion for preliminary approval of a proposed settlement in the actions *Elvey and Gadgetwiz.com, Inc. v. TD Ameritrade, Inc.*, Case No. C07 2852 VRW (N.D. Cal.) ("Elvey Action") and *Zigler v. TD Ameritrade, Inc. and Does 1 through 100*, Case No. 07-4903 VRW (N.D. Cal.) ("Zigler Action") (together the "Actions").Contemporaneously with the filing of this motion, Plaintiffs are seeking leave to consolidate the Actions and to file a Consolidated Complaint.

This litigation arose as a result of spam e-mail touting various stock investments that were received by customers of TD Ameritrade, Inc. ("TD Ameritrade").  Plaintiffs alleged that TD Ameritrade either improperly disclosed their customers' e-mail addresses to stock spammers or that the e-mail addresses contained in TD Ameritrade's information system were acquired by a third party without authorization.  TD Ameritrade investigated whether e-mail addresses contained in its information system were being used to send stock spam to its customers.  Ultimately, TD Ameritrade identified an unauthorized computer code that allowed an unauthorized third party to access customer e-mail addresses and in September 2007 TD Ameritrade notified its customers.

After extensive negotiations, Plaintiffs and TD Ameritrade have been able to achieve a reasonable and fair settlement resolving the above described litigation.  A copy of the Settlement Agreement is attached hereto.[1]

---

[1] The parties' Settlement Agreement, together with all attachments thereto, is submitted herewith as Ex. A to the Declaration of Scott A. Kamber in Support of Plaintiffs' Application for Preliminary Approval of Class Action Settlement.  All cited provisions of the Settlement

1    Plaintiffs now ask this Court to enter the Hearing Order, submitted herewith, which:

2    (1) consolidates the Actions; (2) appoints the Class Representatives as the representatives of

3    the Settlement Class; (3) appoints Lead and Class Counsel (4) conditionally certifies the

4    Settlement Class for settlement purposes only; (5) preliminarily approves this Agreement as

5    fair and reasonable; (6) approves the form of Class Notice and the Notice Plan; and (7)

6    schedules the Fairness Hearing.

7    As identified in the proposed Order, Plaintiffs recommend that the Court order that the

8    following actions occur on the dates specified in the proposed Order: (1) notice be provided to

9    Settlement Class Members; (2) requests for exclusion from the settlement be sent and

10   postmarked; (3) objections to the settlement or the award of attorneys' fees and

11   reimbursement of expenses in favor of Plaintiffs' counsel be served on counsel and filed with

12   the Court; and  (4) a Fairness Hearing be held at the Court's convenience.

13   **The Class Action Litigation**

14   On May 31, 2007, Plaintiff Elvey filed a putative class action complaint against TD

15   Ameritrade in this action.  On June 28, 2007, Plaintiffs Elvey and Gadgetwiz filed an

16   amended complaint asserting claims for breach of fiduciary duty, alleged violation of

17   California's Consumer Legal Remedies Act ("CLRA), Unfair Competition Law ("UCL") and

18   Computer Fraud and Abuse Act ("CFAA") on behalf of all TD Ameritrade account holders

19   residing in California and for alleged violations of the CAN SPAM Act of 2003 on behalf of

20   all persons and entities who qualify as Internet access services under the Act and who received

21   spam at the e-mail addresses of TD Ameritrade's account holders which is traceable to

22   Ameritrade. Then, on July 10, 2007 Plaintiffs filed a motion for preliminary injunction and for

23   class certification.  A few days later, TD Ameritrade filed a motion to dismiss the amended

24   complaint.

Agreement shall hereinafter be referenced as "¶ _____."

On September 21, 2007, Brad Zigler filed a class action complaint against Ameritrade on behalf of all U.S. TD Ameritrade account holders and all California Ameritrade account holders.  The complaint asserted claims for violations of the Nebraska Consumer Protection Act, the Nebraska Uniform Trade Practices Act, and the Computer Fraud and Abuse Act for the U.S. Class, and, in addition, for violations of the CLRA and UCL for the California account holders.  On December 7, 2007, the court issued an order relating the Zigler and Elvey cases.  Contemporaneously with the filing of this motion, Plaintiffs have filed a motion seeking leave to consolidate the Actions and to file a Consolidated Complaint. The Consolidated Complaint adds Joel Griffiths as a named plaintiff.

