Alan Himmelfarb (Cal. Bar. No. 90480)
KAMBEREDELSON LLC
2757 Leonis Blvd.
Los Angeles, CA 90058
(323) 585-8696
ahimmelfarb@kamberedelson.com

Ethan Preston (*pro hac vice*)
KAMBEREDELSON LLC
The Monadnock Building
53 West Jackson, Suite 550
Chicago, IL 60604
(312) 589-6370
epreston@kamberedelson.com

Scott A. Kamber
KAMBEREDELSON LLC
11 Broadway, 22d Floor
New York, NY 10004
(212) 920-3072
skamber@kamberedelson.com

David Christopher Parisi (Cal. Bar. No. 162248)
Suzanne L. Havens Beckman (Cal. Bar. No. 162248)
Parisi & Havens LLP
15233 Valleyheart Drive
Sherman Oaks, CA 91403
(818) 990-1299
dparisi@parisihavens.com
shavensbeckman@parisihavens.com

*Counsel for Plaintiffs*

**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION**

| | |
|---|---|
| MATTHEW ELVEY, an individual, BRAD ZIGLER, an individual, and JOEL GRIFFITHS, an individual, on their own behalf and on behalf of all others similarly situated,<br><br>Plaintiffs<br><br>v.<br><br>TD AMERITRADE, INC., a New York corporation, and DOES 1 to 100,<br><br>Defendants. | Master File No.<br>C07-2852 VRW<br><br>Judge Vaughn R. Walker<br><br>**CLASS ACTION COMPLAINT** |

**CONSOLIDATED CLASS ACTION COMPLAINT**

Brad Zigler ("Zigler"), Joel Griffiths ("Griffiths"), Matthew Elvey ("Elvey")

(collectively "Plaintiffs"), for their complaint, allege as follows upon information and belief, based upon, *inter alia*, investigation conducted by and through their attorneys, except as to those allegations pertaining to Plaintiffs and their counsel personally, which are alleged upon knowledge:

## Nature of the Claim

1. This is a national class action brought on behalf of current and former TD AMERITRADE, Inc. ("Ameritrade") accountholders (the "Class"). This Complaint concerns a breach in Ameritrade's internal network which disclosed e-mail addresses and other personal information of its accountholders. As a result, accountholders received unsolicited e-mail from stock spammers promoting certain stocks. Plaintiffs initially discovered this breach because they gave Ameritrade unique email addresses that were never shared with anyone besides Ameritrade. On July 10, 2007, Plaintiff Matthew Elvey filed a Motion for Preliminary Injunction that sought, *inter alia*, relief requiring Ameritrade to alert its customer base of a potential breach. Ameritrade ultimately publicly disclosed this breach on September 14, 2007.

## Parties

2. **Plaintiff Brad Zigler:** Brad Zigler is a resident of Santa Rosa, California. Zigler is an Ameritrade accountholder. In the course of his business with Ameritrade, Zigler provided Ameritrade an email account and his Social Security Number.

3. **Plaintiff Joel Griffiths:** Joel Griffiths is a resident of Scottsdale, Arizona. Griffiths is an Ameritrade accountholder. In the course of his business with Ameritrade, Griffiths provided Ameritrade an email account and his Social Security Number.

4. **Plaintiff Matthew Elvey:** Matthew Elvey is a resident of San Francisco, California. Elvey is an Ameritrade accountholder. In the course of his business with Ameritrade, Elvey provided Ameritrade an email account and his Social Security Number.

5. **Defendant TD AMERITRADE, Inc.:** TD AMERITRADE, Inc. is a New York corporation which maintains its headquarters at 4211 South 102d Street, Omaha, Nebraska 68127. Ameritrade provides securities brokerage services, with retail

brokerage representing the vast majority of its business. Ameritrade was established in 1971 as a local investment banking firm and began operations as a retail discount securities brokerage firm in 1975. As of March 2007, Ameritrade had an estimated 6,260,000 accountholders.

6. **Defendants Does:** Plaintiffs are currently ignorant of the true names and capacities, whether individual, corporate, associate, or otherwise, of the defendants sued herein under the fictitious names Does 1 through 100, inclusive, and therefore, sue such defendants by such fictitious names.

7. Plaintiffs allege on information and belief that Doe defendants were at all relevant times acting as Ameritrade's agents, ostensible agents, partners and/or joint venturers and employees , and that all acts alleged herein occurred within the course and scope of said agency, employment, partnership, and joint venture, or enterprise; however, each of these allegations are deemed "alternative" theories whenever not doing so would result in a contraction with the other allegations.

