MAYER BROWN LLP
LEE H. RUBIN (SBN 141331)
Two Palo Alto Square, Suite 300
Palo Alto, CA  94306
Telephone:  (650) 331-2000
Facsimile:  (650) 331-2060
lrubin@mayerbrown.com

MAYER BROWN LLP
ROBERT J. KRISS
CHARLES E. HARRIS II
71 South Wacker Drive
Chicago, IL  60606
Telephone:  (312) 782-0600
Facsimile:  (312) 701-7711
rkriss@mayerbrown.com

Counsel for Defendant TD AMERITRADE, INC.

## UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA – SAN FRANCISCO DIVISION

| | |
|---|---|
| In re TD AMERITRADE ACCOUNTHOLDER LITIGATION | Master File No.<br><br>C 07-2852 VRW<br><br>**RESPONSE TO COURT ORDER OF JUNE 13, 2008 REGARDING PROPOSED CLASS ACTION SETTLEMENT**<br><br>Chief Judge Vaughn R. Walker |

On June 12, 2008, the parties appeared before the Court to request preliminary approval of a class action settlement in this matter.  The Court posed a number of questions at the hearing and took the matter under advisement.  On June 13, the Court entered an order denying the parties' motion for preliminary approval without prejudice and directing the parties to provide certain supplemental information to assist the Court in evaluating the proposed settlement.  This Response contains the information that the Court requested of TD Ameritrade, Inc. ("TD Ameritrade" or the "Company").

The Court directed that TD Ameritrade provide at least two insurance quotes relating to claims that are released by the settlement and information concerning the cost of a subscription

1  to software that will be offered to class members as part of the settlement.  In addition, the Court

2  directed the parties to submit the agreed number of opt - outs that would trigger TD Ameritrade's

3  option of withdrawing from the settlement.

4       Before addressing each of these inquiries, TD Ameritrade would like to provide

5  additional context to assist the Court in assessing the reasonableness of the settlement.  TD

6  Ameritrade submits that the proposed settlement is a fair and reasonable resolution of this

7  dispute considering the substance of Plaintiffs' claims, TD Ameritrade's response to the data

8  breach at issue and the terms of the proposed settlement.

9  **I. Background**

10      *A.  Plaintiffs' Claims*

11      Plaintiffs allege that they received stock touting spam as a result of a breach in TD

12 Ameritrade's information systems.  Plaintiffs allege no monetary damage as a result of receiving

13 the spam in question. Plaintiffs' complaint does not allege that the breach resulted in any

14 instances of identity theft.   Moreover, plaintiffs do not allege that they suffered any legally

15 compensable injury related to identity theft.  Plaintiffs only assert that "exposure of

16 accountholders' personal information subjects the accountholders to spam and increased risk of

17 identity theft."  (Consolidated Complaint at ¶ 30.)

18      Courts have held that increased risk of identity theft is not a compensable injury.  *See,*

19 *e.g., Pisciotta v. Old National Bancorp*, 449 F.3d 629, 639-640 (7th Cir. 2007) ("Without more

20 than allegations of increased risk of future identity theft, the plaintiffs have not suffered a harm

21 that the law is prepared to remedy.  Plaintiffs have not come forward with a single case or

22 statute, from any jurisdiction, authorizing the kind of action they now ask this federal court,

23 sitting in diversity, to recognize as a valid theory of recovery under Indiana law.")  Furthermore,

24 we have found no cases where a court has certified a class action where plaintiffs sought to

25 recover actual losses arising from identity theft.  *See, e.g., TJX Companies Retail Security*

26 *Breach Litigation,* 246 F.R.D. 389 (D. Mass. 2007) ("Given that there are a myriad of ways in

27 which fraud losses can occur, as well as the fact that the plaintiffs themselves have admitted the

28

RESPONSE TO COURT ORDER OF JUNE 13, 2008
REGARDING PROPOSED CLASS ACTION SETTLEMENT
C 07-2852 VRW

1   difficulty of attributing any particular loss to the data breach [citations omitted], evidence of

2   general causation will not suffice to prove the element of causation with regard to fraud-related

3   losses on a class-wide basis.  Instead, causation will have to be determined loss-by-loss, bank-

4   by-bank, further rendering certification inappropriate.")  Attempting to prove whether an

5   instance of identity theft was caused by a breach at TD Ameritrade rather than any of a myriad of

6   other potential causes would require highly individualized proof, as would establishing the

7   specific injuries actually suffered as a result of identity theft.  Accordingly, even if this case were

8   not settled, it would not be appropriate to certify alleged identity theft claims for class action

9   resolution.

