MAYER BROWN LLP
LEE H. RUBIN (SBN 141331)
TWO PALO ALTO SQUARE, SUITE 300
PALO ALTO, CA 94306
Telephone: (650) 331-2000
Facsimile: (650) 331-2060
lrubin@mayerbrown.com

ROBERT J. KRISS
CHARLES E. HARRIS II
71 SOUTH WACKER DRIVE
CHICAGO, ILLINOIS 60606
Telephone: (312) 782-0600
Facsimile: (312) 701-7711
rkriss@mayerbrown.com

Attorneys for Defendant
TD AMERITRADE, INC.

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN FRANCISCO DIVISION**

| | |
|---|---|
| MATTHEW ELVEY, an individual, on his own behalf and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>TD AMERITRADE, INC., a New York Corporation,<br><br>Defendants. | Case No. C 07-2852 VRW<br><br>**TD AMERITRADE'S RESPONSE TO MATTHEW ELVEY'S OBJECTIONS TO SETTLEMENT** |

**TABLE OF CONTENTS**

**Page**

ARGUMENT ............................................................................................................................... 4

I.    Plaintiffs Have No Reasonable Prospect of Obtaining Additional Relief By Litigating the Merits of Their Claims ............................................................................. 4

    A.    Identity Theft ....................................................................................................... 4

    B.    SPAM ................................................................................................................... 5

    C.    Accounting .......................................................................................................... 5

    D.    Notice of Breach ................................................................................................. 6

    E.    Warnings Regarding Stock Touting SPAM ........................................................ 7

    F.    Additional Preventive Measures ......................................................................... 7

II.    The Proposed Settlement Confers Significant Benefits to the Class ............................... 8

III.    The Terms of the Release Are Fair and Enforceable ....................................................... 9

IV.    E-mail Notice Is Appropriate in this Case ..................................................................... 10

V.    The Substance of the Settlement Notice Is Appropriate ............................................... 12

CONCLUSION .......................................................................................................................... 13

# TABLE OF AUTHORITIES

**Cases**                                                                                                                  **Page(s)**

*Browning v. Yahoo! Inc.*, No. C04-01463 HRL, 2007 WL 4105971
     (N.D. Cal. Nov. 16, 2007) ................................................................................................ 10, 11

*Churchill Vill., LLC v. Gen. Elect.*, 361 F.3d 566 (9th Cir. 2004) ................................................. 3

*Cobell v. Norton*, 455 F.3d 301 (D.C. Cir. 2004) ........................................................................... 6

*In re Cendant Corp. Litig.*, 264 F.3d 201 (3d Cir. 2001) .............................................................. 10

*In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106 (7th Cir. 1979) ................... 3

*Lundell v. Dell, Inc.*, 2006 WL 3507938 (N.D. Cal. Dec. 5, 2006) .............................................. 11

*Nat'l Super Spuds v. Ny. Merc. Exchange*, 660 F.2d 9 (2d Cir. 1981) ........................................ 10

*Serventi v. Bucks Tech. High Sch.*, 225 F.R.D. 159 (E.D. Pa. 2004) ........................................... 10

