1   Gretchen M. Nelson (112566)
    KREINDLER & KREINDLER LLP
2   707 Wilshire Blvd., Suite 4100
    Los Angeles, CA  90017
3   Telephone:  213-622-6469
    Telecopier:  213-622-6019
4   Email:  gnelson@kreindler.com

5
    Howard Strong, Esq. ( 069641)
6   Law Offices of Howard Strong
    P.O. Box 570092
7   Tarzana, CA  91357-4031
    Telephone: (818) 343-4434
8   Telecopier: (818) 343-7910
    Email:  stronglaw@gmail.com
9

10  *Attorneys for Richard Holober,*
    *individually and on behalf of the class*
11  See Signature Page for Names of Additional Plaintiffs' Counsel

12

13              **UNITED STATES DISTRICT COURT**

14      **NORTHERN DISTRICT OF CALIFORNIA, SAN FRANCISCO DIVISION**

15

16  IN RE: TD Ameritrade Account Holder     Master File No. C-07-2852 VRW
17  Litigation,
                                            CLASS ACTION
18  This Document Relates to All Actions
                                            **NOTICE OF MOTION AND MOTION**
19                                          **FOR PRELIMINARY APPROVAL OF**
                                            **CLASS SETTLEMENT; MEMORANDUM**
20                                          **OF POINTS AND AUTHORITIES IN**
                                            **SUPPORT THEREOF**
21
                                            Date:  December 23, 2010
22                                          Time:  11:00 a.m.
                                            Place: Courtroom of the Honorable Vaughn
23                                          R.Walker
24

25

26

27

28
                                            MASTER FILE NO. C-07-2852 VRW

# TABLE OF CONTENTS

**Page**

NOTICE OF MOTION AND MOTION ..................................................................................... 1

MEMORANDUM OF POINTS AND AUTHORITIES .......................................................... 2

I.     INTRODUCTION ............................................................................................. 2

II.    PROCEDURAL HISTORY ............................................................................... 3

III.   TERMS OF THE SETTLEMENT ................................................................... 4

     A.     Proposed Class Definition ..................................................................... 4

     B.     Consideration .......................................................................................... 4

     C.     Release ...................................................................................................... 6

IV.   LEGAL ARGUMENT ....................................................................................... 7

     A.     Class Action Settlement Procedure ...................................................... 7

     B.     Standards For Settlement Approval ..................................................... 7

     C.     The Proposed Settlement Is Within The Range Of Reasonableness ......... 9

     D.     The Proposed Settlement Class Satisfies Rule 23(a) ............................... 10

         1.    The Class Is So Numerous that Joinder Is Impracticable ............. 10

         2.    The Case Involves Questions of Law and Fact Common to the Class .............................................................................................. 11

         3.    Plaintiffs' Claims Are Typical of the Claims of the Class ........... 11

         4.    Plaintiffs Will Fairly and Adequately Represent the Interests of the Class ......................................................................................... 12

     E.     The Proposed Settlement Class Satisfies Rule 23(b)(3) .......................... 13

         1.    Common Questions of Law and Fact Predominate Over Individual Questions .................................................................... 13

         2.    Class Adjudication is the Superior Method of Adjudicating this Case ......................................................................................... 14

     F.     Class Counsel Should be Appointed ..................................................... 14

V.     PROPOSED PLAN OF NOTICE ................................................................... 15

VI.   PROPOSED PLAN OF ALLOCATION ....................................................... 17

VII.   ATTORNEYS' FEES AND COSTS ................................................................ 17

VIII. THE COURT SHOULD SET A FINAL APPROVAL HEARING SCHEDULE ....................................................................................................... 18

IX.   CONCLUSION ................................................................................................. 18

CHDB02 5292672.1 12-Nov-10 12:24

# TABLE OF AUTHORITIES

Page

## CASES

*Amchem Prods. Inc. v. Windsor*,
    521 U.S. 591 (1997)........................................................................................10, 13, 14, 15

*Armstrong v. Davis*,
    275 F.3d 849 (9th Cir. 2001) .................................................................................... 12

*Blackie v. Barrack*,
    524 F.2d 891 (9th Cir. 1975) .................................................................................... 11

*Breeden v. Benchmark Lending Group, Inc.*,
    229 F.R.D. 623 (N.D. Cal. 2005)............................................................................... 11

*Brink v. First Credit Resources*,
    185 F.R.D. 557(D. Ariz. 1999) ................................................................................. 14

*Churchill Village, LLC v. General Elec.*,
    361 F.3d 566 (9th Cir. 2004) .................................................................................. 7, 8

*Class Plaintiffs v. City of Seattle*,
    955 F.2d 1268 (9th Cir. 1992) ................................................................................ 7, 9

*Curiale v. Lenox Group, Inc.*,
    Slip Opinion Case No. 07-1432, 2008 WL 4899474, *10 (E.D. Pa. Nov. 14,
    2008) ......................................................................................................................  9

*Haley v. Medtronic, Inc.*,
    169 F.R.D. 643 (C.D. Cal. 1996)............................................................................... 11

*Hanlon v. Chrysler Corp.*,
    150 F.3d 1011 (9th Cir. 1988) ............................................................................... 8, 11

*Harris v. Palm Springs Alpine Estates, Inc.*,
    329 F.2d 909 (9th Cir. 1964) .................................................................................... 11

*In re Brand Name Prescription Drugs Antitrust Litig.*,
    Case No. 94 C 897, 1994 WL 663590 (N.D. Ill. Nov. 18, 1994)................................... 14

*In re Citric Acid Antitrust Litig.*,
    145 F. Supp. 2d 1152 (N.D. Cal. 2001) ..................................................................... 17