In the time leading up to the filing of the amended complaint, and in the months following, Plaintiffs, by and through their counsel, conducted extensive investigations into the facts and law relating to the matters alleged in the amended complaint.

## II.    THE PROPOSED SETTLEMENT

Following briefing of the pending motions, plaintiffs' counsel engaged in extensive arms-length negotiations for over four months with TD Ameritrade's counsel regarding the terms of a possible settlement of this action.  Since January, the parties have worked to draft the attached settlement agreement, notices and accompanying papers and addressed various issues as they arose.  This Settlement is the culmination of these efforts.

### A.    The Settlement Class

The proposed settlement has been reached on behalf of the "Settlement Class," defined in the Settlement Agreement as follows:

> All Persons who are or were accountholders or prospective accountholders of the Company and who provided physical or e-mail addresses to the Company on or before September 14, 2007, except that any Person who has properly filed a Request for Exclusion from the Settlement Class with the Claims Administrator under this Agreement shall not be included in the Settlement Class or be a Settlement Class Member.

(Settlement Agreement, ¶ I.AA).

**B.    The Settlement**

The settlement provides various benefits to the Settlement Class, including (1) an offer of a one-year subscription for an anti-spam internet security product known as "Trend Micro Internet Security Pro" or a one year renewal of the class member's current subscription if s/he already has a subscription for that product; (2) a warning on the Company's website concerning stock touting spam; (3) additional measures to protect the privacy of customer information; (4) an independent consultant to investigate through September 1, 2008 whether the personal information of any member of the Settlement Class has been subject to organized misuse as the result of the unauthorized access to certain data; (5) customer support assistance if instances of organized misuse of information are identified; and (6) donations by the Company of $20,000 to the Honeynet Project and $35,000 to the National Cyber Forensics and Training Alliance.

In return for these benefits, the lawsuits will be dismissed and members of the settlement class that do not exclude themselves from this settlement will be deemed to have released all claims against the Company relating to the unauthorized acquisition of e-mail addresses and any other customer information and/or the receipt of spam e-mails, except that Settlement Class Members will not release individual claims, if any, for identity theft.  In this regard, it should be noted that the independent consultant described in item 4 above has conducted two investigations since September 2007 and has found no evidence of organized misuse of customer personal information as a result of the unauthorized access at issue.

In addition, the Settlement Agreement provides that Class Counsel will petition the Court at the final approval hearing for an award not to exceed the sum of $1.870 million in attorneys' fees and an additional $9,000 for reimbursement of reasonable costs and expenses.

1   The attorneys' fees were negotiated separate and apart from the other terms of the agreement,

2   with the active participation of the Hon. Richard E. Neville (Ret.) as mediator.   TD

3   Ameritrade does not oppose Class Counsels' fee petition.

4       Plaintiffs also intend to make an application for an award of incentive stipends to Class

5   Representative Elvey in the amount of $9,000 and Class Representatives Zigler Griffiths, in

6   the amount of $1,000 each as compensation for their time and effort serving as Class

7

8   Representatives in this litigation.

9   **III.    PRELIMINARY SETTLEMENT APPROVAL**

10      **A.    The Role of the Court**

11      It is well established that the law favors the compromise and settlement of class action

12  suits: "[S]trong judicial policy favors settlement . . ." *Churchill Vill., L.L.C. v. GE*, 361 F.3d

13  566 (9th Cir. 2004) (original ellipsis omitted).  This is particularly true where "class action

14  litigation is concerned." *Class Plaintiffs v. Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

15

16      Rule 23(e) of the Federal Rules of Civil Procedure requires judicial approval for any

17  compromise of claims brought on a class basis.  Approval of a proposed settlement is a matter

18  within the broad discretion of the district court.  *In re Veritas Software Corp. Sec. Litig.*, 2007

19  U.S. App. LEXIS 17623 * 25 (9th Cir. 2007).  Courts, however, must give "proper deference

20  to the private consensual decision of the parties." *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

21  1027 (9th Cir. 1998).  The Court's role is to ensure that the settlement is fair, reasonable and

22

23  adequate.  Fed. R. Civ. P. 23(e)(1)(C).

24      To grant preliminary approval of this class action settlement, the Court need only find

25  that the settlement falls within the range of possible approval.  *See, Livingston v. Toyota*

26  *Motor Sales USA*, 1995 U.S. Dist. LEXIS 21757 at *24 (N.D. Cal. 1995).  The *Manual for*

27  *Complex Litigation* (Fourth) (2004) (the "Manual") characterizes the preliminary approval

28

stage as an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties. *Manual*, § 21.632.