## Jurisdiction and Venue

8. Plaintiffs assert claims under 18 U.S.C. § 1030 for damages and injunctive remedies on behalf of themselves and all others similarly situated. This Court has federal subject matter jurisdiction over this case under 28 U.S.C. § 1331.

9. Ameritrade is a New York corporation headquartered in Nebraska. Ameritrade can only be a citizen in New York and Nebraska. This Consolidated Complaint alleges a national class whose members are scattered throughout the fifty states (including the 48 states besides New York and Nebraska) and the U.S. territories: there is minimal diversity of citizenship between the proposed Class members and Ameritrade. The aggregate of claims asserted in by the Class exceed the sum or value of $5,000,000. This Court has subject matter jurisdiction over this case under 28 U.S.C. § 1332(d)(2).

10. This Court has personal jurisdiction over the Defendant under Cal. Code Civ. Proc. § 410.10 because some of the acts alleged herein were committed, and Zigler and Elvey incurred their injuries, in California (and, specifically, the Northern District of

California).

11. Venue is also proper before this Court under 28 U.S.C. § 1391(b)(1) ,(2), (c).

## Intradistrict Assignment

12. A substantial part of the events which give rise to the claim occurred in the place of Zigler's business and residence, Santa Rosa, in Sonoma County, California. Likewise, a substantial part of the events which give rise to the claim occurred in the place of Elvey's business and residence, San Francisco, in San Francisco County, California. Under Local Rule 3-2(e), this civil action should be assigned to the San Francisco division of the Northern District of California.

## Factual Background

13. **Ameritrade's Privacy Statement:** At all times relevant to this complaint, Ameritrade published a Privacy Statement which indicated that Ameritrade would not disclose personal information to third parties. The relevant portion of the Privacy Statement has been reproduced below:

> Do we share the information collected with any other third parties?
> The cornerstone of our Privacy Statement is the commitment to keep our clients' personal information confidential. *Ameritrade does not sell, license, lease or otherwise disclose your personal information to any third party for any reason, except as noted earlier and as described below*:
>
> • To help us improve our services to you, we may engage another business to help us to carry out certain internal functions such as account processing, fulfillment, client service, client satisfaction surveys or other data collection activities relevant to our business. We may also provide a party with client information from our database to help us to analyze and identify client needs and notify clients of product and service offerings. Use of the information shared is strictly limited to the performance of the task we request and for no other purpose.
>
> • Periodically, we may invite you to participate in advertisements, promotions and special offers offered by Ameritrade or by other sponsoring organizations. These could include retailers, airlines and Internet service providers. Your participation may require us to gather and share your personal information or may require you to supply personal information to the promotion sponsor. For example, a referral program may require that we provide your name as a reference to a prospective client. It is always your choice whether or not to participate.
>
> All third parties with which we share personal information are required to protect

> personal information in a manner similar to the way we protect personal information. Examples of information shared are identifying information such as name, mailing address, e-mail address, telephone number, and information on account activity.
>
> If at any time you choose to purchase a product or service offered by another company, any personal information you share with that company will no longer be controlled under our Privacy Statement.
>
> Ameritrade also reserves the right to disclose your personal information to third parties where permitted by law or where required by law to regulatory, law enforcement or other government authorities. We may also disclose your information as necessary to credit reporting or collection agencies, or when necessary to protect our rights or property.

Ameritrade, *Ameritrade Privacy Statement*, http://www.tdAmeritrade.com/privacy.html (Feb. 2007) (emphasis added). The Privacy Statement does provide for certain disclosures, but these disclosures were not consistent with the breach alleged herein.

14. **Plaintiffs Receive Stock Spam:** Each of the Plaintiffs provided Ameritrade with a unique email address that was never shared with any other person. Each of the Plaintiffs received stock spam at these unique email addresses – unsolicited email touting speculative low-cap stock. Stock spam is invariably part of a "pump and dump" scheme operated by spammers. Because Ameritrade was the only person who had access to these email addresses, Plaintiffs concluded from their receipt of stock spam that Ameritrade must have disclosed their email addresses.

15. Ameritrade knew or should have known that its information systems were not secure as early as September 2006 from accountholder complaints similar to those made by Plaintiffs. On May 31, 2007, Elvey filed a class action complaint against Ameritrade. On July 10, 2007, Elvey filed a Motion for Preliminary Injunction that sought, *inter alia*, relief requiring Ameritrade to alert its customer base of a potential breach.