10          The fact that a breach occurred does not mean that a company is liable to its customers

11   for that breach. Courts have recognized that even when a company takes reasonable measures to

12   protect customer information, it may not be able to prevent a data breach.  *See, e.g., Cobell v.*

13   *Norton*, 455 F.3d 301, 315 (D.C. Cir. 2004) ("…as the district court acknowledged, 'it is

14   generally considered impossible to create a perfectly secure IT environment'").

15          ***B.  TD Ameritrade's Response to the Breach and Benefits of the Proposed Settlement***

16          Before plaintiffs filed their original complaint, TD Ameritrade had received complaints

17   from some of its account holders that they were receiving stock spam and the Company was

18   investigating. In August 2007, after the plaintiffs filed their original complaint, TD Ameritrade

19   discovered, with the assistance of Mandiant, Inc., a leading information security consultant that

20   has assisted numerous private companies and the U.S. Government in combating cyber crime,

21   that an unauthorized code had been placed on its system and that unauthorized persons had used

22   the code to obtain certain customer information.  With Mandiant's assistance, TD Ameritrade

23   removed the unauthorized code and took certain actions to prevent future breaches.

24          Prior to discovering the breach, TD Ameritrade retained private consultants periodically

25   to test its systems for vulnerabilities, sometimes referred to as "penetration tests."  As part of the

26   settlement, TD Ameritrade agreed to continue this practice; and as to one of the penetration tests

27   to be conducted, TD Ameritrade agreed to select a consultant approved by Plaintiffs.  Further,

28

3

1  the Company agreed that if the consultants identify material vulnerabilities during penetration

2  tests, the vulnerabilities will be promptly reported to the Audit Committee of the Board of TD

3  Ameritrade Holding Corporation, the Company's parent, and the Company will promptly

4  undertake to remediate those vulnerabilities.

5  Most states have enacted statutes requiring companies to notify their customers if they

6  have reason to believe that an unauthorized person has obtained sensitive customer information,

7  such a social security numbers, which could be used to commit identity theft.  Most of these

8  statutes do not treat e-mail addresses as the type of sensitive information that triggers an

9  obligation to notify customers of a data breach[1]  TD Ameritrade and Mandiant found no

10  evidence that the unauthorized persons obtained sensitive customer information such as social

11  security numbers and date of birth.  Nevertheless, TD Ameritrade decided to give notice to its

12  customers of the data breach it had discovered.  A copy of the press release and one of the forms

13  of notice to customers given in September 2007 are attached hereto as Exhibit 1.

14  TD Ameritrade also decided to retain ID Analytics, Inc. ("ID Analytics"), a leading

15  company in the business of detecting and preventing identity theft, to perform four investigations

16  during the year following notice of the incident.  As described more fully in the Declaration of

17  Mike Cook, attached hereto as Exhibit 2, ID Analytics maintains credit account databases and

18  has developed powerful computer database search algorithms that can be used to identify

19  instances of identity theft.  ID Analytics' methodology is directed at identifying instances of

20  identity theft that may have occurred as the result of a particular database breach (sometimes

21  referred to as "organized identity theft" or "organized misuse").  ID Analytics completed its

22  fourth investigation in June 2008.  It found no evidence of identity theft arising from the data

23  breach at issue in any of its investigations. TD Ameritrade paid more than $2 million for the

24  services of ID Analytics.