ii
RESPONSE TO MATTHEW ELVEY'S OBJECTIONS TO SETTLEMENT
CASE NO. C 07-2852 BZ

1      Matthew Elvey's objections to the settlement are substantively without merit and appear
2 to be motivated by objectives other than to further the best interests of the putative class.
3      After signing the class action settlement agreement in this case and attending a case
4 management conference during which the settlement was discussed and at which he expressed
5 no objections or concerns, Matthew Elvey abruptly repudiated his agreement at the hearing on
6 preliminary approval of the settlement and promptly left the courtroom to talk to the press.  Since
7 then, Elvey has posted entries in blogs asking former or current TD Ameritrade employees to
8 disclose to him confidential information about the Company's information security systems,
9 saying that "you shouldn't assume I'd make *everything* you provide public."  Exhibit A.
10 (emphasis added)  In the same blog, he slams the SEC and FINRA, saying that these agencies
11 "are essentially self-governing bodies, i.e. [sic] their purpose is largely to protect companies like
12 TD Ameritrade."
13      Elvey claims in another blog posting that he was "threatened" by his lawyer to sign the
14 settlement agreement and that he deliberately decided to, "in order to protect the interests of the
15 class, temporarily appear in some way to be going along with a proposed settlement…"  Exhibit
16 B. We now know from his most recent filing and the filing of his former counsel that the only
17 "threat" was his lawyer's advice that the settlement would go forward without him – because
18 class counsel and the other class representatives considered the settlement to be in the best
19 interest of the class – and he would not receive his $10,000 incentive award under the settlement
20 agreement if he chose not to sign the agreement.
21      Elvey also has flatly misrepresented facts to this Court and the public.  At the preliminary
22 approval hearing, Elvey asserted that an expert had data showing thousands of cases of identity
23 theft resulting from the security breach at issue.  That expert, who has no stake in this litigation,
24 later filed a declaration stating that he told Elvey no such thing.  To this day, Elvey has not
25 identified a single instance of identity theft allegedly related to the security breach at TD
26 Ameritrade other than two instances he claims to have experienced himself, but which he has not
27 shown were linked to TD Ameritrade.  He offers declarations from other class members
28

addressing various subjects, but none of them claims to have experienced identity theft. He does not dispute that ID Analytics is among the leading companies capable of determining whether identity theft is related to a particular security breach. ID Analytics has performed analyses on four separate occasions since the security breach and found no evidence of identity theft involving Elvey or any other class member. Elvey mischaracterizes ID Analytics' capabilities, incorrectly stating that ID Analytics can only detect large scale identity theft. But it is undisputed on the record before the Court that ID Analytics has developed robust methods that can detect as little as two incidents of identity theft among millions of customers in a data base.[1]

Elvey also has misrepresented facts to the public in a blog provocatively entitled "Declaration shreds proposed settlement, discloses threats, proposes remedies." In that posting he says, "We disclose the **fraudulent** filing of court documents with the court that purported to show my signature on to [sic] the settlement, and the written threats made by my former counsel and intended to prevent me from fulfilling my duty to the class." Exhibit C. (emphasis original) But Elvey's declaration demonstrates no such thing. In fact, it shows the opposite. There was no fraudulent filing. Elvey signed the agreement, he understood what he was signing and he has admitted that he signed it. There was nothing "fraudulent" about the filing.

Several things are clear from this pattern of behavior. Elvey is erratic and mercurial and appears to be using this case to generate publicity about himself and to disparage TD Ameritrade. Through his blog, he is disseminating skewed and misleading information about the Settlement and TD Ameritrade. He is intent upon disclosing to the public as much information as possible about TD Ameritrade's security system. His views and actions are extreme, and he is not representative of the class or acting in its interest.

Most importantly, his views are not informed by a reasonable assessment of the merits of the class claims and the benefits offered by the settlement. One of the most important factors in determining whether a class action settlement is fair and reasonable is a comparison of the

---

[1] As ID Analytics explains in its declaration, "organized misuse" does not mean large scale identity theft. It means only that the identity theft is organized through a common source of information, such as a compromised database, as opposed to "environmental identity theft" which refers to the background levels of identity theft that occur among the general population for a variety of reasons and are not linked to the particular data base under examination.

benefits made available to class members by the settlement against the potential recovery in litigation, discounted by the probability of success. *Churchill Vill., LLC v. Gen. Elect.*, 361 F.3d 566 (9th Cir. 2004) ("In determining whether a proposed settlement is 'fair, reasonable, and adequate,' under Rule 23, district courts balance a number of factors, including: (1) the strength of the plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation…."); *In re Gen. Motors Corp. Engine Interchange Litig.*, 594 F.2d 1106 (7th Cir. 1979) ("The most important factor relevant to the fairness of a class action settlement is the strength of plaintiff's case on the merits balanced against the amount offered in the settlement").