*In re NASDAQ Market Makers Antitrust Litigation*,
    176 F.R.D. 99 (S.D.N.Y. 1997).................................................................................. 8

*In re Oracle Sec. Litig.*,
    1994 WL 502054 (N.D. Cal. June 18, 1994) .............................................................. 17

*In re Pacific Enter. Sec. Litig.*,
    47 F.3d 373 (9th Cir. 1995)....................................................................................... 7

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

CHDB02 5292672.1 12-Nov-10 12:24

1

2

**TABLE OF AUTHORITIES**
**(continued)**

3                                                                                           **Page**

4

*In re Rubber Chemicals Antitrust Litig.*,
    232 F.R.D. 346 (N.D. Cal. 2005) ................................................................. 13

*In re Tableware Antitrust Litig.*,
    484 F. Supp. 2d 1078 (N.D. Cal. 2007) ....................................................... 15

*Lerwill v. Inflight Motion Pictures, Inc.*,
    582 F.2d 507 (9th Cir. 1978) ........................................................................ 12

*Mendoza v. United States*,
    623 F.2d 1338 (9th Cir. 1980) ...................................................................... 16

*O'Connor v. Boeing North Am., Inc.*,
    180 F.R.D. 359 (C.D. Cal. 1997) ................................................................. 11

*Officers for Justice v. Civil Serv. Comm'n*,
    688 F.2d 615 (9th Cir. 1982), *cert. denied sub nom. Byrd v. Civil Serv.*
    *Comm'n*, 459 U.S. 1217 (1983) ...................................................................... 8

*Slaven v. BP America, Inc.*,
    190 F.R.D. 649 (C.D. Cal. 2000) ................................................................. 11

*Valentino v. Carter-Wallace, Inc.*,
    97 F.3d 1227 (9th Cir. 1996) ................................................................. 13, 14

*Van Bronkhorst v. Safeco Corp.*,
    529 F.2d 943 (9th Cir. 1976) .......................................................................... 7

5

6

7

8

9

10

11

12

13

14

15

16

17

18

**RULES**

19

Federal Rules of Civil Procedure
    Rule 23 ................................................................................................ passim
    Rule 23(a) ........................................................................................ 10, 12, 13
    Rule 23(a)(1) ............................................................................................ 10, 13
    Rule 23(a)(2) .................................................................................................. 11
    Rule 23(a)(3) .................................................................................................. 11
    Rule 23(b)(3) ............................................................................................ 13, 14
    Rule 23(c)(1)(B) ............................................................................................ 14
    Rule 23(c)(2)(B) ............................................................................................ 15
    Rule 23(e) ........................................................................................................ 7
    Rule 23(e)(1) .................................................................................................. 15
    Rule 23(g) ...................................................................................................... 14

Rule 23(g)(1)(A) .................................................................................................. 15

20

21

22

23

24

25

26

27

28

MASTER FILE NO. C-07-2852 VRW

Motion for Preliminary Approval of Settlement

CHDB02 5292672.1 12-Nov-10 12:24

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES
## (continued)

Page

## TREATISES

4 *Newberg on Class Actions*
  § 8.32 ..................................................................................................................... 15
  §§ 11.22, *et seq.* (4th ed. 2002) ........................................................................... 7
  § 11.25 ..................................................................................................................... 8
  § 11.41 (4th ed. 2002) ........................................................................................... 9
  § 11:53 ..................................................................................................................... 15


*Manual for Complex Litigation (Fourth)*

  § 21.311 ................................................................................................................. 15
  § 21.62 ..................................................................................................................... 9
  § 21.632 (2004) ................................................................................................... 8, 10

**NOTICE OF MOTION AND MOTION**

**TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:**

      **PLEASE TAKE NOTICE** that on December 23, 2010, at 11:00 a.m., in the Courtroom of the Honorable Vaughn R. Walker, United States District Judge for the Northern District of California, located at 450 Golden Gate Avenue, San Francisco, California, plaintiffs Richard Holober and Brad Zigler will and hereby do move the Court, pursuant to Federal Rule of Civil Procedure 23(e), for entry of an Order:

          1.      Certifying a settlement class;

          2.      Appointing Class Counsel;

          3.      Appointing Richard Holober and Brad Zigler as Class Representatives;

          4.      Preliminarily approving the class action settlement;

          5.      Directing distribution of notice of the settlement to the class and providing class members with the opportunity to opt out of or object to the settlement; and

          6.      Setting a schedule for the final settlement approval process.

      The grounds for this motion are that the proposed class settlement is fair, reasonable, and adequate, and that the proposed class satisfies the certification requirements for a settlement class. This motion is based on this Notice of Motion and Motion, the supporting Memorandum of Points and Authorities, the Class Action Settlement Agreement and exhibits thereto which is Exhibit 1 to the Declaration of Gretchen M. Nelson, filed concurrently herewith, any papers filed in response, the argument of counsel, and all papers and records on file in this matter.

MASTER FILE NO. -07-2852 VRW

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION AND SUMMARY OF THE SETTLEMENT

Pursuant to Federal Rule of Civil Procedure 23, plaintiffs hereby move this Court for an order preliminarily approving a class settlement reached with defendant TD Ameritrade Inc. ("TD Ameritrade" or the "Company").  Under the settlement, TD Ameritrade will pay claims up to a total of $6.5 million to members of the class who have suffered an identity theft in exchange for a release of each class member's claims.  The settlement further provides that in no event will TD Ameritrade pay less than $2.5 million in settlement.  In addition, the settlement provides that TD Ameritrade will retain an independent evaluator to assess whether the Company has met certain information technology security standards set forth in the Settlement Agreement and TD Ameritrade will promptly act to correct areas of non-compliance, if any, that are identified during the evaluation.