**B.    The Proposed Settlement Class May be Certified**

Class certification under Rule 23(c) is a prerequisite to preliminary approval of the Settlement Agreement. *See* Manual for Complex Litigation § 21.632 (4th ed. 2004); *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997). Class certification requires satisfaction of all four elements in Rule 23(a), along with one of the three categories of Rule 23(b). *Id.*; *Zinser v. Accufix Research Inst. Inc.*, 253 F.3d 1180, 1186 (9th Cir. 2001). Rule 23(a)'s four elements are numerosity, commonality, typicality, and adequacy of representation. Fed. R. Civ. P. 23(a). Rule 23(b)(3) requires predominance of common issues and superiority of a class action. Fed. R. Civ. P. 23(b). Per the Settlement Agreement, TD Ameritrade does not contest that these requirements are met here, for the purposes of requesting the Court's preliminary approval of the Settlement Agreement.

**1.    Plaintiffs Have Met All Of The Prerequisites Under Rule 23(a)**

Plaintiffs have satisfied the numerosity, commonality, typicality and adequacy of representation requirements under Rule 23.

**a.    The Requirement of Numerosity Is Satisfied**

The proposed Class is so numerous that the joinder of all Settlement Class members is impracticable. Fed. R. Civ. P. 23(a)(1). The proposed Settlement Class, which includes over six million Ameritrade customers, satisfies the numerosity requirement. *Jordan v. County of Los Angeles*, 669 F.2d 1311, 1319 (9th Cir. 1982), *vacated on other grounds*, 459 U.S. 810 (1982) (classes with 39, 64, and 71 members sufficiently numerous). The parties do not need

1  "to state the exact number of potential class members, nor is a specific number of class

2  members required for numerosity. . . .  A court may make common sense assumptions to

3  support a finding that joinder would be impracticable." *In re Rubber Chems. Antitrust Litig.*,

4  232 F.R.D. 346, 351 (N.D. Cal. 2005) (citation, quotation omitted).

5

6          b.      The Requirement of Commonality is Satisfied

7          The "commonality" requirement of Rule 23(a)(2) is satisfied where a common

8  question of law or fact exists. Here, the common issues affecting each Settlement Class

9  member are the uniform representations made in Ameritrade's Privacy Statement regarding

10 the security of its operations, the Class members' provision of physical and e-mail addresses

11 and other information to TD Ameritrade, the acquisition of that information by unauthorized

12 persons, the receipt by Class members of stock spam and the reasonableness of the proposed

13 settlement.  "[P]laintiffs may demonstrate commonality by showing that class members have

14 shared legal issues by divergent facts or that they share a common core of facts but base their

15 claims for relief on different legal theories." *Dukes v. Wal-Mart, Inc.*, 509 F.3d 1168, 1177

16 (9th Cir. 2007). Commonality is sufficient where relief "turn[s] on questions of law applicable

17 in the same manner to each member of the class." *O'Connor v. Boeing North Am., Inc.*, 180

18 F.R.D. 359, 370 (C.D. Cal. 1997).

19

20          c.      The Requirement of Typicality is Satisfied

21          Rule 23(a)(4) requires the class representatives' claims to be typical of the class's

22 claims. Plaintiffs' claims are typical of the Settlement Class, because their claims arose from

23 the same factual nucleus common to the entire class as described above.  Typicality and

24 commonality's "underlying issue[s]" bear close resemblance. *Armstrong v. Davis*, 275 F.3d

25 849, 868 (9th Cir. 2001). "[T]ypicality focuses on the relationship of facts and issues between

26 the class and its representatives." *Wal-Mart*, 509 F.3d at 1184 n.12 (citation omitted)

27

28

("[u]nder the rule's permissive standards, representative claims are 'typical' if they are reasonably coextensive with those of absent class members; they need not be substantially identical[;] some degree of individuality is to be expected in all cases, but that specificity does not necessarily defeat typicality").

d.     The Requirement of Adequate Representation is Satisfied

Plaintiffs have and will continue to "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). Adequate representation "depends on the qualifications of counsel for the representatives, an absence of antagonism, a sharing of interests between representatives and absentees, and the unlikelihood that the suit is collusive." *Molski v. Gleich*, 318 F.3d 937, 955 (9th Cir. 2003). *See also Brown v. Ticor Title Ins. Co.*, 982 F.2d 386, 390 (9th Cir. 1992). Adequacy requires "(1) that the proposed representative Plaintiffs do not have conflicts of interest with the proposed class, and (2) that Plaintiffs are represented by qualified and competent counsel." *Wal-Mart*, 509 F.3d at 1185.