16. **Ameritrade Discloses Breach:** On September 14, 2007, Ameritrade emailed its clients with the following message:

> Let me tell you why I am sending you this email. While investigating client reports about the industry-wide issue of investment-related SPAM, we recently discovered and eliminated unauthorized code from our systems. This code allowed certain client information stored in one of our databases, including email addresses, to be retrieved by an external source.

Ameritrade also publicly disclosed the breach through press releases and on its website. Ameritrade admitted in its disclosures that "more sensitive information like [accountholders'] account numbers, date of birth and Social Security Numbers [were] stored in this database," but stated that "there is no evidence that it was taken."

17. This breach rendered Ameritrade's Privacy Statement misleading. Specifically, the statement "TD Ameritrade does not . . . disclose [accountholders'] personal information to any third party for any reason . . ." was not accurate at the time it was made. Likewise, the portion of the Privacy Statement below is also misleading:

> We have made a significant investment in leading-edge security software, systems, and procedures to offer you a safe and secure trading environment and protect your personal, financial and trading information. While no security system is absolutely impenetrable, we are constantly reviewing, refining and upgrading our security technology, as new tools become available.

*Ameritrade Privacy Statement*. To the extent Ameritrade knew that there was a breach, Ameritrade must have also known these statements were false.

**Class Certification Allegations**

18. Plaintiffs seek certification of a Class of past and current Ameritrade accountholders. under both Rule 23(b)(2) and Rule 23(b)(3).

19. The Class asserts claims for common law breach of fiduciary duty, violations of the Computer Fraud and Abuse Act (18 U.S.C. § 1030), violations of the Nebraska Consumer Protection Act (Neb. Rev. Stat. § 59-1602, *et seq*.), the Nebraska Uniform Trade Practices Act (Neb. Rev. Stat. § 87-301, *et seq*.), California's Consumer Legal Remedy Act (Cal. Civ. Code §§ 1750-84), and unfair competition law (Cal. Bus. & Prof. Code §§ 17200-10).

20. **Adequate Representation:** Plaintiffs will fairly and adequately represent and protect the interests of the members of the Class, and have retained counsel competent and experienced in complex class actions. Plaintiffs have no interest antagonistic to those of the Class, and Defendants have no defenses unique to Plaintiffs.

21. **Predominance and Superiority:** This class action is appropriate for certification because class proceedings are superior to all other available methods for the fair and

efficient adjudication of this controversy, since joinder of all members is impracticable. The damages suffered by each individual member of either Class will likely be relatively small, especially given the burden and expense of individual prosecution of the complex litigation necessitated by the actions of Defendants. It would be virtually impossible for the members of the Class individually to obtain effective relief from the misconduct of Defendants. Even if members of the Class themselves could sustain such individual litigation, it would still not be preferable to a class action, because individual litigation would increase the delay and expense to all parties due to the complex legal and factual controversies presented in this Complaint. By contrast, a class action presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single Court. Economies of time, effort, and expense will be fostered and uniformity of decisions will be ensured.

22. **Policies Generally Applicable to the Class:** This class action is also appropriate for certification because Defendants have acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the Class as a whole. The policies of the Defendants challenged herein apply and affect members of the Class uniformly, and Plaintiffs' challenge of these policies hinges on Defendants' conduct, not on facts or law applicable only to Plaintiffs.

### Allegations to Certification of Class

23. **Definition of the the Class:** Pursuant to Federal Rule of Civil Procedure 23, Plaintiffs bring this Complaint against Ameritrade on behalf of themselves and all persons who are or were accountholders of Ameritrade and who provided physical or e-mail addresses to Ameritrade on or before September 14, 2007. Excluded from the Class are 1) any Judge or Magistrate presiding over this action and members of their families; 2) Defendants, Defendants' subsidiaries, parents, successors, predecessors, and any entity in which the Defendants or their parents have a controlling interest and their current or former employees, officers and directors; and 3) persons who properly execute and file a timely

request for exclusion from the class and 4) the legal representatives, successors or assigns of any such excluded persons.

24. **Class Numerosity:** The exact number of Class members is unknown and is not available to Plaintiffs, but it is clear that individual joinder of all Class members is impracticable. In SEC filings, Ameritrade estimated it had 6,260,000 accountholders as of March 2007. Class members can be easily identified through Ameritrade's records.