25
[1] See, e.g. Cal. Civ. Code§ 1798.82(e) (triggering notification upon acquisition of name plus one or more of social security number, driver's license number or account number in combination with any required password that would permit access to a financial account); Neb. Rev. Stat. §§ 87-802 (5) (triggering notification upon acquisition of name plus social security number; driver's license number; account number in combination with any required password that would permit access to a financial account; unique electronic identification number or routing code in combination with any required password . . . ).

1    At the time the Settlement Agreement was entered into, the parties contemplated that at

2  least one of the four investigations to be performed by ID Analytics under its original contract

3  with TD Ameritrade would be completed after approval of the settlement.  To implement the

4  intent of the parties in light of the timing of these proceedings and the completion of the four

5  investigations, TD Ameritrade has agreed that it will retain ID Analytics to perform an additional

6  investigation within 60 days of the entry of the Final Order and Judgment approving the

7  settlement.  Also, as part of the proposed settlement, TD Ameritrade has agreed to provide

8  various types of assistance and dispute resolution procedures to any of its customers who are

9  identified as potential victims of identity theft by ID Analytics.

10    In addition, as discussed more fully below, TD Ameritrade has agreed to provide

11  additional value to settlement class members by offering without charge a one year subscription

12  to a leading software product designed to reduce spam and the risk of identity theft.  The

13  suggested retail price of the software (before applicable rebates that are periodically offered

14  through retailers) is $69.99 for a one year subscription.

15    *C.  Release of Claims*

16    In return for these and other benefits described in the Settlement Agreement, TD

17  Ameritrade has requested a reasonable release of claims from settlement class members so that it

18  does not have to spend more time and money litigating these matters.  During the June 12

19  hearing, the Court inquired about the release of identity theft claims.  As discussed above, there

20  is no evidence that anyone has suffered a legally compensable injury, and claims of actual loss

21  due to identity theft would not be appropriate for class action resolution because of the

22  individualized, fact-intensive nature of these claims.  In seeking a release of identity theft claims

23  asserted as a class action, TD Ameritrade is attempting to avoid protracted litigation over

24  meritless claims.  Under the proposed settlement, members of the settlement class are not

25  releasing any individual identity theft claims they may have.

26             *    *    *

27

28

In summary, TD Ameritrade believes that it would likely prevail on the merits if this action were not settled.  It took reasonable steps before and after the security incident in question to prevent unauthorized access to customer information and, accordingly, would have no liability to Plaintiffs.  Moreover, having notified its customers of the incident, there is no basis for any injunctive relief, and there is no legally compensable injury here.  No monetary damages could be granted based upon receipt of spam, and there is no legally compensable identity theft injury.  In any event, damage claims would be highly individualized and not amenable to class action resolution.  In short, there is no reason for this litigation to proceed.  The settlement is fair and reasonable to all parties and should be approved.

## II. Responses to the Court's Inquiries

### A. Value of Software Offer

As described more fully in the Declaration of Ward Thomas, attached hereto as Exhibit 3, Trend Micro Internet Security Pro ("TIS Pro") software has substantial value to consumers.  Its function is to reduce spam and the risk of identity theft that arises from the use of personal computers.  In 2007, Consumer Reports rated Trend Micro security software best in class.  The particular software products examined by Consumer Reports contained less functionality and were less expensive than TIS Pro, but the rating is indicative of the high quality of the suite of products produced by Trend Micro.  Other organizations have rated TIS Pro specifically and have found it to be of high quality.[2]

TIS Pro's suggested retail price for a one year subscription is $69.99 per licensed unit.  Trend Micro periodically offers rebates to purchasers of TIS Pro against the cost of a one year subscription.  Trend Micro's mail-in rebates for TIS Pro range from $30 - $45 and instant rebates range from $20 - $25.  Mail in rebates and instant rebates generally are not offered together.

---

[2]   To implement the intent of the parties that settlement class members with Windows or Macintosh computers would have the opportunity to receive an anti-spam/security software product without charge, TD Ameritrade has agreed to include an offer to provide at no charge to class members primarily using Macintosh computers for securities trading a one year subscription to an alternative software product that is compatible with Macintosh computers.  The Company estimates that less than 5% of its customers use only Macintosh computers to do business with the Company.  Settlement notices will be amended to reflect the alternative product for the class members primarily using Macintosh computers.