As demonstrated in TD Ameritrade's Response to the Court's June 13, 2008 Order Regarding Proposed Class Action Settlement ("Supplemental Response") and its previous filings in support of its motion to dismiss and in opposition to plaintiff's motion for preliminary injunction, there is no compensable injury in this case, TD Ameritrade gave adequate notice of the breach in September 2007 and Plaintiffs have no viable cause of action as a matter of law. If this case were to proceed, all of Plaintiffs' claims should be dismissed.[2]

Contrary to Elvey's assertions, the Settlement provides significant benefits to the class that are reasonable in light of the litigation risks confronting the class. Settlements are compromises for both sides of a lawsuit. Neither side gets everything they want. Settling Plaintiffs appreciate that reality. Elvey, on the other hand, ignores or seriously underestimates the litigation risks confronting the class.

In any event, Elvey has taken extreme positions and engaged in erratic behavior. He should be removed as a class representative and be treated as an objector to the settlement. His objections are without merit, and in any event, should not prevent the Court from preliminarily approving the settlement and authorizing TD Ameritrade to give notice of the proposed settlement to settlement class members for their consideration.[3]

---

[2] The inherent weakness of Plaintiffs' class action claims is evident as a matter of law. There is no need to disclose highly confidential information concerning TD Ameritrade's security systems to Elvey or the class to enable them to adequately address the reasonableness of the settlement. Based upon applicable law and publicly available facts, it is clear that the Class confronts a substantial risk that its claims would be dismissed if this case were not settled.

[3] TD Ameritrade takes issue with all of Elvey's objections and assertions. However, in this
(cont'd)

3
RESPONSE TO MATTHEW ELVEY'S OBJECTIONS TO SETTLEMENT
CASE NO. C 07-2852 BZ

# ARGUMENT

## I. Plaintiffs Have No Reasonable Prospect of Obtaining Additional Relief By Litigating the Merits of Their Claims.

In the course of his lengthy objection, Elvey suggests that the class should receive more relief for identity theft and receipt of SPAM, an accounting of information concerning the security breach and preventive measures, additional notice of the risk of identity theft, more warnings regarding the dangers of stock touting SPAM and additional security measures by TD Ameritrade. However, Elvey does not, and cannot, show that the settlement class likely would be entitled to any additional relief if the case were litigated on the merits rather than settled.

### A. Identity Theft

Elvey objects to characterizing this dispute as a SPAM case. He argues that identity theft claims are at the heart of the case. But there is no evidence of identity theft here. All the evidence is to the contrary. ID Analytics has found no evidence of identity theft.[4] None of the class members, except Elvey, claim identity theft. Moreover, even Elvey has not reported any SPAM received at any e-mail addresses created after notice of the security breach was given to the public in September 2007, indicating that TD Ameritrade's remedial efforts have been successful. TD Ameritrade's account seeding activities similarly have shown no SPAM received at e-mail address created after September 2007 or any credit alerts received for the accounts established as part of the seeding programs.

---

brief, TD Ameritrade will only address what it believes are the more significant problems with Elvey's position. TD Ameritrade's counsel will be prepared to answer any other questions the Court may have at the upcoming Case Management Conference on September 15.

[4] In an effort to refute the conclusion reached by ID Analytics that it found no evidence of organized identity theft resulting from the breach, Elvey seeks to belittle ID Analytics and cast doubt on its reliability or validity of its methodology. ID Analytics, however, is a leading provider of identity intelligence software and services to Fortune 1000 companies across multiple industries. ID Analytics' scientists have over 100 years of cumulative world-wide experience building analytical models in the fraud and risk categories from companies including Capital One, HNC Software, Los Alamos National Laboratory, Morgan Stanley and Visa; and its experienced team of scientists has been granted 31 patents to-date. ID Analytics is a provider of data breach analysis services. ID Analytics provides its breach analysis service to multiple government agencies, including the Department of Veterans Affairs, as well as private sector clients. See Cook Declaration submitted on July 10, 2008, as Exhibit 2 to TD Ameritrade's Response to Court Order of June 13, 2008.

In its Supplemental Response, TD Ameritrade cited authority for the twin propositions that (1) claims for increased risk of identity theft are not actionable and (2) claims for actual identity theft are not susceptible to class-wide adjudication. Elvey did not attempt to address these cases or cite any cases to the contrary. Settlement class members clearly have no viable class action claim for identity theft. It is equally clear that settlement class members are not being asked to release any individual claims they may have for identity theft. Accordingly, the proposed settlement is fair and reasonable in its treatment of identity theft claims.