This settlement was achieved after lengthy negotiations at and following a mediation before the Honorable Joseph C. Spero, who was appointed by this Court to oversee settlement discussions following the Court's earlier order denying final approval of a prior settlement in these consolidated cases.  The prior settlement did not provide for the payment of any cash to settlement class members.  This proposed settlement provides for cash payments to class members in amounts ranging from $50 to $2,500, depending on the nature of the identity theft and expenses or unreimbursed losses incurred by class members in responding to such identity theft.  And, as noted above, the settlement provides for prophylactic relief in the form of an independent assessment of whether the Company has met certain agreed information technology security standards.

The question at the preliminary approval stage is not whether the settlement is fair, reasonable and adequate.  Rather, the question is whether the settlement is within the range of possible approval to justify sending and publishing notice of the settlement to class members and scheduling final approval proceedings.  The settlement here was reached after extensive arm's-length negotiations between experienced and informed counsel before a highly experienced jurist, and easily meets the standards for preliminary approval.  Accordingly, plaintiffs seek an order:

- 2 -

1    (1) granting preliminary approval of the class settlement; (2) certifying a class for settlement

2    purposes; and (3) directing the issuance of notice to the Settlement Class.

3    **II.      PROCEDURAL HISTORY**

4         This litigation was filed after a number of clients of TD Ameritrade began receiving spam

5    e-mail touting stock investments.  Plaintiffs alleged that TD Ameritrade either improperly

6    disclosed their customers' email addresses to stock spammers or that the email addresses were

7    acquired by a third party without authorization.  TD Ameritrade had commenced an investigation

8    as to the source of the email addresses and ultimately identified an unauthorized computer code

9    that allowed an unauthorized third party or parties to access customer e-mail addresses.  In

10   September 2007, TD Ameritrade notified its customers of the data breach.

11        Following the filing of the initial complaint, plaintiffs amended their complaint and then

12   filed a motion seeking a preliminary injunction and class certification.  TD Ameritrade filed a

13   motion to dismiss and opposed the motions for class certification and preliminary injunction.  The

14   motions were then continued to afford the parties an opportunity to explore the possibility of a

15   settlement.  On May 29, 2008, the parties informed the Court that they had reached a settlement

16   (hereafter the "first settlement") and requested that the Court set the matter for a preliminary

17   approval hearing on June 12, 2008.

18        On June 13, 2008, pursuant to a stipulation and order, plaintiffs filed a Consolidated

19   Complaint.  And, on June 13, 2008, the Court issued its order denying the motion for preliminary

20   approval without prejudice.  Following briefing on issues raised orally during the hearing on

21   preliminary approval, the Court reset the preliminary approval hearing for October 7, 2008 and

22   thereafter, following the submission of additional briefing addressing certain areas of concern

23   regarding the first settlement, the Court issued an order granting preliminary approval and notice

24   was submitted to the class.

25        On October 23, 2009, the Court issued its Order denying final approval of the first

26   settlement.  *In re TD Ameritrade Accountholder Litig.*, 266 F.R.D. 418 (N.D. Cal. 2009).

27   Pursuant to the Court's Order, counsel for Holober who had objected to the first settlement was

28   invited to assume responsibility for prosecution of the claims.  *Id.*, p. 424.  Thereafter, the parties

requested and this Court agreed to submit the matter to the Honorable Joseph C. Spero for further settlement negotiations.

Magistrate Judge Spero set the matter for a settlement conference that was conducted on April 7, 2010.  The parties exchanged mediation briefs and conducted a full day of mediation.  At the conclusion of the mediation, the parties had agreed on the broad outlines of a settlement, and Magistrate Judge Spero directed the parties to conduct further discussions regarding various unresolved issues, including the content of the claim form, the identity of the independent evaluator and the information technology security standards that will be applied pursuant to the settlement.  Since that time, Magistrate Judge Spero has monitored the parties' progress in further negotiating the terms and documentation necessary to finalize the settlement and has kept close watch over counsel to insure that they were acting diligently in their efforts to finalize the documentation necessary to present this proposed settlement to the Court.

## III.    <u>TERMS OF THE SETTLEMENT</u>

### A.    <u>Proposed Class Definition</u>

The proposed settlement class is:

> All persons who are or were accountholders or prospective accountholders of the Company and who provided physical or e-mail addresses to the Company on or before September 14, 2007.

Excluded from the class is any person who properly files a request for exclusion under the settlement agreement and officers, directors and employees of the Company, and any governmental entity.

### B.    <u>Consideration</u>

The terms of the proposed class settlement are fully set forth in the Agreement.  Among other things, the settlement provides that TD Ameritrade will pay eligible claims up to $6.5 million.  In the event that the amount of eligible claims exceed $6.5 million, each claim will be reduced proportionately.  And, in the event that claims do not reach $2.5 million, TD Ameritrade will still be required to pay no less than $2.5 million.  In such event, any payment in excess of the total amount of eligible claims and any award of attorney fees and costs (which may not exceed

- 4 -

$500,000) necessary to meet the $2.5 million minimum threshold will be paid to specified non-profit organizations involved in privacy rights issues.  These entities are the International Association of Privacy Officers, Center for Democracy and Technology, Identity Theft Resource Center, National Cyber Forensics & Training Alliance and Electronic Privacy Information Center.