Plaintiffs and their counsel are adequate representatives of the Settlement Class. Plaintiffs are typical of the Settlement Class and have no interests antagonistic to the Settlement Class. As set forth in more detail below, Plaintiffs' counsel are experienced and qualified to litigate this action. Proposed Lead Counsel have represented plaintiffs in numerous consumer class actions and have substantial experience in complex litigation. Finally, the vigorousness of the litigation, as well as the length and difficult nature of the settlement negotiations, attests to the non-collusive nature of the settlement. This matter was litigated vigorously until the parties' first settlement conference in September 2007 – including full briefing on a motion for preliminary injunction and a motion to dismiss.

**2.     The Proposed Settlement Class Meets the Requirements of Rule 23(b)(3)**

1

2       Certification of a class under Rule 23(b)(3) requires that (1) common questions must

3  "predominate over any question affecting only individual members," and (2) class resolution

4  must be "superior to other available methods for fair and efficient adjudication of the

5  controversy." Fed R. Civ. P 23(b)(3). The Settlement Agreement satisfies Rule 23(b)(3)

6  because it resolves legal disputes common to all Settlement Class members arising from a set

7  of facts which are common to all Settlement Class members. *Hanlon*, 150 F.3d at 1022

8  (predominance test satisfied by dominance of common nucleus of facts and potential legal

9

10 remedies).

11      The predominance inquiry tests whether proposed classes are sufficiently cohesive to

12 warrant adjudication by representation. *Amchem*, 521 U.S. at 623. "Implicit in the satisfaction

13 of the predominance test is the notion that the adjudication of common issues will help

14 achieve judicial economy." *Valentino v. Carter-Wallace, Inc.*, 97 F 3d 1227, 1234 (9th Cir.

15 1996). "The issues of predominance and superiority are intertwined [–] the more common

16 issue predominate, the more likely it is that a class action is superior." *Brink v. First Credit

17 Resources*, 185 F.R.D. 557, 572 (D. Ariz. 1999). The class settlement under the Settlement

18 Agreement is superior to individual litigation, because it resolves Settlement Class members'

19 claims and provides relief which simply could not be obtained economically in individual

20 litigation. *See Brink*, 185 F.R.D. at 572 ("[T]he alternative to a class action, individual claims,

21 would not be economical for the potential plaintiffs"). Even if Settlement Class members

22 could economically litigate on an individual basis, the resolution of potentially several million

23 individual proceedings would prove hugely burdensome. *Hanlon*, 150 F.3d at 1023 (affirming

24 class certification where individual litigation "would not only unnecessarily burden the

25 judiciary, but would prove uneconomic for potential plaintiffs"). Finally, because the

26

27

28

1   Settlement Agreement obviates further litigation, there is no concern about the manageability

2   of class litigation. *See Amchem*, 521 U.S. at 620 (citation omitted) ("[c]onfronted with a

3   request for settlement-only class certification, a district court need not inquire whether the

4   case, if tried, would present intractable management problems, for the proposal is that there be

5   no trial").

6

7       **3.    The Court Should Appoint Plaintiffs' Counsel as Class Counsel**

8       Rule 23(g) directs the Court to examine, *inter alia*, the following factors when

9   appointing lead counsel: "(i) the work counsel has done in identifying or investigating

10  potential claims in the action; (ii) counsel's experience in handling class actions, other

11  complex litigation, and the types of claims asserted in the action; (iii) counsel's knowledge of

12  the applicable law; and (iv) the resources that counsel will commit to representing the class."

13  Fed. R. Civ. P. 23(g)(1)(A).

14

15      The Court should appoint KamberEdelson LLC to serve as Class Counsel for the

16  Settlement Class pursuant to Rule 23(g). As set forth in the firm resume presented to the

17  Court, Plaintiffs' counsel has significant experience in class action and complex litigation.

18  (Kamber Decl. ¶ 3; Ex. B to Kamber Decl.) Proposed Class Counsel has diligently

19  investigated, prosecuted, and settled this action, dedicated substantial resources to the

20  investigation and prosecution of the claims at issue in the action, and demonstrated their

21  knowledge of the facts and law at issue.