25. **Class Commonality:** Common questions of fact and law exist as to all Class members and predominate over the questions affecting only individual Class members. These common questions include:

   (a) Whether a breach of Ameritrade's information systems exposed personal information pertaining to Class members to spammers;

   (b) Whether such exposure violated Ameritrade's Privacy Statement;

   (c) Whether Ameritrade failed to fully and accurately disclose the underlying breach;

   (d) Whether Ameritrade owed the Class members a fiduciary duty as their broker;

   (e) Whether Ameritrade owed the Class members a fiduciary duty by dint of its collection of personal information under the Privacy Statement;

   (f) Whether Ameritrade breached such fiduciary duties through the violation of its Privacy Statement;

   (g) Whether, Ameritrade's failure to disclose the breach violated its fiduciary duties to the Class members;

   (h) Whether the Does accessed of Ameritrade's computer systems without authorization or in excess of authorization, because it was in violation of the Privacy Statement;

   (i) Whether Does' access of Ameritrade's computer systems caused the Class members to suffer over $5,000 in losses, as the term is defined in 18 U.S.C. § 1030(e)(11);

   (j) Whether Ameritrade's Privacy Statement represented that Ameritrade's services have characteristics, uses, and benefits, or quantities which they do not have, in violation of Cal. Civ. Code § 1770(a)(5);

   (k) Whether Ameritrade's Privacy Statement represented that Ameritrade's services confer or involves rights, remedies, or obligations which they do confer not or involve, in violation of Cal. Civ. Code § 1770(a)(14);

   (l) Whether, in light of the exposure and provision of Class members' email

|   |   |   |
|---|---|---|
|   |   | addresses to spammers, Ameritrade's Privacy Statement was deceptive under Cal. Bus. & Prof. Code § 17200; |
|   | (m) | Whether Ameritrade's Privacy Statement represented that Ameritrade's services have characteristics, uses, and benefits, which they do not have, in violation of Neb. Rev. Stat. § 87-302(5); |
|   | (n) | Whether Ameritrade's Privacy Statement represented that Ameritrade's services were of a particular standard or quality which they were not, in violation of Neb. Rev. Stat. § 87-302(7); |
|   | (o) | Whether Ameritrade advertised its services with an intent not to sell them as advertised, in violation of Neb. Rev. Stat. § 87-302(9); |
|   | (p) | Whether Ameritrade's knowingly made false or misleading statements in a published privacy policy regarding the use of personal information submitted by members of the public in violation of Neb. Rev. Stat. § 87-302(14); |
|   | (q) | Whether, in light of the exposure and provision of Class members' email addresses and social security numbers, Ameritrade's conduct was deceptive under the Nebraska Consumer Protection Act; |
|   | (r) | Whether Ameritrade violated the Nebraska Consumer Protection Act; |
|   | (s) | Whether Ameritrade violated the Nebraska Deceptive Trade Practices Act. |
|   | (t) | Whether Ameritrade violated the CLRA; |
|   | (u) | Whether Ameritrade violated the UCL; |
|   | (v) | Whether Ameritrade is liable for the Does' violation of the CFAA under the doctrine of *respondeat superior*; |
|   | (w) | Whether Plaintiffs and the Class are entitled to relief, and the nature of such relief. |

26. **Class Typicality:** Plaintiffs' claims are typical of the claims of other Class members, as Plaintiffs and other Class members sustained damages arising out of the wrongful conduct of Defendant, based upon the same transactions which were made uniformly to Plaintiffs and the public.

### Count I: Breach of Fiduciary Duty

27. Plaintiffs incorporate the above allegations by reference.

28. As their stock broker, Ameritrade owed all Class members a fiduciary duty.

29. Ameritrade breached its fiduciary duty of confidentiality by allowing the disclosure of its accountholder's email addresses to spammers.

30. Ameritrade owed a fiduciary duty to disclose all material facts within its knowledge relating to its transaction with the Class members. The security of personal information given to Ameritrade was a material fact, because exposure of accountholders' personal information subjects the accountholders to spam and increased risk of identity theft.

31. Ameritrade breached its fiduciary duty by 1) its continued failure to correct the deception created by the Privacy Statement, and 2) its failure to the extent Ameritrade fails to disclose the events that led to the disclosure of its accountholders' email addresses to spammers.

32. Ameritrade's breach of its fiduciary duties has caused damage to the Class members and threaten additional damage in the future. This damage includes the loss of the benefit of bargain on Ameritrade's brokerage fees, which were premised, in part, on Ameritrade's compliance with the privacy statement and full disclosure of facts relevant to the security of accountholders' information.