1    Rebate programs are available to each retailer for a limited number of weeks each quarter, and

2    rebates run for a limited period of time, usually one week.  Rebates from Trend Micro are lower

3    than the price retailers pay Trend Micro for each package of the TIS Pro software. Some

4    customers purchase the software without any rebates.

5        Trend Micro earns revenues on its sales to retailers, even after all applicable rebates

6    offered by Trend Micro are taken into account.  If a consumer ever receives a rebate from Trend

7    Micro equal to the amount of the selling price, it is because the retailer has priced the product to

8    consumers below the price at which the retailer purchased the product from Trend Micro.

9        The contract between Trend Micro and TD Ameritrade requires TD Ameritrade to pay

10   more than $6 million for the right to distribute TIS Pro during the period from December 24,

11   2007 to March 31, 2011 to those eligible settlement class members who elect to download and

12   install this software.  TD Ameritrade will make one year software subscriptions available to

13   settlement class members without charge after the Court enters the Final Judgment and Order

14   approving the settlement, provided that settlement class members request the software within a

15   reasonable time of court approval (to be defined on the settlement web site).

16       **B.  *Insurance Quotes***

17       At the hearing counsel for TD Ameritrade was not clear as to the type of insurance about

18   which the Court was inquiring.  Counsel for TD Ameritrade indicated that the Company did not

19   have the coverage mentioned by the Court.  It is true that TD Ameritrade does not have a liability

20   policy that is limited to covering class action identity theft claims -- the only type of identity

21   theft claim that is released under the proposed settlement.  However, as explained in the

22   Declaration of James Bollman, attached hereto as Exhibit 4, TD Ameritrade has had insurance

23   coverage for a variety of computer-based liability risks, including, but not limited to claims for

24   identity theft, whether the claims were asserted individually or as part of a class action.  The

25   premiums paid by the Company for this coverage during the 12-month periods in which

26   Plaintiffs filed their original complaints were less than $750,000.

27

28

RESPONSE TO COURT ORDER OF JUNE 13, 2008
REGARDING PROPOSED CLASS ACTION SETTLEMENT
C 07-2852 VRW

1    In addition, as directed by the Court, the Company sought two other quotes for coverage

2    for identity theft claims.  The scope of coverage provided by these policies would be narrower

3    than the policies in place and more focused upon identity theft claims.  As a result, these quotes

4    provide a more refined approximation of the cost of coverage for the claims at issue here.  These

5    quoted premiums range between $320,000 and $470,000 for a 12-month period.

6    ### *C.  TD Ameritrade's Option to Withdraw from the Settlement*

7    The Settlement Agreement provides in Section VII.C.:  "If the number of Class members

8    submitting Requests for Exclusions exceeds an Agreed Number that the parties have submitted

9    to the Court in camera, the Company shall have the option of terminating this Settlement

10   Agreement."  The "Agreed Number" is 400.  The parties disclosed this number in the proposed

11   long form notice submitted to the Court although they did not revise the Settlement Agreement

12   to so provide and did not include the number in the short forms of notice.

13   ## III.  Conclusion

14   TD Ameritrade has taken reasonable steps to solve the problem that gave rise to this

15   litigation -- stock touting spam.  TD Ameritrade also has addressed potential identity theft issues.

16   It has retained an expert to investigate whether the security incident at issue may have caused

17   identity theft.  To date, there is no evidence that it has.  In any event, settlement class members

18   do not release their individual identity theft claims.  They release only class action identity theft

19   claims, which case law suggests should not be allowed to proceed in any event.  TD Ameritrade

20   has acted reasonably and responsibly in response to the breach that occurred and this litigation.

21   The proposed settlement provides real value to class members and is a fair and reasonable

22   resolution of the claims asserted in this case.

23   Dated:  July 10, 2008                    Mayer Brown LLP

24

25                                           By:    /s/  Lee H. Rubin
                                                    Lee H. Rubin

26                                           Attorneys for Defendant TD AMERITRADE, Inc.

27

28
                                             8