**B. SPAM**

As to SPAM claims, TD Ameritrade has argued that members of the settlement class have no prospect of recovering damages based upon the receipt of stock touting SPAM. Elvey again has failed to address this point or cite any analogous case in which plaintiffs achieved a significant recovery in a SPAM case.

**C. Accounting**

In opposing Plaintiff's motion for preliminary injunction, TD Ameritrade demonstrated that no Court has recognized a right to a public "accounting" of information concerning a security breach and preventive measures. Plaintiff was not able to cite a single case supporting its demand for this type of relief, effectively acknowledging in a footnote that the Court would have to make new law. See Plaintiffs' Reply to Defendant's Opposition to the Motion for Preliminary Injunction filed on September 4, 2007, p. 9, footnote 8. Similarly, Elvey cites no support for this type of remedy in his objection.

If this case were litigated on the merits, Elvey could not compel the type of public disclosure of security-related information that he is now seeking under the guise of allowing six million class members to evaluate the fairness of the proposed settlement. It would be a mistake for any court to create a new remedy compelling disclosure of sensitive security information. Breaches of security have become more frequent, regardless of how well an information system is protected. If every breach triggered a requirement to publicly disclose details of the breach and preventive measures taken, the risk of additional breaches would only increase.

1   It would be particularly inappropriate to compel disclosure of such information in the
2   case of a brokerage firm such as TD Ameritrade that is regulated by the SEC and FINRA.  These
3   agencies regularly examine TD Ameritrade's information security systems.  Contrary to Elvey's
4   reckless assertions in his blog as discussed above (p.1), these agencies are well-positioned to
5   protect the public interest.  Moreover, putting such sensitive information in the hands of Matthew
6   Elvey who has indicated an intent to obtain and disclose confidential information about TD
7   Ameritrade's information security systems would endanger TD Ameritrade and its customers.
8   Furthermore, Elvey's unbridled invectives against the Company are unfounded.  He cites
9   no evidence that TD Ameritrade's security system was deficient other than the fact that the
10  Company was the victim of a breach of its system.  But as courts have recognized, even good
11  security systems may fall victim to unauthorized intrusions.  *See, e.g., Cobell v. Norton*, 455 F.3d
12  301, 315 (D.C.Cir.2004)("…as the district court acknowledged, 'it is generally considered
13  impossible to create a perfectly secure IT environment'").  Prior to TD Ameritrade's discovery
14  of the unauthorized code, both the SEC and FINRA had conducted examinations and not
15  reported any failures by TD Ameritrade to comply with regulatory standards.  TD Ameritrade
16  reported the security breach to both agencies.  See Declaration of David Hale filed on August 23,
17  2007.  The agencies continue to review TD Ameritrade's information security systems on a
18  regular basis.
19  **D.  Notice of Breach**
20  Elvey complains that the notice that TD Ameritrade sent to its customers in September
21  2007 did not adequately inform them of the risk of identity theft.  That notice is attached as
22  Exhibit 1 to TD Ameritrade's Supplement Response.  The notice pointed out that social security
23  numbers were contained in the data base that was breached.  The notice also accurately pointed
24  out that there was no evidence that the unauthorized person acquired and used social security
25  numbers to perpetrate identity theft.  It would be misleading to suggest to the public that identity
26  theft has occurred or that it is imminent.  Almost a year has passed since TD Ameritrade sent the
27  notice to affected persons.  During that time, ID Analytics has performed four examinations and
28  found no evidence of identity theft.  By disclosing that social security numbers were contained in

the affected data base, TD Ameritrade put affected persons on notice that there was a risk of identity theft. But there is no basis for compelling TD Ameritrade to depict that risk as any higher than suggested in the notice.