The settlement proceeds will be distributed to settlement class members who have suffered an identity theft and who complete and submit claim forms.  Claimants are  entitled to seek cash benefits ranging from $50 to $2,500 depending on the nature of the account affected by the identity theft and the type of expense and unreimbursed loss incurred.  The following is the range of compensation for which claimants may submit claims.

a) If the only identity theft experienced by a Settlement Class Member involves Existing Credit or Debit Card Accounts (as defined in the Settlement Agreement), the Settlement Class Member can claim $50.

b) If a Settlement Class Member experiences identity theft involving a New Account or Existing Account other than an Existing Credit or Debit Card Account, the Settlement Class Member can claim (i) $250 or (ii) any amount up to $1,000 (inclusive of the $250 minimum payment) if and to the extent the Settlement Class Member has incurred and is claiming out-of-pocket expenses or (iii) any amount up to $2,500 (inclusive of the $250 minimum payment and out-of-pocket expenses of up to $1,000) if and to the extent the Settlement Class Member has incurred and is claiming unreimbursed losses on the account(s) involved in the identity theft. Out-of-pocket expenses include costs such as telephone charges, copying, postage charges or other charges incurred in closing or correcting an account that was opened or affected as a result of identity theft.  Unreimbursed losses include charges that a Claimant was obligated to pay on New Accounts or Existing Accounts other than Existing Credit or Debit Card Accounts as a result of identity theft and that the creditor refused to refund or waive after being notified by Claimant

MASTER FILE NO. C-07-2852 VRW

1    that such charges were due to identity theft.

2        The settlement also requires that TD Ameritrade retain at its expense an independent

3    evaluator who will assess whether the Company has met certain information technology security

4    standards as agreed upon in the Agreement.  If the evaluator determines that TD Ameritrade has

5    not met one or more of the standards, TD Ameritrade will correct the non-compliance.  The

6    parties have agreed that the evaluator shall be Neohapsis – a company that has strong credibility

7    in areas of technology infrastructure security and critical applications.  The parties considered a

8    number of companies for this role and collectively concluded that Neohapsis was best positioned

9    to perform the duties required.  However, it should be noted that a partner in the law firm of

10   Kamber Law, LLP, counsel for one individual and entity who originally filed claims in this

11   litigation, was General Counsel for Neohapsis approximately 4 years prior.  Kamber Law's

12   partner has no ongoing financial interest in Neohapsis and has maintained no position with that

13   company since his departure in approximately 2006.  The lack of financial interest and the length

14   of time since his departure, led the parties to conclude that this prior relationship did not create

15   any potential conflict that could impair Neohapsis' independence in conducting the evaluation.

16       **C.**    **Release**

17       Upon final approval of the settlement, plaintiffs and class members will release all claims

18   they have against TD Ameritrade arising from the matters, events or facts alleged in the

19   consolidated complaint and/or arising from or relating to any alleged unauthorized disclosure to,

20   or unauthorized acquisition by any person on or before September 14, 2007, of any information or

21   data provided to TD Ameritrade by plaintiffs or Settlement Class members including claims

22   based on the receipt of SPAM email by plaintiffs or Settlement Class members; any statements or

23   alleged misrepresentations or omissions in defendant's privacy statement and/or any alleged

24   increased risk of identity theft or actual identity theft.  . Agreement, ¶ I.Y.[1]

25

26

27

---

[1]  The settlement does not release any claims of a governmental entity.  Agreement, ¶ I.Y.

28

MASTER FILE NO. C-07-2852 VRW

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT

## IV.   LEGAL ARGUMENT

### A.   Class Action Settlement Procedure

A class action may not be dismissed, compromised, or settled without the approval of the Court.  Judicial proceedings under Federal Rule of Civil Procedure 23 have led to a defined procedure and specific criteria for approval of class action settlements.  The Rule 23(e) settlement approval procedure describes three distinct steps:

1. Certification of a settlement class and preliminary approval of the proposed settlement;

2. Dissemination of notice of the settlement to all affected class members; and

3. A formal fairness hearing at which class members may be heard regarding the settlement, and at which counsel may introduce evidence and present argument concerning the fairness, adequacy, and reasonableness of the settlement.

This procedure safeguards class members' procedural due process rights and enables the Court to fulfill its role as the guardian of class interests.  *See* 4 *Newberg on Class Actions* §§ 11.22, *et seq.* (4th ed. 2002) ("*Newberg*") (describing class action settlement procedure).

By way of this motion, the parties request that the Court take the first step in the settlement approval process and certify a class for settlement purposes only and preliminarily approve the proposed Settlement.  Plaintiffs further request that the Court appoint Class Counsel and appoint Richard Holober and Brad Zigler as named Class Representatives.

### B.   Standards For Settlement Approval

Rule 23(e) requires court approval of any settlement of claims brought on a class basis. "[T]here is an overriding public interest in settling and quieting litigation . . . particularly . . . in class action suits which are now an ever increasing burden to so many federal courts and which frequently present serious problems of management and expense."  *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976); *see also Churchill Village, LLC v. General Elec.*, 361 F.3d 566, 576 (9th Cir. 2004); *In re Pacific Enter. Sec. Litig.*, 47 F.3d 373, 378 (9th Cir. 1995); and *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992).

The purpose of the Court's preliminary evaluation of the proposed settlement is to determine whether it is within "the range of reasonableness," and thus whether notice to the class of the terms and conditions of the settlement, and the scheduling of a formal fairness hearing, are worthwhile.  Preliminary approval should be granted where "the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class and falls within the range of possible approval."  *In re NASDAQ Market Makers Antitrust Litigation*, 176 F.R.D. 99, 102 (S.D.N.Y. 1997).  Applying these factors to the settlement here supports an order granting the motion for preliminary approval.