22

23

24      **C.    Criteria To Be Considered In Deciding Preliminary Approval**

25      Plaintiffs and Defendant seek preliminary approval of the Settlement Agreement – not

26  final approval.

27          [R]eview of a class action settlement proposal is a two-step process. The first
            step is a preliminary, pre-notification hearing to determine whether the
28

proposed settlement is "within the range of possible approval." This hearing is *not* a fairness hearing; its purpose, rather, is to ascertain *whether there is any reason to notify the class members of the proposed settlement and to proceed with a fairness hearing.*

*Armstrong v. Board of School Directors of City of Milwaukee*, 616 F.2d 305, 314 (7th Cir. 1980) (emphasis added). Notice of a proposed class settlement should be sent when the Court finds that "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078 , 1079 (N.D. Cal. 2007). *Cf.* Manual for Complex Litigation, § 30.41 (3d. ed. 1995) (notice of proposed settlement should be sent absent "grounds to doubt its fairness or other obvious deficiencies, such as unduly preferential treatment of class representatives or of segments of the class, or excessive compensation for attorneys, and appears to fall within the range of possible approval").

Preliminary approval is "a more summary version" of the inquiry at the final approval stage – the determination of whether the Settlement Agreement is "fair, reasonable, and adequate . . . are ultimately questions for the fairness hearing that comes after a court finds that a proposed settlement is within approval range." *Kessler v. Am. Resorts Int'l's Holiday Network, Ltd.*, No. 05-5944, 2007 WL 4105204, at *5 (N.D. Ill. Nov. 14, 2007) (quoting *In re Prudential Sec. Inc. Ltd. P'ships Litig.*, 163 F.R.D. 200, 209 (S.D.N.Y.1995) (preliminary approval determines whether the settlement is "possibly fair, reasonable and adequate"). The Manual for Complex Litigation characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties. Manual for Complex Litigation, § 21.632 (4th ed. 2004). *Cf. id*. § 40.42 (primary holding in draft order for

preliminary approval is that the proposed settlement is "within the range of reasonableness").

The "range of possible approval" for final approval informs the Court's decision on preliminary approval. The decision "to approve or reject a settlement is committed to the sound discretion of the trial judge because he is exposed to the litigants, and their strategies, positions and proof." *Hanlon*, 150 F.3d at 1026 (citation, punctuation omitted). The discretion given to the Court reflects the policy "that voluntary conciliation and settlement are the preferred means of dispute resolution," which is "especially true in complex class action litigation." *Officers for Justice v. Civil Service Comm'n of City and County of San Francisco*, 688 F.2d 615, 625 (9th Cir. 1982). However, the Court's role in approving "what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and that the settlement, taken as a whole, is fair, reasonable and adequate to all concerned." *Hanlon*, 150 F.3d at 1027 (quoting *Officers for Justice*, 688 F.2d at 625 ). "The proposed settlement is not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Officers for Justice*, 688 F.2d at 625.

As shown below, the proposed Settlement Agreement falls well within the range of possible approval and thus satisfies the requirements of preliminary approval. It is non-collusive, fair and reasonable. The Settlement Agreement provides a significant benefit to Settlement Class members by providing them with a one-year subscription for an anti-spam, anti-virus security product, as well as other benefits. At the same time, the Settlement eliminates the substantial risk and delay of litigation.

### 1.    The Settlement Is The Result Of Arms'-Length Negotiations

The first consideration in the preliminary approval analysis is whether the settlement is

1  the result of serious, informed, and non-collusive negotiations. When a settlement is

2  negotiated at arms-length by experienced counsel, there is a presumption that it is fair and

3  reasonable. *In re Inter-Op Hip Prosthesis Liab. Litig.*, 204 F.R.D. 359, 380 (N.D. Ohio 2001).