33. Plaintiffs, on their own behalf and behalf of the other Class members, seek damages in an amount to be determined at trial and equitable relief, for Ameritrade's breach of its fiduciary duties (as well as interest and attorney's fees and costs pursuant to, in part, Cal. Code Civ. Proc. § 1021.5).

**Count II: Violation of the Computer Fraud and Abuse Act, 18 U.S.C. § 1030**

34. Plaintiffs incorporate the above allegations by reference.

35. Plaintiffs allege on information and belief that the Does are Ameritrade's agents, ostensible agents, partners and/or joint venturers and employees, that Ameritrade has given the Does access to its computer systems, and that the Does are either sending stock spam to these email addresses as alleged above, or are deliberately providing the email addresses to confederates who are sending the stock spam.

36. The Does obtained the Class members' email addresses by intentionally accessing Ameritrade's computer systems.

37. The Does' access of Ameritrade's computer systems was without authorization or in excess of authorization, because it was in violation of the Privacy Statement.

38. The Does' access of Ameritrade's computer systems impaired the integrity of those systems.

39. The Does' access of Ameritrade's computer systems damaged the Class members. This loss exceeded $5,000 in damages over a one-year period.

40. The Does have violated the CFAA (18 U.S.C. § 1030(a)(5)).

41. The Does' use of their access to the Ameritrade's computer systems was in the scope of their employment. The Does were in a position to access Ameritrade's computer systems because of their agency relationship with Ameritrade, and their access to those systems was an outgrowth of that relationship. As it was here, the risk of the Does abusing their employer's proprietary information was inherent in the workplace, or typical of or broadly incidental to the Ameritrade's business. The Does' violation of the CFAA was reasonably foreseeable by Ameritrade. Ameritrade benefitted from the Does' violation of the CFAA through commissions on stock purchases caused by the stock spam.

42. Ameritrade is liable for the Does' violation of the CFAA under the doctrine of *respondeat superior*.

43. As alleged above, the Does' CFAA violation has damaged the Class members.

44. Plaintiffs, on their own behalf and behalf of the other Class members, seek compensatory damages in an amount to be determined at trial and injunctive relief or other equitable relief, for Ameritrade's vicarious liability under the CFAA.

### Count III: Violation of Nebraska's Consumer Protection Act

45. Plaintiff incorporates the above allegations by reference.

46. Ameritrade's Privacy Statement was deceptive because it concealed the information breach and affirmatively misrepresented Ameritrade's information security practices.

47. Ameritrade's Privacy Statement was an unfair or deceptive business act or practice and constituted unfair competition under Nebraska Revised Statutes § 59-1602. This conduct had an impact on the public interest.

48. Ameritrade's unfair competition has damaged Plaintiffs and the other Class members. This damage includes the loss of the benefit of bargain on Ameritrade's brokerage fees,

which were premised, in part, on Ameritrade's compliance with the Privacy Statement and full disclosure of facts relevant to the security of accountholders' information.

49. Plaintiffs, on their own behalf and behalf of the other Class members, seek an order enjoining Ameritrade's unfair competition alleged herein, and restitution of property gained by such unfair competition under the Nebraska Consumer Protection Act, as well as interest and reasonable attorney's fees and costs under Neb. Rev. Stat. § 59-1609.

**Count IV: Violation of the Nebraska Uniform Deceptive Trade Practices Act**

50. Plaintiff incorporates the above allegations by reference.

51. Ameritrade's Privacy Statement stated that Ameritrade would not disclose accountholders' personal information to third parties, and that it provided a secure trading environment and protected accountholders' personal, financial and trading information. The Privacy Statement was also misleading because it did not disclose the information breach.

52. Ameritrade's Privacy Statement represented that Ameritrade's services have characteristics, uses, and benefits, or quantities which they do not have, in violation of Neb. Rev. Stat. § 87-302(5) and that Ameritrade's services were of a particular standard or quality which they were not, in violation of Neb. Rev. Stat. § 87-302(7). Moreover, Ameritrade advertised its services with an intent not to sell them as advertised, in violation of Neb. Rev. Stat. § 87-302(9), and Ameritrade knowingly made false or misleading statements in a published privacy policy regarding the use of personal information submitted by members of the public in violation of Neb. Rev. Stat. § 87-302(14).