### E.  Warnings Regarding Stock Touting SPAM

As demonstrated in TD Ameritrade's papers in support of its motion to dismiss and in opposition to Plaintiff's motion for preliminary injunction, there is no legal basis to require TD Ameritrade to issue any warnings regarding stock touting SPAM. Neither the SEC nor FINRA have seen a need to impose any obligations on broker-dealers to provide additional warnings. In any event, it should be obvious to any reasonable investor that they are taking a large risk investing in a stock based upon an anonymous tip in an unsolicited e-mail touting a stock.[5]

### F.  Additional Preventive Measures

Neither Plaintiffs nor Elvey has cited any authority that gives them the right to dictate the type of security system that TD Ameritrade offers its customers. If a plaintiff suffers compensable injury, he can recover damages for that injury, but he cannot dictate the type of security system that a Company implements. It would be counter-productive to create new law that would require judges and juries in public trials to fashion information security systems for businesses. Also, in the case of a highly regulated financial company such as TD Ameritrade, standards for information security are better left to regulators who can use their expertise to develop practical solutions that fit the type of business being regulated and who will apply those standards uniformly to all companies that are under their regulatory authority and are competing with each other.[6]

* * *

---

[5] Nevertheless, if the Settlement is approved, TD Ameritrade will post a warning to customers about stock SPAM on the Company's website in the Security Center section. In addition, periodically there will be an announcement posted in the announcement section of the homepage that directs customers' attention upon log-in to the Security Center. Elvey's objections concerning these warnings are based upon an erroneous reading of the Settlement Agreement.

[6] TD Ameritrade has many business reasons to implement effective information security measures. For example, it provides customers with an asset protection guarantee covering losses of customers' assets in accounts with the Company arising from unauthorized activity including identity theft if it occurred through no fault of the customer.

1  In summary, members of the settlement class most likely would not obtain any significant
2  recovery if this case were litigated on the merits.

**II.  The Proposed Settlement Confers Significant Benefits to the Class.**

4  Elvey complains that the settlement confers no benefit on the settlement class because
5  TD Ameritrade was committed to take these measures in the ordinary course of its business.
6  Assume for purposes of argument only, that TD Ameritrade provided no additional benefits that
7  were contingent upon the approval of this settlement, but that Plaintiffs would not likely achieve
8  any additional recovery if they litigated for the reasons discussed above.  Under those
9  circumstances, it still would be fair and reasonable to approve the settlement based upon TD
10  Ameritrade's responsible conduct in the ordinary course of its business before approval of the
11  settlement.  Plaintiffs do not have a right to receive something extra whenever they file a class
12  action if they would not be entitled to the additional relief if they continued to litigate on the
13  merits rather than settle.  Otherwise, a responsible company, like TD Ameritrade, would be
14  penalized for taking swift corrective action for the benefit of the settlement class before a
15  settlement could be approved.  Accordingly, since Plaintiffs would not likely obtain any relief in
16  litigation that they have not already received from TD Ameritrade, the settlement is fair and
17  reasonable for this reason alone.

18  However, contrary to Elvey's misreading of the settlement and his misreading of TD
19  Ameritrade's Supplemental Response, the settlement class stands to receive substantial
20  additional benefits if the settlement is approved.  First, an additional penetration test will be
21  performed by an independent expert mutually chosen by TD Ameritrade and Plaintiffs' counsel.
22  Although TD Ameritrade routinely retains independent experts to perform penetration tests, the
23  settlement provides peace of mind that an expert trusted by Plaintiffs and their counsel will make
24  a comprehensive test of TD Ameritrade's current security system.  If any material vulnerabilities
25  are found by this expert, they will be reported to the Audit Committee of the Board of Directors
26  of TD Ameritrade's parent company, and TD Ameritrade will promptly undertake to remediate

such vulnerabilities. There is no better way to test the adequacy of the system than to allow experts to try every technique known to them to break into the system.[7]

Second, contrary to Elvey's assertion, ID Analytics will conduct another analysis to search for evidence of identity theft after court approval of the settlement. This analysis will detect identity theft if it is occurring, and TD Ameritrade will notify and assist any identified persons according to the procedures outlined in the Settlement Agreement.