The approval of a proposed settlement of a class action is a matter of discretion for the Court.  *Churchill, Village, L.L.C.*, 361 F.3d at 575.  In exercising that discretion, however, courts recognize that as a matter of sound policy, settlements of disputed claims are encouraged and a settlement approval hearing should "not be turned into a trial or rehearsal for trial on the merits."  *Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982), *cert. denied sub nom. Byrd v. Civil Serv. Comm'n*, 459 U.S. 1217 (1983).  Furthermore, courts must give "proper deference" to the settlement agreement, because "the court's intrusion upon what is otherwise a private consensual agreement negotiated between the parties to a lawsuit must be limited to the extent necessary to reach a reasoned judgment that the agreement is not the product of fraud or overreaching by, or collusion between, the negotiating parties, and the settlement, taken as a whole, is fair, reasonable and adequate to all concerned."  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1027 (9th Cir. 1988).

To grant preliminary approval of this class action settlement, the Court need only find that the settlement falls within "the range of reasonableness."  *Newberg* § 11.25.  The *Manual for Complex Litigation (Fourth)* (2004) ("*Manual*") characterizes the preliminary approval stage as an "initial evaluation" of the fairness of the proposed settlement made by the court on the basis of written submissions and informal presentation from the settling parties.  *Manual* 21.632.  The *Manual* summarizes the preliminary approval criteria as follows:

- 8 -

1
2
3
4
5

> Fairness calls for a comparative analysis of the treatment of the class members vis-à-vis each other and vis-à-vis similar individuals with similar claims who are not in the class.  Reasonableness depends on an analysis of the class allegations and claims and the responsiveness of the settlement to those claims.  Adequacy of the settlement involves a comparison of the relief granted to what class members might have obtained without using the class action process.

6   *Manual* § 21.62.  A proposed Settlement may be finally approved by the trial court if it is

7   determined to be "fundamentally fair, adequate, and reasonable."  *City of Seattle*, 955 F.2d at

8   1276.  While consideration of the requirements for *final* approval is unnecessary at this stage, all

9   of the relevant factors weigh in favor of the settlement proposed here.[2]  As we show below, the

10  proposed Settlement is fair, reasonable and adequate.  For these reasons, the Court should allow

11  notice of it to be disseminated to the Class.

12  **C.**      **The Proposed Settlement Is Within The Range Of Reasonableness**

13  The proposed settlement meets the standards for preliminary approval.

14  First, this settlement is entitled to "an initial presumption of fairness" because it is the

15  result of arm's-length negotiations among experienced counsel before an experienced jurist.

16  *Newberg* § 11.41; *Curiale v. Lenox Group, Inc.*, Slip Opinion Case No. 07-1432, 2008 WL

17  4899474, *10 (E.D. Pa. Nov. 14, 2008).

18  Second, the consideration agreed to—a cash amount of at least $2.5 million up to $6.5

19  million—is substantial and will provide discernable benefits to the settlement class.

20  Third, the settlement provides for additional benefits in the form of an independent

21  assessment of whether TD Ameritrade's has complied with certain information security

22  standards.  If the evaluator determines that TD Ameritrade has not met one or more standards, it

23  shall so advise TD Ameritrade, and the Company will take action to promptly correct the non-

24  compliance.  This is a valuable benefit not only to settlement class members whose identification

25

26  ───────────────

27  [2] Plaintiffs will address in detail each of the factors required for final settlement approval in their Motion for Final Approval of the Settlement, to be submitted following the issuance of Notice to the Class.

28

MASTER FILE NO. C-07-2852 VRW

1  information is still maintained by TD Ameritrade but it will also provide a benefit to all current,

2  past and future account holders.

3      Fourth, existing legal precedent creates some uncertainty as to what, if any, relief

4  plaintiffs could achieve if this case were not settled.  The substantial benefits provided by this

5  settlement are reasonable in light of the risk and cost involved in continuing to litigate this case

6  on the merits.

7      **D.      The Proposed Settlement Class Satisfies Rule 23(a)**

8      Before granting preliminary approval of a settlement, the Court must determine that the

9  proposed settlement presents a proper class for settlement purposes.  *See Manual* § 21.632;

10 *Amchem Prods. Inc. v. Windsor*, 521 U.S. 591, 620 (1997).  Rule 23 governs the issue of class

11 certification, whether the proposed class is a litigated class or, as here, a settlement class.  All

12 criteria for certification of a class for litigation purposes, except manageability, apply to

13 certification for settlement purposes.  *Amchem Prods.*, 521 U.S. at 620.  Courts routinely and

14 properly certify classes for settlement purposes only.  *Id*. at 619-29.

15     Certification is appropriate where the proposed class and the proposed class

16 representatives meet the four prerequisites of Rule 23(a)—numerosity, commonality, typicality,

17 and adequacy of representation.  In addition, certification of a class action for settlement purposes

18 under Rule 23(b)(3) requires a showing that the "proposed class has sufficient unity so that absent

19 members can fairly be bound by decisions of class representatives"  Amchem Prods. 521 U.S. at

20 621.  The proposed settlement here satisfies each of these criteria.

21     **1.      The Class Is So Numerous that Joinder Is Impracticable**

22     The first requirement for maintaining a class action under Rule 23(a) is that the class is so

23 numerous that joinder of all members would be "impracticable."  Fed. R. Civ. P. 23(a)(1) does

24 not require that class actions involve any specific number of putative class members.  Here,

25 defendant has advised that there are in excess of 6 million TD Ameritrade customers who

26 provided physical or email addresses to TD Ameritrade prior to September 14, 2007.  Defendant

27 has also informed plaintiffs that these individuals' email addresses may have been obtained by

28 unauthorized persons or entities.  These class members are geographically dispersed across the

- 10 -

country making joinder impractical.  Therefore, numerosity in this case is easily established.  *See Harris v. Palm Springs Alpine Estates, Inc.*, 329 F.2d 909, 913-14 (9th Cir. 1964); *Breeden v. Benchmark Lending Group, Inc.*, 229 F.R.D. 623 (N.D. Cal. 2005) (certifying class with 236 members).