4  The proposed settlement here is the result of thorough investigation and extensive arms-length

5  negotiations that took place over the course of several months. Plaintiffs' counsel conducted a

6  detailed investigation into the facts and law relating to the matters alleged in the Amended

7  Complaint. Because this investigation occurred both prior to the filing of the original

8  Complaint in the *Elvey* Action, and continued through the settlement negotiations, Plaintiffs'

9  counsel were fully informed when negotiating the Settlement Agreement. The parties'

10 settlement negotiations culminated in a mediation before the Honorable Richard E. Neville, a

11 retired Illinois state court judge who is now a JAMS mediator, on January 15, 2008. (Kamber

12 Decl. ¶ 4.) The parties negotiated attorneys' fees only after they had agreed on all of the other

13 material elements of the settlement. (*Id*.).

14

15 **2.    The Settlement Falls Within The Range of Possible Approval**

16        As explained above, the proposed Settlement was reached after protracted arms-length

17 negotiations between the parties, and after Plaintiffs' counsel thoroughly considered the

18 advantages and disadvantages of continued litigation. The Settlement Agreement achieves the

19 primary objectives of the litigation, including providing additional protections for

20 Ameritrade's customers' personal information, and warnings to customers regarding stock

21 spam. Plaintiffs' counsel, a law firm with a great deal of experience in the prosecution and

22 resolution of class actions and complex consumer litigation, has carefully evaluated the merits

23 of this case and the proposed settlement. Even if this matter were to proceed to trial,

24 Plaintiffs' counsel acknowledges that there is no assurance that they will prevail. Furthermore,

25 even if a judgment were obtained against Defendant at trial, the relief might be no greater, and

26

27

28

indeed might be less, than that provided by the proposed Settlement Agreement..

**IV.    THE PROPOSED PLAN OF CLASS NOTICE**

Rule 23(c)(2)(B) says, "For any class certified under Rule 23(b)(3), the court must direct to class members the best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." Fed. R.Civ. P. 23(c)(2)(B). Rule 23(e)(B) similarly says, "The court must direct notice in a reasonable manner to all class members who would be bound by a proposed settlement, voluntary dismissal, or compromise." Fed. R. Civ. P. 23(e)(B). Notice is "adequate if it may be understood by the average class member." 4 Alba Conte & Herbert Newberg, *Newberg on Class Actions*, § 11:53 at 167(4th ed. 2002).

Here the parties propose an extensive notice campaign, designed to reach as many Settlement Class members as possible. Notice shall be disseminated in three ways: (1) individual e-mail summary form notice to any Settlement Class Member whose e-mail address was provided to the Company; (2) summary form notice via postcard (via U.S. Mail) to Settlement Class Members who did not provide an e-mail address to the Company, or whose e-mail notices are returned as, or are otherwise known to be, undeliverable; and (3) publication of the summary form notice in one daily and one weekend issue of USA Today. The summary form notice will include a toll free telephone number and a dedicated website address that can be used to obtain a copy of the long form notice and claim information. (¶ VI.A.)

Under the Settlement Agreement, TD Ameritrade will pay all costs for the publication and dissemination of notice to Settlement Class Members. (¶ VI.D). Plaintiffs recommend that all forms of notice be disseminated as promptly as practicable but no later than 30 days after the entry of the Court's order granting preliminary approval of the proposed settlement.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The proposed methods of notice comport with Rule 23 and the requirements of due process.

**VI.    CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully ask that the Court grant preliminary approval of the proposed settlement and enter the proposed Preliminary Order in Connection with Settlement Proceedings, submitted herewith.

Dated: May 30, 2008                    By: s/Ethan Preston _____

                              Ethan Preston (*pro hac vice*)
                              KAMBEREDELSON, LLC
                              The Monadnock Building
                              53 West Jackson, Suite 550
                              Chicago, IL 60604
                              (312) 589-6370
                              epreston@kamberedelson.com

                              Alan Himmelfarb (Cal. Bar. No. 90480)
                              KAMBEREDELSON, LLC
                              2757 Leonis Blvd.
                              Los Angeles, CA 90058
                              (323) 585-8696
                              ahimmelfarb@kamberedelson.com

                              Scott A. Kamber
                              KAMBEREDELSON, LLC
                              11 Broadway, 22d Floor
                              New York, NY 10004
                              (212) 920-3072
                              skamber@kamberedelson.com

                              David Christopher Parisi
                              Suzanne L. Havens Beckman
                              Parisi & Havens LLP
                              15233 Valleyheart Drive
                              Sherman Oaks, CA 91403
                              (818) 990-1299
                              dparisi@parisihavens.com
                              shavensbeckman@parisihavens.com

                              *Counsel for Plaintiffs*