53. Ameritrade's violations of the Nebraska Uniform Deceptive Trade Practices Act have damaged Plaintiffs and the other Class members. This damage includes the loss of the benefit of bargain on Ameritrade's brokerage fees, which were premised, in part, on Ameritrade's compliance with the Privacy Statement and full disclosure of facts relevant to the security of accountholders' information.

54. Plaintiffs, on their own behalf and behalf of the other Class members, seek damages, an

order enjoining Ameritrade's violations of the Nebraska Uniform Trade Practices Act alleged herein, and court costs and attorney's fees under the Nebraska Consumer Protection Act.

### Count V: Violation of the CLRA, Cal. Civ. Code § 1770

55. Plaintiffs incorporate the above allegations by reference.

56. Ameritrade's Privacy Statement represented that Ameritrade's services have characteristics, uses, and benefits, or quantities which they do not have, in violation of Cal. Civ. Code § 1770(a)(5), and that Ameritrade's services have confer or involves rights, remedies, or obligations which they do confer not or involve, in violation of Cal. Civ. Code § 1770(a)(14). The Privacy Statement stated that Ameritrade would not disclose accountholders' personal information to third parties, and that it provided a secure trading environment and protected accountholders' personal, financial and trading information. The Privacy Statement is misleading because it does not disclose any ongoing information breach.

57. Ameritrade's CLRA violations have damaged Plaintiffs and the other Class members. This damage includes the loss of the benefit of bargain on Ameritrade's brokerage fees, which were premised, in part, on Ameritrade's compliance with the privacy statement and full disclosure of facts relevant to the security of accountholders' information.

58. Plaintiffs, on their own behalf and behalf of the other Class members, seek damages, an order enjoining Ameritrade's CLRA violations alleged herein, and court costs and attorney's fees under the CLRA (Cal. Civ. Code § 1780(d)).

### Count VI: Violation of California's UCL, Cal. Bus. & Prof. Code § 17200

59. Plaintiffs incorporate the above allegations by reference.

60. Ameritrade's Privacy Statement was deceptive.

61. The acts alleged above are unlawful, unfair or fraudulent business acts or practices and constitute unfair competition under Cal. Bus. & Prof. Code § 17200.

62. Ameritrade's unfair competition has damaged the Class members. This damage includes the loss of the benefit of bargain on Ameritrade's brokerage fees, which were premised,

in part, on Ameritrade's compliance with the privacy statement and full disclosure of facts relevant to the security of accountholders' information.

63. Ameritrade's CLRA violations have damaged Plaintiffs and the other Class members. This damage includes the loss of the benefit of bargain on Ameritrade's brokerage fees, which were premised, in part, on Ameritrade's compliance with the privacy statement and full disclosure of facts relevant to the security of accountholders' information.

64. Plaintiffs, on their own behalf and behalf of the other Class members, seek damages, an order enjoining Ameritrade's unfair competition alleged herein, and restitution of property gained by such unfair competition under the UCL (Cal. Bus. & Prof. Code § 17203), as well as interest and attorney's fees and costs pursuant to, in part, Cal. Code Civ. Proc. § 1021.5.

WHEREFORE, Plaintiff prays that the Court enter judgment and orders in their favor and against Defendant as follows:

(a) Certifying the action as a class action and designating Plaintiffs and their counsel as representatives of the Class;

(b) Equitable relief for the Class;

(c) Damages;

(d) Awarding pre- and post-judgment interest; and

(e) Granting such other and further relief as the Court may deem just and proper.

Dated: June _____, 2008.

By:_____

Ethan Preston (*pro hac vice*)
KAMBEREDELSON, LLC
The Monadnock Building
53 West Jackson, Suite 550
Chicago, IL 60604
(312) 589-6370
epreston@kamberedelson.com

Alan Himmelfarb (Cal. Bar. No. 90480)
KAMBEREDELSON, LLC
2757 Leonis Blvd.
Los Angeles, CA 90058
(323) 585-8696

ahimmelfarb@kamberedelson.com

Scott A. Kamber
KAMBEREDELSON, LLC
11 Broadway, 22d Floor
New York, NY 10004
(212) 920-3072
skamber@kamberedelson.com

David Christopher Parisi (Cal. Bar. No. 162248)
Suzanne L. Havens Beckman (Cal. Bar. No. 162248)
Parisi & Havens LLP
15233 Valleyheart Drive
Sherman Oaks, CA 91403
(818) 990-1299
dparisi@parisihavens.com
shavensbeckman@parisihavens.com

*Counsel for Plaintiffs*