Third, settlement class members will be able to download Trend Micro software for free. Elvey, himself, in another blog posting acknowledged that "This IS a good piece of software." Exhibit D. The software protects against SPAM and certain types of identity theft that involve attacks on a consumers personal computer.[8] At the preliminary approval hearing, Elvey stated that the software could be obtained for free. In his most recent filing, he only gives one example of one retailer that made that offer for a limited time. The software has significant market value, certainly as valuable as any actionable claim of a settlement class member.[9]

The value of the benefits that the class already has received and will receive, if the settlement is approved, are reasonable in light of Plaintiffs' limited prospects for obtaining any additional remedy through litigation. Accordingly, the settlement is fair and reasonable and should be approved.

## III. The Terms of the Release Are Fair and Enforceable.

The release language that Elvey complains about in the proposed Settlement Agreement is simply a standard release that bars class members from bringing any claims against

---

[7] Elvey cavalierly suggests in his blog that a penetration test will cost in the neighborhood of $100. In fact, the kind of penetration tests at issue cost well in excess of $100,000.

[8] In addition to anti-SPAM protection, the Software includes many other features, most of which protect a user from fraud and identity theft, either directly or indirectly. The Software includes an anti-virus product that monitors for malicious software on a user's computer. It also includes a suite of products collectively called the Transaction Protector that protect users from potential identity theft threats when conducting business online. Transaction Protector includes Wi-Fi Advisor that helps a user determine the potential risks of public wireless networks; keystroke encryption that obfuscates what a user types from keyloggers; and Site Inspector, a tool for determining the safety of particular websites.The Software also includes a feature called Remote File Lock that, when deployed, allows a user to remotely lock down personal information stored on the computer in the event the computer is lost or stolen.

[9] TD Ameritrade locked in the price of the Trend Micro software program shortly after it believed it would likely be able to achieve a settlement in this case.

1  Ameritrade that either have or could have been brought in this litigation based upon the facts
2  alleged in its amended complaint, excluding individual claims for identity theft. District courts
3  routinely approve class action settlement agreements that contain similar releases. *See*, *e.g.*, *In*
4  *re Cendant Corp. Litig.*, 264 F.3d 201, 227 (3d Cir. 2001) (citing the Stipulation of Settlement)
5  (affirming the district court's approval of a class settlement where the class "agreed to release
6  [the defendants] from all claims that 'are based upon, are related to, arise from or are connected
7  with any facts, circumstances, statements, omissions, events or other matters raised or referred to
8  in the pleadings in the Litigation or *which could have been asserted* against [the defendants] and
9  the other Released Parties by the Lead Plaintiffs and any Class Member.'" (emphasis added));
10 *Serventi v. Bucks Tech. High Sch.*, 225 F.R.D. 159, 164 (E.D. Pa. 2004) (approving a class
11 settlement where "plaintiffs and class members agree to release all claims that were brought or
12 *could have been brought* in this lawsuit. . . ."(emphasis added)).
13      The case cited by Elvey, *Nat'l Super Spuds v. Ny. Merc. Exchange*, 660 F.2d 9 (2d Cir.
14 1981) is not to the contrary. It only stands for the proposition that the release cannot extend to
15 causes of action based upon a different transaction than was alleged in the complaint. The case
16 expressly notes that a release can cover all claims, regardless of legal theory, that arise from the
17 same set of facts alleged in the complaint. *Id.* at 18 ("We assume that a settlement could
18 properly be framed so as to prevent class members from subsequently asserting claims relying on
19 a legal theory different from that relied upon in the class action complaint but depending upon
20 the very same set of facts.") The language used in the release in this case has consistently been
21 construed by courts to have precisely that meaning. If such releases were not valid, it would be
22 difficult to settle any case since new legal theories might be asserted based upon the same core
23 facts alleged in the Complaint.
24 **IV.    E-mail Notice Is Appropriate in this Case.**
25      Elvey also complains that e-mail notice is not proper in this case. He cites only one case
26 in support of his position. That case does not even address class action notice. It concerns
27 service of a summons and a complaint.
28