### 2.    The Case Involves Questions of Law and Fact Common to the Class

The second prerequisite to class certification is the existence of questions of law or fact common to the class.  Fed. R. Civ. P. 23(a)(2).  The Ninth Circuit has made it clear that the commonality requirement is to be "construed permissively."  *Hanlon*, 150 F.3d at 1019.  Courts have held that a single common issue of law or fact is sufficient to satisfy the commonality requirement.  *Slaven v. BP America, Inc.,* 190 F.R.D. 649, 655 (C.D. Cal. 2000); *Haley v. Medtronic, Inc.*, 169 F.R.D. 643, 647 (C.D. Cal. 1996).  Commonality can be established by showing "that the class is united by a common interest."  *Blackie v. Barrack*, 524 F.2d 891, 901 (9th Cir. 1975).  "Slight differences in class members' positions" will not defeat commonality. *Blackie*, 524 F.2d. at 902.

Here, all class members share numerous common questions of law and fact that go to the central issues in this case, including whether TD Ameritrade failed to adequately protect plaintiffs email addresses and other confidential information; whether TD Ameritrade's representations in its Privacy Statement and other public statements regarding the security of its operations were accurate; and whether the data breach suffered by TD Ameritrade resulted in the unauthorized acquisition of class member's personal identification information..  Commonality is sufficient where relief "turn[s] on questions of law applicable in the same manner to each member of the class." *O'Connor v. Boeing North Am., Inc.*, 180 F.R.D. 359, 370 (C.D. Cal. 1997).  The proposed settlement class satisfies the commonality requirement of class certification.

### 3.    Plaintiffs' Claims Are Typical of the Claims of the Class

The "claims . . . of the representative parties [must be] typical of the claims . . . of the class." Fed. R. Civ. P. 23(a)(3).  "Under the rule's permissive standards, representative claims are 'typical' if they are reasonably co-extensive with those of absent class members; they need not be substantially identical." *Hanlon,* 150 F.3d at 1020.  In this case, the claims of the

- 11 -

representative plaintiffs are typical of the claims of the class members because they, like all other class members, were accountholders of TD Ameritrade prior to September 14, 2007, and their claims arise from the same nucleus of facts as all other class members.  Typicality and commonality's "underlying issue[s]" bear close resemblance.  *Armstrong v. Davis*, 275 F.3d 849, 868 (9th Cir. 2001).  Thus, differences that may exist in the amount of injury suffered by each class member do not render plaintiffs' claims atypical.  *Id.*, at p. 869.

In this case, the claims of the representative plaintiffs arise from the same data breach that gives rise to the claims of the class.  Plaintiffs assert the same legal claims on behalf of themselves  and the proposed class.  For these reasons, plaintiffs' claims are typical of the claims of the other class members, and certification is appropriate.

### 4.    Plaintiffs Will Fairly and Adequately Represent the Interests of the Class

The final requirement of Rule 23(a) is that the representative plaintiff fairly and adequately represents the interests of the class.  A representative plaintiff is an adequate representative of the class if he or she: (1) does not have any interests that are antagonistic to or in conflict with the interests of the class; and (2) is represented by "qualified counsel" who will vigorously prosecute the interests of the class.  *Lerwill v. Inflight Motion Pictures, Inc.*, 582 F.2d 507, 512 (9th Cir. 1978).

Here, the interests of the representative plaintiffs are not antagonistic to the class because they are similarly interested in obtaining prompt and valuable relief from defendant.  There is no question that plaintiffs have a genuine interest in the litigation and understands the allegations in this case.  Among other things, plaintiff Richard Holober objected to the first settlement in this litigation and offered to undertake representation of the class in the event that the Court decided (which it did) to not grant final approval to the first settlement.  Plaintiff Brad Zigler has been a plaintiff in this litigation from early on and has demonstrated his commitment to the case through his participation in efforts to seek a preliminary injunction and class certification.  These plaintiffs have reviewed the pleadings in this case and have retained counsel who are capable of prosecuting the litigation.  The interests of plaintiffs and the class members are aligned because

they are similarly situated as to the type of relief they can seek from TD Ameritrade and are similarly subject to TD Ameritrade's defenses.

Additionally, plaintiffs are represented by counsel who are highly qualified in class action litigation and have competently acted upon the request of the Court to prosecute this complex case. Pursuant to this Court's order denying final approval of the first settlement, Gretchen Nelson of Kreindler & Kreindler LLP agreed to act on behalf of Mr. Holober as class counsel. *In re TD Ameritrade Accountholder Litig.*, supra, 266 F.R.D. at p.424. Since that time, she has worked with her co-counsel, Howard Strong, and counsel representing other plaintiffs in this litigation to achieve a fair, reasonable and adequate settlement of this case. The efforts of all plaintiffs' counsel in achieving this settlement are a demonstration of their abilities and confirmation of their understanding of their responsibilities to the class.

## E.   The Proposed Settlement Class Satisfies Rule 23(b)(3)

Once the four prerequisites of Rule 23(a) are met, as they are here, a class action should be certified under Rule 23(b)(3) if "the court finds that questions of law or fact common to class members predominate over any questions affecting only individual members, and that a class action is superior to other available methods for fairly and efficiently adjudicating the controversy."