10

1     On the contrary, courts have regularly approved e-mail notice, particularly in cases
2 involving large classes since e-mail notice is far less expensive than mail and is considered to be
3 reasonably reliable. *Browning v. Yahoo! Inc*., No. C04-01463 HRL, 2007 WL 4105971 (N.D.
4 Cal. Nov. 16, 2007) is particularly helpful on the email notice issue. The *Browning* class
5 included anyone that purchased credit score and credit-monitoring products from Yahoo!'s
6 website over the course of about eight years. The class alleged that Yahoo! and the other
7 defendants were required to comply with the Credit Repair Organizations Act ("CROA")
8 because they advertised credit score and credit-monitoring products on Yahoo!'s website and
9 they failed to comply with the Act. The Northern District of California approved notice by email
10 to more than 14 million tentative class members. *Id.* at *4. In so doing, the Court stated: "Email
11 notice was particularly suitable in this case, where settlement class members' claims arise from
12 their visit to Defendants' Internet websites." *Id.* S*ee also Lundell v. Dell, Inc*., 2006 WL
13 3507938, at *1 (N.D. Cal. Dec. 5, 2006).
14     E-mail notice is particularly appropriate here because members of the settlement class are
15 familiar with the Internet as a result of placing trade orders using it.  Also, the TD Ameritrade
16 customer agreement provides that TD Ameritrade may communicate with its customers by e-
17 mail, and in fact, TD Ameritrade does, from time to time, communicate to customers in this
18 fashion.[10]  In addition, the notice will contain a summary line that states: "Important Notice of
19 Class Action Settlement that May Affect Your Rights.  Please Open" and the notice will be in the
20 body of the e-mail, not a separate attachment.  Moreover, the Settlement also provides that if a
21 notice sent by e-mail is returned as undeliverable, another notice will be sent by regular mail.[11]
22 Elvey suggests that customers will block or disregard messages from TD Ameritrade because of
23 the SPAM problem.  However, the SPAM e-mails at issue did not show TD Ameritrade as the
24 sender, but rather various other fictitious entities.  Customers have no reason to block or

---

[10] The Customer Agreement provides in pertinent part: "Client Communications…a. Addresses. You [TD Ameritrade] may send communications to the mailing address, email, telephone number, or facsimile that I provide….c. Consent.  By consenting to the electronic delivery of all information relating to my Account, I authorize you to deliver all communications to me by the following means;  (1) by email at the email address specified by me…."

[11] The Settlement also provides for notice by publication.

11

1  disregard e-mail communications from TD Ameritrade and significant financial reasons to be
2  attentive to communications from their brokerage firm.

3  **V.     The Substance of the Settlement Notice Is Appropriate.**

4      Elvey argues that the Settlement Notice should emphasize that this is an identity theft
5  case, not a SPAM case. However, that is not how the amended complaint was framed or how the
6  facts have developed. The only actual injury alleged in the complaint was the receipt of SPAM.
7  The increased risk of identity theft is only briefly mentioned, and no monetary relief is sought for
8  it. As events have unfolded, there is no evidence of identity theft arising from the breach. In any
9  event, TD Ameritrade's notice to affected parties in September 2007 notified all settlement class
10 members that social security numbers were in the data base that was breached. It would be
11 misleading to suggest to settlement class members in the context of the settlement of this
12 litigation that this is an identity theft case where it is clear, as a matter of law, that the increased
13 risk of identity theft is not a compensable injury and that identity theft claims cannot, in any
14 event, be pursued in a class action. The notices make it clear that individual claims for identity
15 theft are not released.

16     In addition, the release language in the summary forms of notice is very broad, thereby
17 alerting settlement class members that they are being asked to give a release of essentially all
18 claims arising from the alleged security breach, except individual claims for identity theft. Since
19 Settlement Class members do not have class action claims for identity theft and are expressly
20 told that any individual claims for identity theft are not released, they are fairly apprised of their
21 legal rights.

**CONCLUSION**

The proposed settlement is fair and reasonable. TD Ameritrade asks the Court to preliminarily approve it and authorize TD Ameritrade to give notice of the settlement to settlement class members for their consideration.

Dated: September 12, 2008

Mayer Brown LLP

By: _____/s/ Lee H. Rubin_____
        Lee H. Rubin

Attorneys for Defendant TD AMERITRADE, Inc.