### 1.   Common Questions of Law and Fact Predominate Over Individual Questions

In determining whether common questions of law or fact predominate in the settlement context, the Court must determine whether the various issues that would affect plaintiffs' ability to recover in a class action are sufficiently common that it would be fair for the named class representatives to bind absent class members who do not opt out of the settlement. *See Amchem Prods.*, 521 U.S. at 621 ("Subdivisions (a) and (b) focus court attention on whether a proposed class has sufficient unity so that absent members can fairly be bound by decisions of class representatives."); *In re Rubber Chemicals Antitrust Litigation*, 232 F.R.D. at 346 (N.D. Cal. 2005) "Implicit in the satisfaction of the predominance test is the notion that the adjudication of common issues will help achieve judicial economy." *Valentino v. Carter-Wallace, Inc.,* 97 F.3d

- 13 -

1227, 1234 (9th Cir. 1996). "The issues of predominance and superiority are intertwined [-] the more common issues predominate, the more likely it is that a class action is superior." *Brink v. First Credit Resources*, 185 F.R.D. 557, 572 (D.Ariz. 1999).

In this case, the issues that plaintiffs would have to address to obtain relief in a class action are sufficiently common to support a settlement on a class-wide basis. All plaintiffs would have to establish that TD Ameritrade was at fault for the data breach and that they suffered a type of injury that is compensable in a class action. As a result, for settlement purposes, the class has "sufficient unity so that absent members can fairly be bound by decisions of class representatives" as required under *Amchem*.

### 2.   Class Adjudication is the Superior Method of Adjudicating this Case

The superiority prong of Rule 23(b)(3) requires balancing the merits of a class action with available alternate methods of adjudication. *See Valentino v. Carter-Wallace, Inc.*, 97 F.3d 1227, 1234 (9th Cir. 1996).

In this case, a class action is superior to individual litigation because it would be a waste of judicial resources to require numerous separate trials relating to the same legal dispute. *See In re Brand Name Prescription Drugs Antitrust Litig.*, Case No. 94 C 897, 1994 WL 663590, at *6 (N.D. Ill. Nov. 18, 1994) ("We fail to see the logic in defendants' contention that 50,000 individual actions are less complex than a single action.") Moreover, the interests of class members in individually controlling the prosecution of separate claims are outweighed by the efficiency of the class mechanism. Finally, separate adjudication of claims creates a risk of inconsistent rulings, which further favors class treatment. Therefore, a class action is the superior method of adjudicating the claims raised in this case.

### F.   Class Counsel Should be Appointed

"An order certifying a class action . . . must appoint class counsel under Rule 23(g)." Fed. R. Civ. P. 23(c)(1)(B). In appointing class counsel, courts must consider the following factors: (i) the work counsel has done in identifying or investigating potential claims in the action; (ii) counsel's experience in handling class actions, other complex litigation, and the types of

MASTER FILE NO. C-07-2852 VRW

1 | claims asserted in the action; (iii) counsel's knowledge of the applicable law; and (iv) the

2 | resources that counsel will commit to representing the class." Fed. R. Civ. P. 23(g)(1)(A).

3 |      In this case, plaintiffs' counsel have worked cooperatively since the Court's denial of final

4 | approval of the first settlement. Their work in achieving this settlement and in previously

5 | litigating the claims provides a basis for the Court to appoint them as Class Counsel. It is further

6 | proposed that as to notice to the class, only one counsel, Ms. Nelson of the law firm of Kreindler

7 | & Kreindler LLP, be identified in the Notice to respond to any inquiries and to serve as the

8 | recipient of any objections or other issues that may arise with respect to this settlement.

9 | **V.**     **PROPOSED PLAN OF NOTICE**

10 |      Rule 23(e)(1) states that, "[t]he court must direct notice in a reasonable manner to all class

11 | members who would be bound by a proposed settlement, voluntary dismissal, or compromise."

12 | Notice of a proposed settlement must inform class members of the following: (1) the nature of

13 | the pending litigation; (2) the general terms of the proposed settlement; (3) that complete

14 | information is available from the court files; and (4) that any class member may appear and be

15 | heard at the fairness hearing. *See Newberg* § 8.32. The notice must also indicate an opportunity

16 | to opt-out, that the judgment will bind all class members who do not opt-out, and that any

17 | member who does not opt-out may appear through counsel. Fed. R. Civ. P. 23(c)(2)(B).

18 |      The form of notice is "adequate if it may be understood by the average class member."

19 | *Newberg* § 11.53. Notice to the class must be "the best notice practicable under the

20 | circumstances, including individual notice to all members who can be identified through

21 | reasonable effort." *Amchem Prods.*, 521 U.S. at 617. Publication notice is an acceptable method

22 | of providing notice where the identity of specific class members is not reasonably available. *See*

23 | *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007) (citing *Manual*

24 | § 21.311).

25 |      Plaintiffs propose that the notice plan adopted and approved by the Court include:

26 | (1) notice through a summary notice to be given by mail in the form of a postcard or email to

27 |

28 |

each class member;[3] (2) a summary notice published in USA Today in one daily and one

weekend issue; and (3) the posting of the full notice on a public website maintained by the notice

provider.  Both the summary and publication notices provide information as to how class

members can obtain a copy of the full notice via the Internet or by requesting a copy by mail.

The notice program is the same as that previously approved by this Court with respect to the first

settlement.

      The content of the proposed Class Notice, which consist of a summary notice a long form

notice and publication notice, fully complies with due process and Rule 23.  (The proposed long

form, summary and publication notices are attached hereto as Exhibits A, B and C.)  The Class

Notice provides the definition of the class, describes the nature of the action, including the class

claims, explains the procedure for making objections and seeking exclusion.  The Class Notice

describes the terms of the Settlements, and informs class members of the means by which claims

are to be submitted and the further identifies the nature of the benefits available and the

documentation required to obtain those benefits.  The Class Notice provides specifics regarding

the date, time, and place of the final approval hearing, informs class members that they may enter

an appearance through counsel and explains the procedure for submitting objections to the

settlement or requesting exclusion from the Settlement Class.  The Class Notice also informs

class members how to exercise their rights and make informed decisions regarding the proposed

Settlement, and tells them that if they do not opt out, the judgment will be binding upon them.

The Class Notice further informs the class about the payment of any attorneys' fees and costs.

Courts have approved Class Notice even when they have provided only general information about

a settlement.  *See, e.g.*, *Mendoza v. United States*, 623 F.2d 1338, 1351 (9th Cir. 1980) ("very

general description of the proposed settlement" satisfies standards).

---

[3]   TD Ameritrade has previously provided the names and addresses and email addresses of proposed class members to the Claims Administrator in conjunction with the notice program associated with the first settlement.

MASTER FILE NO. C-07-2852 VRW

## VI.   PROPOSED PLAN OF ALLOCATION

A plan for the distribution of the class settlement funds is subject to the "fair, reasonable and adequate" standard that applies to approval of class settlements.  *In re Citric Acid Antitrust Litig.*, 145 F. Supp. 2d 1152, 1154 (N.D. Cal. 2001).  "A plan of allocation that reimburses class members based on the extent of their injuries is generally reasonable."  *In re Oracle Sec. Litig.*, 1994 WL 502054, at *1 (N.D. Cal. June 18, 1994).  Here, the settlement funds will be distributed in defined amounts to class members who submit claims.  It provides for the payment of from $50 to $2,500 depending on the nature of the account involved in any identity theft and the nature of the expenses or losses suffered.  Thus, class members who suffered identity theft to a new or existing account (other than an existing  credit or debit card account) can recover a minimum payment of $250 or up to $1,000 if they incurred out of pocket costs such as postage, telephone charges and other similar expenses or  up to $2,500 if they experienced unreimbursed losses.  The limitation of $50 assigned as the benefit available for identity theft involving existing debit or credit cards is based on the fact that no information concerning existing credit or debit cards was contained in the data base at issue.  As a result, it is less likely that identity theft involving existing credit and debit cards was caused by the data breach and more likely that it was caused by other events such as lost credit and/or debit cards or theft of credit/debit card information by third parties.  Thus, the allocation of the settlement proceeds has been determined in a manner intended to provide fair, reasonable, and adequate compensation to class members who have been the victim of identity theft.

## VII.   ATTORNEYS' FEES AND COSTS

The Agreement states that Class Counsel may apply to the Court for an award of attorneys fees and costs of no more than $500,000.  Agreement, ¶ X.  However, to the extent that claims are received that total $6.5 million, Class Counsel will not be entitled to recover any fees or costs.  Thus, the funds available for distribution to the class will not be reduced by any amount associated with any award of attorneys' fees and costs.  This is fully explained to the settlement class in the notice.

## VIII.   THE COURT SHOULD SET A FINAL APPROVAL HEARING SCHEDULE

The last step in the settlement approval process is the final approval hearing, at which the Court may hear all evidence and argument necessary to evaluate the proposed settlement.  At that hearing, proponents of the settlement may explain and describe its terms and conditions and offer argument in support of settlement approval and members of the settlement class, or their counsel, may be heard in support of or in opposition to the settlement.  Plaintiffs propose the following schedule for final approval of the settlement:

| | Date | Action |
|---|---|---|
| 1. | Within 30 days after entry of Order Granting Preliminary Approval of Class Settlement ("Preliminary Approval Order") | Mailing and publication of Class Notice |
| 2. | 75 days after the Preliminary Approval Order | Briefs in support of final approval and any application for an award of attorneys fees and costs |
| 3. | 90 days after the Preliminary Approval Order | Last day for settlement class members to opt-out of the settlement and any settlement class member to file objections to the settlement |
| 4. | 105 days after Preliminary Approval Order | Responses to any objections to the settlement to be filed |

## IX.   CONCLUSION

Based on the foregoing, plaintiffs respectfully request that the Court:  (1) grant preliminary approval of the class settlement;(2) certify the class for settlement purposes only; and (3) establish a deadline for class members to exclude themselves from the settlement, a deadline to submit any objections to the settlement, and a final approval hearing date.

1   Dated:  November 15, 2010       Respectfully submitted,

2                                 KREINDLER & KREINDLER LLP

3                                 LAW OFFICES OF HOWARD STRONG

4

5                                 By:   /s/ Gretchen M. Nelson     

6                                          Gretchen M. Nelson
                               Attorneys for Richard Holober

7

8                                 DAVID C. PARISI, ESQ. (162248)

9                                 PARISI & HAVENS LLP
                               15233 Valleyheart Drive

10                               Sherman Oaks, CA  91403
                               Telephone: (818) 990-1299

11                               Telecopier: (818) 501-7852
                               Email: dcparisi@parisihavens.com

12

13

14                               By:   /s/ David C. Parisi      

15                                        David C. Parisi
                               Attorneys for Brad Zigler

16

17

18

19

20

21

22

23

24

25

26

27

28

                MASTER FILE NO. C-07-2852 VRW

MOTION FOR PRELIMINARY APPROVAL OF SETTLEMENT